**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RED WINE & BLUE, and OHIO ALLIANCE FOR RETIRED AMERICANS, <br><br>         Plaintiffs, <br><br>       v. <br><br> FRANK LAROSE, in his official capacity as Ohio Secretary of State, CHARLES L. NORMAN, in his official capacity as Ohio's Registrar of Motor Vehicles, <br><br>         Defendants. | Case No.: |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Red Wine & Blue and the Ohio Alliance for Retired Americans file this complaint against Defendants Frank LaRose, in his official capacity as Ohio Secretary of State, and Charles L. Norman, in his official capacity as Ohio's Registrar of Motor Vehicles, and allege as follows:

## NATURE OF THE CASE

1. When the legislature passed Ohio's biannual Transportation Appropriations Bill (HB 54) in March 2025, they slipped in an unusual provision that will make it harder for many lawful, eligible Ohio citizens to exercise their fundamental right to vote.

2. While most of that sprawling legislative enactment is concerned with the day-to-day administration of Ohio's transportation infrastructure and related issues, hidden within the bill is a short provision that amends the section of Ohio law that governs voter registration at offices of the State's Bureau of Motor Vehicles (BMV).

3. For decades, and until HB 54's passage, when an Ohio resident applied for a driver's license or identification card at the BMV, they were offered the opportunity to register to vote. As part of the voter registration process, the applicant was—and still is—required to attest under penalty of perjury that they are a citizen of the United States.

4. HB 54, which went into effect on June 30, 2025, upends that longstanding procedure. Ohio law now requires that an applicant provide unspecified, additional "proof of United States citizenship" *before* they are offered the opportunity to register to vote at the BMV.

5. This new requirement conflicts with federal law. Courts have found that proof-of-citizenship laws similar to HB 54 violate the National Voter Registration Act (NVRA), which bars states from grafting burdensome requirements onto the voter registration process.

6. The NVRA requires states to offer the opportunity to register to vote to all eligible persons applying for a driver's license. It also specifies that a state "may require only the minimum

information necessary to . . . enable state election officials to assess the eligibility of the applicant." 52 U.S.C. § 20504(c)(2)(B)(ii). Because the NVRA separately requires that all applicants must attest, under penalty of perjury, that they are United States citizens, requesting any "proof" of citizenship beyond that attestation goes beyond the "minimum" amount of information that is "necessary" to determine an applicant's eligibility.

7.      Ohio, other states, and the federal government have all long relied on sworn attestations to demonstrate citizenship in the voter registration process. Indeed, Ohio *currently* allows residents to register to vote based on an attestation of citizenship—so long as they register somewhere other than the BMV. This includes voters who apply to vote online through a State government website, with a mail-in voter registration form, or at other designated agencies, such as the Women, Infants, and Children (WIC) program of the Ohio Department of Health, the Ohio Department of Mental Health, the Ohio Department of Developmental Disabilities, and colleges and universities' offices providing assistance to disabled students. In each of these situations, consistent with the NVRA, an attestation made under penalty of perjury remains sufficient to demonstrate citizenship. Only BMV applicants are singled out by HB 54's revisions for differential treatment—in contravention of the NVRA, and for no discernible reason.

8.      Ohio is not free to impose an additional requirement for voter registration when that requirement conflicts with federal law. In enacting the NVRA, Congress made the judgment that an attestation was sufficient to demonstrate citizenship, and that nothing beyond that minimum requirement was allowed.

9.      Congress's determination that an attestation alone suffices under the NVRA is not just the law, it makes sense. Many eligible U.S. citizens do not possess documents that evidence their citizenship. For those citizens, obtaining copies of those documents can be expensive and

3

time-consuming. Others may have such documents, but they may not match their current legal name (as is true for many married women), they may not be easily accessible (as is true for many young people, who may leave them with family for safe keeping), or they may simply not be in the habit of carrying them around (as has historically been the case for virtually all Americans).

10.     Perhaps even more importantly, there is no need to require more than a sworn attestation. There is no evidence in Ohio (or any other state) that the attestation requirement has been insufficient in preventing noncitizens from voting. The substantial criminal and immigration consequences that a noncitizen would incur from voting have long effectively prevented noncitizens from voting in U.S. elections. And despite Ohio's best efforts to identify every instance that a potential noncitizen *might* have registered or voted, there have only been a small, isolated handful of such incidents over the years.

11.     Because HB 54's new proof-of-citizenship requirement imposes unnecessary obligations to register to vote in violation of the NVRA, it is invalid. In addition, HB 54 violates the U.S. Constitution because it is impermissibly vague, giving no guidance as to what constitutes sufficient "proof of United States citizenship," raising the specter of uneven and arbitrary enforcement of the law across Ohio's many BMV offices.

12.     Plaintiffs Red Wine & Blue and the Ohio Alliance for Retired Americans are organizations whose core missions involve ensuring that their members are able to register, vote, and participate in the political process. The needless burdens imposed by HB 54 directly hinder Plaintiffs' missions and make it harder for their members to make their voices heard through the ballot box.

13.     To prevent HB 54 from imposing unlawful obstacles to voting in violation of the NVRA, Plaintiffs seek a declaratory judgment that HB 54's proof-of-citizenship requirement violates the NVRA and the U.S. Constitution, and injunctive relief against the law's enforcement.

## JURISDICTION AND VENUE

14.     Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under the color of state law of their rights under the Fourteenth Amendment to the U.S. Constitution and the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507 *et seq*.

15.     Plaintiffs sent Secretary LaRose written notice of Ohio's violation of the NVRA on May 23, 2025. Secretary LaRose responded on August 21, 2025, but he failed to correct the violations alleged in the notice within the 90-day window. Plaintiffs therefore have a private right of action under 52 U.S.C. § 20510(b) to enforce the NVRA. Exhibit A contains the notice provided to Secretary LaRose, and Exhibit B contains his response.

16.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matter in controversy arises under the Constitution and laws of the United States and asserts the deprivation, under color of state law, of rights under the U.S. Constitution. The Court also has original jurisdiction because this action seeks to enforce the right of citizens of the United States to vote in Ohio. *Id.* § 1357.

17.     This Court has personal jurisdiction over Defendants, who are sued in their official capacities. Further, Defendants work and reside in Ohio.

18.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

19.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201–2202.

## PARTIES

20.     Plaintiff Red Wine & Blue is a membership organization whose mission is to empower women to engage in political discourse and to work together to counter extremism by building connections and organizing their communities. The organization was founded in Ohio in 2019 and continues to focus on engaging women voters in Ohio, educating its membership on political issues that face Ohio voters, and building local community groups across Ohio.

21.     Red Wine & Blue has over 600,000 members, including more than 55,000 members who reside throughout Ohio. These members regularly engage with and communicate with Red Wine & Blue through organizing and voter education emails and social media posts and virtual and in-person organizing events. Many of these members are also involved with one of Red Wine & Blue's 61 distributed organizing local affiliate groups in Ohio. These grassroots groups focus on local organizing and provide organizing resources and frameworks to educate Red Wine & Blue's members. Some members further support the organization through donations, through either a fundraising drive or through monthly donations.

22.     The core mission of Red Wine & Blue involves encouraging its members to vote, to be politically engaged, and to organize their communities to be politically engaged. To achieve that mission, Red Wine & Blue educates its members on key issues and races in Ohio, provides information on the voting process, gets ahead of misinformation, and registers and turns out its members and their communities to vote. Red Wine & Blue regularly reminds members to check their voter registration and update their registration if they have moved.

23.     HB 54's requirement that applicants provide proof of citizenship to register to vote at the BMV threatens Ohio citizens within Red Wine & Blue's membership who are eligible to vote.

24.     Voter registration at the BMV is a popular and convenient way for Ohioans—including members of Red Wine & Blue—to register to vote or to update their registration. Red Wine & Blue members frequently find themselves at the BMV. A large number of Ohioans drive, and many others obtain state identification cards from the BMV. Red Wine & Blue members periodically go to the BMV to renew their driver's licenses when they expire or to update their driver's licenses when they move or undergo another life event. This is a common occurrence for Red Wine & Blue's members, whose existing members move within Ohio for any number of reasons, including older members who may downsize or move to retirement homes, and new members who join the Ohio chapter after moving to Ohio from out of state. In addition, Red Wine & Blue members must go to the BMV to update their driver's license to reflect a name change: the large majority of Red Wine & Blue's members are women, many of whom have changed or will change their name as a result of marriage or divorce.

25.     Red Wine & Blue members also need to register to vote in Ohio, either in the first instance or to update a prior registration, for many of the same reasons that might also require a trip to the BMV. Members are likely to go to the BMV after they change their name or move to a new address, both of which would require members to update their voter registration. Likewise, whenever a Red Wine & Blue member newly moves to Ohio, they need to both obtain an Ohio driver's license and to register to vote in Ohio.

26.     It is therefore unsurprising that many Ohio citizens choose to register to vote at the BMV. In 2024, more than 227,000 new voters registered to vote at the BMV. Many others updated

their voter registration at the BMV. Consistent with their fellow Ohioans, many members of Red Wine & Blue have registered to vote or updated their voter registration information at the BMV, and many intend to do so in the future. Any who do will be subject to HB 54's new proof-of-citizenship requirement.

27. For many of Red Wine & Blue's members, the burden of complying with HB 54's new proof-of-citizenship requirements will be significant. Women (who comprise the vast majority of the organization's members) are more likely to lack proof-of-citizenship documents reflecting their current name because many women change their name as a result of marriage or divorce. Furthermore, many of Red Wine & Blue's members are older, and it often may be more difficult for older citizens to produce citizenship documents. For example, some of Red Wine & Blue's older members no longer travel and are less likely to possess a passport. Many do not have access to documents like birth certificates or marriage and divorce certificates (or certified copies of those documents), either because they never received them or because they have been lost, misplaced, or damaged over the years. Some of Red Wine & Blue's members have been voting in Ohio for decades and may never have provided proof-of-citizenship documents at the BMV. Also at heightened risk under the new proof-of-citizenship requirement are Red Wine & Blue's younger members, who are more transient and need to re-register to vote frequently. Many of these younger voters, particularly those who are students, do not have ready access to proof-of-citizenship documents like birth certificates (*e.g.*, because their parents have held onto them for safekeeping). Their parents may keep any proof-of-citizenship documents at home, and they are unlikely to bring them to school.

28. Red Wine & Blue has identified several members who will be subject to and accordingly burdened by HB 54's proof-of-citizenship requirements.

29.     For example, Peggy Dutcher is a member of Red Wine & Blue who recently moved to Ohio from another state. She has never registered to vote in Ohio. As a new resident of Union County, she intends to register to vote at the BMV when she gets her driver's license. She does not know where her birth certificate is, and in any event, her birth certificate does not match her current name, which she changed when she got married. She also does not know where her marriage certificate is. Although Ms. Dutcher possesses a passport, she strongly believes that she and other U.S. citizens should not be required to produce a passport or other document to the State in order to register to vote, as she believes such laws impose needless obstacles to voting, and that Ohio should make it easier for citizens to vote, not harder. HB 54 makes it necessary for Ms. Dutcher to locate and produce proof of citizenship to register to vote at the BMV, which she does not want to do.

30.     Gia Borgerson is another member of Red Wine & Blue who is adversely affected by HB 54. Ms. Borgerson recently moved back to Ohio from another state. Although Ms. Borgerson registered to vote in Ohio shortly after her move, she intends to change her legal name in approximately two months, at which point she will need to update her voter registration. She intends to do so at the BMV when she updates her driver's license to reflect her new name. Because of HB 54, Ms. Borgerson will be required to obtain, locate, and produce proof of citizenship to register to vote at the BMV, including documents linking her new legal name to her citizenship documents. Ms. Borgerson does not wish to do so, because she strongly believes that Ohio should not impose needless burdens on citizens who are trying to register to vote.

31.     It is central to Red Wine & Blue's core mission that its members are able to register and vote—without the ability to register and vote, Red Wine & Blue cannot achieve its mission of political engagement for its membership. Accordingly, any law that imposes unnecessary obstacles

for its members to register to vote directly harms Red Wine & Blue by undercutting that core mission.

32.     Plaintiff Ohio Alliance for Retired Americans (the "Alliance") is a chartered state affiliate of the Alliance for Retired Americans and is incorporated in Ohio as a 501(c)(4) nonprofit social welfare organization. The Alliance has chapters across Ohio, including Cincinnati, Cleveland, Toledo, Dayton, Columbus, Akron, Canton, Warren, Youngstown, Athens, Lima, Defiance, Massillon, Portsmouth, Bowling Green, and Newark.

33.     The Alliance has approximately 253,000 members, consisting of retirees from public and private sector unions, who reside throughout Ohio.

34.     The Alliance's mission is to protect the civil rights of retirees and to ensure that they obtain social and economic justice. Central to that mission is ensuring that its members are able to register and turn out to vote. But HB 54's requirement that applicants provide proof of citizenship to register to vote at the BMV threatens the right to vote of Alliance members who are otherwise eligible to vote.

35.     Like Red Wine & Blue's members, the Alliance's members also visit the BMV. All Alliance members who drive need to obtain and renew their driver's licenses. Alliance members, who tend to be older Americans, must apply to renew their driver's licenses even more frequently because they are ineligible for licenses with longer expiration terms. *See* Ohio Rev. Code § 4507.09. Alliance members who no longer drive and give up their driver's license may visit the BMV to obtain a state identification card to use as voter identification. They also need to update their driver's licenses or state identification cards when they move to a new address, which affects members who move within Ohio (*e.g.*, after they downsize their homes or move to retirement homes), as well as new members who join the chapter upon moving to Ohio from out of state.

10

Members also need to update their driver's licenses or state identification cards if they change their name, which is particularly common for women who marry or divorce. Alliance members often need to register to vote or to update their voter registration at the same time that they have business with the BMV, including, for example, when they go to the BMV to update their driver's licenses or state identification cards because of a recent move or name change. All members of the Alliance who visit the BMV are now subject to HB 54's proof-of-citizenship requirement, and they will not be offered the opportunity to register to vote unless they produce acceptable proof of citizenship.

36. HB 54's proof-of-citizenship requirement therefore makes it more difficult for the Alliance's members to register to vote. Those burdens fall disproportionately on the Alliance's members, which broadly include older voters. Older voters are more likely to lack proof-of-citizenship documents such as passports or birth certificates; or, if they have a birth certificate, it may be worn or illegible, or otherwise unacceptable to the BMV to prove citizenship. And over the course of a lifetime of moves, documents are likely to be misplaced and become harder to find, further increasing the risk that older voters will no longer be able to produce documents relating to citizenship. Women in the Alliance who have changed their name also need to produce documents linking their current legal name to their citizenship documents.

37. Defendant Frank LaRose is the Secretary of State of Ohio and the State's chief election officer. Ohio Rev. Code § 3501.04. Secretary LaRose is responsible for overseeing the State's overall elections process. Specifically, he is responsible for issuing rules and instructions regarding the proper methods of conducting elections, including voter registration. *See id*. § 3501.05. Defendant LaRose is sued in his official capacity.

38. Defendant Charles L. Norman is the Registrar of Motor Vehicles. He is responsible for overseeing Ohio's Bureau of Motor Vehicles. Ohio Rev. Code § 4501.02(A). His duties include

providing training programs and materials regarding voter registration, in cooperation with the Secretary of State, and he is responsible for designating a BMV employee to oversee the BMV's voter registration process. *Id.* § 4501.023. As Registrar of Motor Vehicles, Mr. Norman is also responsible for appointing deputy registrars throughout Ohio to carry out the State's motor vehicle laws. *Id.* § 4507.01(B). Defendant Norman is sued in his official capacity.

## STATEMENT OF FACTS AND LAW

### I. The National Voter Registration Act prohibits states from adding unnecessary requirements to voter registration forms.

39.     In 1993, Congress exercised its Elections Clause authority to regulate federal elections by enacting the National Voter Registration Act (NVRA). 52 U.S.C. § 20501 *et seq.*

40.     In doing so, Congress recognized that "unfair registration laws" can "have a direct and damaging effect on voter participation," 52 U.S.C. § 20501(a)(3), and through the NVRA, sought to improve access to the franchise by establishing "procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," *id.* § 20501(b)(1); *see also id.* § 20501(a)(2) (making a congressional finding that "it is the duty of the Federal, State, and local governments to promote the exercise of that right [to vote]").

41.     To this end, the NVRA streamlines the voter registration process and requires states to provide simplified, voter-friendly systems for registering to vote. *See generally* National Voter Registration Act of 1993, Pub. L. No. 103-31, 107 Stat. 77. It explicitly "requires each State to permit prospective voters to 'register to vote in elections for Federal office' by any of three methods: simultaneously with a driver's license application, in person, or by mail." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013). "Together, these mechanisms ensure that . . . simple means are available to register for federal elections and those means are actively presented to voters by the states." *Fish v. Kobach*, 840 F.3d 710, 721 (10th Cir. 2016) ("*Fish I*").

42.     The requirement that states offer citizens the opportunity to register to vote when they apply for (or apply to renew) a driver's license at a state motor vehicle authority is found in Section 5 of the NVRA. 52 U.S.C. § 20504. It is often colloquially referred to as the law's "motor voter" provisions. *See, e.g.*, *Fish I*, at 715; *see id.* at 722 ("The motor voter provision assures that all persons who drive will sooner or later be presented with an opportunity to register to vote[.]").[1]

43.     The NVRA places limits on the information that a state can demand from a motor voter applicant. The law specifies that voter registration applications made in conjunction with an application for a driver's license "may require only the minimum amount of information necessary to . . . enable state election officials to assess the eligibility of the applicant." 52 U.S.C. § 20504(c)(2)(B)(ii). Motor voter applications must also "include a statement" that "states each eligibility requirement (including citizenship)" and require the applicant to attest, under penalty of perjury, that he or she "meets each such requirement." *Id.* § 20504(c)(2)(C).

44.     The NVRA's attestation requirement is "the presumptive minimum amount of information necessary for state election officials to carry out their eligibility-assessment and registration duties." *Fish I*, 840 F.3d at 716–17 (emphasis deleted).

45.     A state may not require additional "proof" of citizenship beyond the attestation requirement absent a demonstration that "a substantial number of noncitizens have successfully registered to vote under the attestation requirement." *Id.* at 739; *see Fish v. Schwab*, 957 F.3d 1105, 1139 (10th Cir. 2020) ("*Fish II*") (confirming the *Fish I* framework in a subsequent appeal of the district court's final judgment); *see also Inter Tribal*, 570 U.S. at 15, 20 (holding Arizona's proof-of-citizenship requirement to register to vote by mail preempted by the NVRA); *Mi Familia Vota*

---

[1] For purposes of the NVRA, the registrar of the Ohio BMV or any deputy registrar of the Ohio BMV are appropriate state motor vehicle authorities under Ohio law. *See* Ohio Rev. Code §§ 3503.11; 4507.06(B)-(C). Deputy registrars are appointed by Ohio's Registrar of Motor Vehicles to carry out the provisions of Ohio law relating to motor vehicles. *See* Ohio Rev. Code § 4507.01(B).

*v. Fontes*, 129 F.4th 691, 710 (9th Cir. 2025) (similar); *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F.Supp.3d 135, 195–96 (D.D.C. 2025) (*LULAC*) (enjoining executive order purporting to impose a documentary proof-of-citizenship requirement on the federal mail voter registration form).

46.     The Conference Committee on the bill that became the NVRA considered and rejected an amendment that would have expressly allowed states to "requir[e] presentation of documentation relating to citizenship of an applicant for voter registration." H.R. Rep. No. 103-66, at 23 (1993) (Conf. Rep.). In doing so, it concluded that such an amendment was "not necessary or consistent with the purposes of" the NVRA. *Id.*

## II.     Ohio has long registered voters at the BMV without requiring proof of citizenship.

47.     For decades—and even before the NVRA's effective date—Ohio has allowed individuals to register to vote contemporaneously with an application for a driver's license, without imposing a heightened proof-of-citizenship requirement.

48.     For example, in 1989, Ohio law provided that "[w]hen any person applies for a driver's license, . . . the registrar of motor vehicles or deputy registrar shall ask the applicant if he is eligible to register as an elector and, in addition, if he is registered." Ohio Rev. Code § 3503.11(D) (1989). If the applicant "replies that he is eligible but not registered," then the registrar or deputy registrar "shall offer to register him." *Id.* If the applicant requested to be registered, the 1989 version of the law then required the registrar or deputy registrar to provide a registration form to the applicant and to send the completed form to the appropriate county board of elections, which would then register the applicant if it was "satisfied as to the truth of the statements made in the registration forms." *Id.* § 3503.11(C), (D) (1989).

49.     That procedure—allowing driver's license applicants to register to vote without any "proof of citizenship" requirement at the BMV—persisted in substantially similar form until the

enactment of HB 54 earlier this year.

50.     For instance, the version of Ohio Rev. Code § 3503.11 that existed immediately before HB 54's enactment provided that "[w]hen any person applies for a driver's license . . . or the renewal or duplicate of any license . . . the registrar of motor vehicles or deputy registrar shall offer the applicant the opportunity to register to vote or to update the applicant's voter registration by electronic means in conjunction with the person's transaction with the registrar or deputy registrar, in a manner prescribed by the secretary of state." Ohio Rev. Code § 3503.11(A)(1) (Apr. 2025).

51.     Administrative guidance confirms that, prior to HB 54, registrants were offered the opportunity to register to vote at the BMV without needing to produce proof of citizenship: BMV employees were instructed by the Ohio Secretary of State to offer driver's license applicants the opportunity to register to vote without any mention of first requiring proof of citizenship. Ohio Sec'y of State, *Voter Registration at the Bureau of Motor Vehicles: An Instruction Manual*, at 9–10 (revised Sept. 2024), *available at* https://perma.cc/N47V-XLHJ. Prior to HB 54, neither Ohio Rev. Code § 3503.11 nor any State administrative guidance imposed a proof-of-citizenship requirement beyond the attestation of citizenship requirement set out in the NVRA.

### III.    Ohio's legislature slipped a provision modifying registration procedures at the BMV as a last-minute change to the Transportation Appropriations Bill.

52.     HB 54 amended Ohio Rev. Code § 3503.11 by requiring individuals to "present[] proof of United States citizenship to the registrar of motor vehicles or the deputy registrar" before they are offered "the opportunity to register to vote or to update [their] voter registration [] in conjunction with the person's transaction with the registrar or deputy registrar." Ohio Rev. Code § 3503.11(A)(1). Individuals who have "previously presented proof of United States citizenship to the registrar or any deputy registrar" are not required to do so again. *Id.*

53.     The proof-of-citizenship requirement is comprised of approximately nine lines on a single page buried in the 225-page Transportation Appropriations Bill.

54.     In the sixteen committee hearings and multiple floor debates held in the House and Senate about HB 54, no proponent provided any reasoning or justification for the addition of the proof-of-citizenship requirement, nor did any proponent indicate that attestation was an insufficient means to demonstrate citizenship and to prevent noncitizens from voting.

55.     In fact, the proof-of-citizenship requirement was *removed* from the bill before the February 25 House Finance Committee meeting. Representative Stewart, the Chair of the House Finance Committee, explained that "we're not going to require folks to come with proof of citizenship in order to register at the BMV, but we are going to say that our BMVs and deputy registrars, if in their system and if they know that somebody is a noncitizen, they're going to be prohibited from asking that person if they want to register to vote." The replacement language would have directed that "[t]he registrar [and] deputy registrar[s] shall not offer the opportunity to register to vote to a person who, according to the records of the bureau of motor vehicles, is ineligible to register to vote."

56.     However, the proof-of-citizenship requirement was later snuck back into HB 54 shortly before the final vote on the bill, meaning that the public never had a meaningful opportunity to respond to its re-inclusion.

57.     Specifically, the proof-of-citizenship requirement was added back into HB 54 before the March 18 Senate Transportation Committee meeting.

58.     In that committee, Senator Kent Smith expressed concerns with asking "BMV clerks to somehow try to discern citizenship before they offer the ability to have folks register to vote" and offered an amendment to remove the requirement. He indicated that a substantial portion

of Ohio citizens may have never provided proof of citizenship at the BMV, and he urged the legislature to hold a full hearing on the proof-of-citizenship requirement and consider it in a "more thorough and deliberate manner" as standalone legislation rather than slipped into the Appropriations Bill. Senator Smith's amendment was tabled without any further discussion.

59.     On the Senate floor, Senator Smith again implored the legislature to remove the proof-of-citizenship requirement from the Transportation Appropriations Bill. He expressed concerns about mandating BMV clerks to investigate the citizenship of registrants and "turn[ing] them into the vote police." And he explained that the proof-of-citizenship requirement was likely to disenfranchise Ohio citizens who have never submitted proof-of-citizenship documents to the BMV. He urged the legislature to consider the potentially disenfranchising effects of the provision separately from the Appropriations Bill to ensure that the process does not inadvertently deny the right to vote.

60.     The legislature held no further discussion on the justification or effects of the proof-of-citizenship requirement. And given the importance of the rest of the Transportation Appropriations Bill, Senator Smith too voted in favor of HB 54.

61.     HB 54 was passed by the legislature on March 19, 2025 and signed by the governor on March 25, 2025. HB 54's proof-of-citizenship requirement went into effect on June 30, 2025.

**IV.     HB 54 offers no guidance on what constitutes "proof of citizenship."**

62.     HB 54 requires voters to "present[] proof of United States citizenship to the registrar of motor vehicles or the deputy registrar" before they will be offered an opportunity to register at the BMV. The statute, however, does not specify what form this "proof" should take or what the acceptable documents may be.

63.     Other states that have passed proof-of-citizenship requirements for voter registration have defined "proof" differently, with no two states accepting the same set of

documents for that purpose. *See* Ariz. Rev. Stat. § 16-166(F) (2004); N.H. Rev. Stat. § 654:12(I)(a); Kan. Stat. Ann. § 25-2309(*l*); Wyo. Stat. Ann. §§ 22-1-102(a)(lvi), 22-3-103(a). However, obtaining these forms of proof of citizenship generally takes time and costs money. *See infra* Section VI.

64.     For instance, Arizona law states that "satisfactory evidence of United States citizenship" includes certain state-issued driver's licenses or non-driver identification card information, out-of-state driver licenses or identification if the card indicates U.S. citizenship, birth certificates, passports, naturalization documents or numbers, and tribal card numbers. Ariz. Rev. Stat. § 16-166(F). In addition, anyone registered before the statute went into effect was grandfathered in without having to provide proof of citizenship. *Id.* § 16-166(G). Courts have twice found that Arizona's efforts to implement proof-of-citizenship laws violate the NVRA. *Inter Tribal*, 570 U.S. at 15, 20; *Mi Familia Vota*, 129 F.4th at 710.

65.     New Hampshire's proof-of-citizenship law, passed in 2024, allows voters to submit a birth certificate, passport, naturalization papers, or "any other reasonable documentation which indicates the applicant is a United States citizen." N.H. Rev. Stat. § 654:12(I)(a).

66.     But when Wyoming passed a proof-of-citizenship law the following year, it declined to include any catch-all option, instead requiring voters to submit at least one of the "proofs" of citizenship listed in the statute: a valid Wyoming driver's license or identification card; a valid tribal identification card from a federally recognized Indian tribe; a valid state ID that is consistent with the REAL ID Act; a valid U.S. passport; a certificate of U.S. citizenship; a certificate of naturalization; a U.S. military draft record or a selective service registration acknowledgment card; a consular report of birth abroad issued by the U.S. Department of State; or "[a]n original or certified copy of a birth certificate in the United States bearing an official seal."

Wyo. Stat. Ann. §§ 22-1-102(a)(lvi)(J), 22-3-103(a) (eff. July 1, 2025).

67.     In addition to different types of documents, different states' proof-of-citizenship laws also have different requirements about how that "proof" can be submitted. For example, the proof-of-citizenship laws enacted in Arizona, New Hampshire, Kansas, and Wyoming all allow a voter to prove their citizenship by submitting a birth certificate, but have different specifications about that submission. Arizona and Kansas accept photocopies of the applicant's birth certificate. Ariz. Rev. Stat. § 16-166(F)(2) (2004); Kan. Stat. Ann. § 25-2309(l)(2). Wyoming accepts only "[a]n original or certified copy of a birth certificate in the United States bearing an official seal." Wyo. Stat. Ann. §§ 22-1-102(a)(lvi)(J), 22-3-103(a). And New Hampshire does not specify whether a photocopied birth certificate will suffice or not. N.H. Rev. Stat. § 654:12(I)(a).

68.     HB 54, on the other hand, provides no guidance whatsoever as to what constitutes sufficient "proof" that someone is a citizen. As a result, Ohio citizens and BMV employees are left to guess what it means to "prove" that one is a citizen under Ohio law, thereby exacerbating the statute's unnecessary burdens on Ohio citizens trying to vote.

**V.     There is no evidence of any meaningful amount of noncitizen voting in Ohio or elsewhere.**

69.     During legislative debates on HB 54, the proponents of HB 54's proof-of-citizenship requirement offered no reasoning or justification for its inclusion. But to the extent that HB 54's ostensible purpose is to prohibit noncitizens from voting, it is a solution in search of a problem.

70.     Unlawful voting by noncitizens is exceptionally rare. Millions of votes are cast in each federal election in Ohio, and yet the State has prosecuted only a small handful of isolated incidents of noncitizen voting.

71.     Prior to HB 54's enactment, Ohio already had in place many safeguards against

noncitizens voting, and those preexisting mechanisms have long effectively ensured the integrity of Ohio elections.

72.     Both federal and Ohio law make it a crime for noncitizens to vote. *See* 18 U.S.C. § 611; Ohio Rev. Code §§ 3599.12(A)(1), (B) (voting or attempted voting by ineligible persons is a felony), 3503.01 (limiting voter eligibility to citizens); *see also* Ohio Rev. Code § 3599.11(A) (knowingly registering or attempting to register to vote when not a "qualified voter" is a felony); *id.* (knowingly making any false statement on a voter registration form is a felony). If a noncitizen attempts to vote, federal law also makes that noncitizen permanently "inadmissible" under federal immigration law, absent narrow exceptions. 8 U.S.C. § 1182(a)(6)(C)(ii), (a)(10)(D).

73.     In addition, whenever an individual registers to vote in Ohio, they must attest under penalty of perjury that they are a U.S. citizen.

74.     Ohio's voter registration form makes clear that a person must be a U.S. citizen to register to vote and requires a declaration under penalty of perjury that the applicant is a U.S. citizen. The form contains a list of eligibility requirements, the first of which is "You are a citizen of the United States." *See* Ohio Voter Registration Form, *available at* https://perma.cc/8QNN-WC2E. It also includes the question: "Are you a U.S. citizen?", and states that answering that question is "**required by law**" and "You *must* answer . . . the question[] for your registration to be processed." *Id.* (bolding and italics in original).

75.     Immediately after the questions asking whether an applicant is a citizen and will be 18 years old at the time of the next general election, the form states: "**IF YOU ANSWERED NO TO EITHER OF THE QUESTIONS, DO NOT COMPLETE THIS FORM.**" *Id.* (emphasis in original).

76.     The form also states: "I declare under penalty of election falsification I am a citizen

of the United States[,]" and contains a space for the applicant's signature. *Id.* The form also contains the warning, in bold capitals, that "**WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE.**" *Id.*

77.     A portion of the voter registration form that contains many of these warnings appears below.



78.     Ohio also allows residents to submit an application to vote online. *See* Ohio Rev. Code § 3503.20. Similar to Ohio's paper voter registration form, the online application requires the applicant to affirm the statement "I am a United States citizen," again under penalty of election falsification, which the form states is a felony. *Id.* § 3503.20(D)(3).

79.     Applicants in Ohio may also register using the Federal Form, which also requires applicants to attest to their citizenship under penalty of perjury. *See* Nat'l Mail Voter Registration Form, *available at* https://perma.cc/64DE-FSDH; *see also* 52 U.S.C. § 20508(b).

80.     None of these other means of registering to vote in Ohio requires applicants to provide "proof of United States citizenship" beyond an attestation under penalty of perjury. Ohio only includes this additional proof-of-citizenship evidentiary requirement when an applicant applies to register to vote at the BMV.

81.     Given the conspicuous warnings about noncitizen voting contained on voter registration forms, as well as the substantial criminal and other consequences that a noncitizen would face from illegally voting, it is unsurprising that actual instances of noncitizen voting are vanishingly rare.

82.     That reality is borne out in Ohio, notwithstanding sensational claims by some Ohio politicians, including Secretary LaRose. On multiple occasions, Secretary LaRose referred large numbers of alleged instances of noncitizen voting to Ohio's Attorney General for investigation, yet those referrals have resulted in only a small handful of prosecutions.

83.     As of September 2023, Secretary LaRose had referred more than 520 allegations of voter fraud by noncitizens, but only one of those referrals resulted in a noncitizen being charged. In August 2024, Secretary LaRose again referred 597 instances of alleged noncitizens who registered to vote in Ohio. Only six of those referrals resulted in indictments for illegal voting, one of which was promptly dropped when the State realized the charged defendant had died two years beforehand. Thus, despite Secretary LaRose's best efforts—scouring over a decade of voter registrations and vote history—he has been able to find only scant evidence of noncitizens voting.

84.     In response to questions about those referrals and the resulting prosecutions, Attorney General Dave Yost "repeatedly stressed that the number of actual charges is extremely low." Nick Evans, *Att'y Gen. Dave Yost announces six voter fraud indictments two weeks from Election Day*, Ohio Cap. J. (Oct. 23, 2024), https://perma.cc/F9DM-GTZ9. Attorney General Yost

stated that, "this should enable everybody to take a deep breath and be more confident that our elections are, in fact, safe and secure, *and the noncitizens are not going to vote.*" *Id.* (emphasis added). Attorney General Yost echoed the same sentiments in a press release announcing the charges, stating: "Irregularities like this are rare, and this is a small number of cases. . . . We should all be confident in the upcoming election[.]" Press Release, Off. of Ohio Att'y Gen., Grand Juries Indict 6 for Illegal Voting (Oct. 22, 2024), *available at* https://perma.cc/DMW2-VH8E.

85.     Even assuming that these indictments (which number in the single-digits) all resulted in convictions for unlawful voting, that small number of incidents of noncitizen voting would represent an infinitesimal percentage of the numbers of registered voters and number of votes cast in any Ohio election.

86.     Ohio is the seventh most populous state in the country, with over 8.1 million registered voters, and its citizens cast more than 5.8 million votes in the 2024 general election and more than 5.9 million votes in the 2020 general election. Recent midterm elections likewise involved millions of votes, with more than 4.2 million voting in the 2022 general election and more than 4.4 million in the 2018 general election.

## VI.     Proof-of-citizenship requirements like those in HB 54 impose needless burdens on citizens trying to vote.

87.     HB 54 does not specify what qualifies as "proof of United States citizenship" and Ohio has not promulgated administrative guidance explaining how a BMV customer must "prove" the person's citizenship. A person is currently left to guess what "proof" would suffice. The kinds of documents that other states that have adopted proof-of-citizenship laws have deemed acceptable—such as U.S. passports, birth certificates, and marriage and divorce certificates in the event of a name change—all require additional costs and delays to obtain.

88.     Only 37% of Ohio citizens have a valid U.S. passport, and over 7.2 million Ohio

citizens do not possess a valid U.S. passport. Obtaining a valid passport normally costs $165 and takes as long as 10 weeks, or longer when the State Department is backlogged.

89.     These long document processing and wait times can exclude qualified voters, who must be registered at least 30 days before an election. Ohio Rev. Code § 3503.01(A).

90.     Likewise, a citizen normally cannot promptly obtain a certificate of citizenship, where median processing times can range from three to more than six months.

91.     Obtaining citizenship documents also imposes financial burdens. It costs approximately $21 to $25 to obtain a copy of a birth certificate in Ohio, with estimated processing times of 4 to 6 weeks.

92.     Even so, for many voters, birth certificates alone will not be sufficient to prove citizenship. For instance, about 84% of American women change their names when they marry or divorce, so many women do not possess documents that match their current legal name. For over 2.6 million women in Ohio, their birth certificates do not match their legal name.

93.     Copies of marriage and divorce certificates may link these women to their proof-of-citizenship documents, but they must obtain certified copies from specific county probate courts, which will result in additional delay and processing fees.

94.     These concerns are of particular importance to Red Wine & Blue and the Alliance, both of which have a substantial number of women in their membership, many of whom have married or divorced.

95.     Further, it is not entirely clear that birth certificates would even be deemed sufficient proof of citizenship. An executive order signed by President Trump—now enjoined in federal court—purported to add proof-of-citizenship requirements to the Federal Form but did not consider birth certificates sufficient proof of citizenship. *See* Exec. Order No. 14248, *Preserving*

*and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14005 (Mar. 25, 2025); *LULAC*, 780 F. Supp. 3d at 225 (temporarily enjoining proof-of-citizenship requirement).

96.     Proof-of-citizenship laws passed by other states have consistently disenfranchised qualified U.S. citizens, even though they have varied in what constitutes acceptable proof of citizenship.

97.     After the Supreme Court found that Arizona's proof-of-citizenship law violated the NVRA as applied to federal elections, Arizona implemented a system that created two classes of voters: one class that provided proof of citizenship when they registered were able to vote in any election, and a second class that did not provide "proof" and were thus designated "Federal-Only" voters were permitted to vote only for federal offices.

98.     As of July 2023, Arizona had designated 19,439 active "Federal-Only" voters who were barred from voting in state elections because they did not provide proof of citizenship required under the law.

99.     There has been no evidence that the "Federal-Only" voters in Arizona are not citizens. *See Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 1011 (D. Ariz. 2024) (noting "the absence of evidence that Arizona's 19,439 Federal-Only Voters are non-citizens"), *aff'd in part, vacated in part on other grounds, remanded,* 129 F.4th at 691.

100.     Similarly, the proof-of-citizenship law in Kansas caused 31,089 people to have their voter registration applications canceled because they did not provide satisfactory proof of citizenship. *Fish II*, 957 F.3d at 1128. Ultimately, "approximately 12% of the total voter registration applications submitted [after] the law was implemented" were suspended or canceled. *Id*. The Tenth Circuit held that the Kansas law was both unconstitutional and preempted by the NVRA. *Id.* at 1111.

101.     History repeated itself after New Hampshire passed its proof-of-citizenship law in 2024. In the first elections conducted under the law, reportedly as high as 30% of new voters in some New Hampshire towns were turned away and unable to vote because they did not present the required proof under the new law.

102.      Ohio's proof-of-citizenship requirement will also assuredly and needlessly prevent qualified individuals from registering to vote. Although HB 54's proof-of-citizenship requirement applies only to individuals applying to register at the BMV, that is a popular and convenient method for voter registration in Ohio, with a substantial and increasing number of Ohio residents registering to vote at the BMV. According to BMV records, more than 139,000 new voters were registered by BMV deputy registrars in 2021, more than 167,000 in 2022, more than 191,000 in 2023, and more than 227,000 in 2024.

## CLAIMS FOR RELIEF

### COUNT I
### National Voter Registration Act § 5
### 52 U.S.C. § 20504
### Against All Defendants

103.     Plaintiffs reallege and reincorporate the above allegations as though fully set forth herein.

104.     Section 5 of the NVRA mandates that all applications for a motor vehicle driver's license, including any renewal application, "shall serve as an application for voter registration with respect to elections for Federal office." 52 U.S.C. § 20504(a)(1).

105.     Section 5 of the NVRA further provides that voter registration applications offered at state motor vehicle authorities "may require only the minimum amount of information necessary to . . . enable State election officials to assess the eligibility of the applicant." *Id.* § 20504(c)(2)(B)(ii).

106. Section 5 also mandates that the voter registration portion of the driver's license application must require applicants to attest under penalty of perjury that they meet all state requirements to be eligible to vote, "including citizenship." *Id.* § 20504(c)(2)(C).

107. HB 54's requirement that a person "present[] proof of United States citizenship" violates Section 5 of the NVRA because this additional "proof" is not "necessary" to assess an applicant's eligibility. *See Fish I*, 738 F.3d at 738–39; *Fish II*, 957 F.3d at 1144.

108. Ohio has not—and cannot—demonstrate that the attestation requirement is inadequate to ensure that only citizens vote. *See Fish II*, 957 F.3d at 1139, 1142; *Fish I*, 840 F.3d at 737, 739. Indeed, Ohio allows residents to register to vote based on an attestation of citizenship in all methods of registration except for registration at the BMV.

109. Ohio cannot overcome the presumption that attestation constitutes the minimum amount of information necessary for a state to carry out its eligibility assessment and registration duties and has not demonstrated that substantial numbers of noncitizens successfully registered to vote notwithstanding the already-existing attestation requirement.

110. Consequently, HB 54's proof-of-citizenship requirement violates Section 5 of the NVRA.

**COUNT II**
**National Voter Registration Act § 8**
**52 U.S.C. § 20507**
**Against All Defendants**

111. Plaintiffs reallege and reincorporate the above allegations as though fully set forth herein.

112. Section 8 of the NVRA sets forth requirements that states must follow when administering voter registration for federal elections. It requires that states "ensure that any eligible applicant is registered to vote in an election" within a certain timeframe, depending on how they

submitted their application. 52 U.S.C. § 20507(a)(1). For applications made in conjunction with a motor vehicle driver's license application, the state must ensure that eligible applicants are registered to vote within 30 days of the valid voter registration form being submitted to the state motor vehicle authority. *Id.* § 20507(a)(1)(A).

113. A registrant demonstrates his or her eligibility by submitting a registration form attesting to eligibility, including that the registrant is a United States citizen.

114. Under section 8 of the NVRA, it is unlawful to deny registration to facially eligible applicants for failing to submit additional proof of citizenship beyond attestation.

115. Ohio's failure to offer BMV customers the opportunity to register to vote unless they provide additional proof of citizenship beyond attestation violates Section 8 of the NVRA.

116. In addition, section 8 of the NVRA requires that any state program to protect election integrity must be "uniform" and "nondiscriminatory." 52 U.S.C. § 20507(b)(1).

117. Because Ohio has provided no guidance on how an applicant may prove their citizenship, BMV officials across the State will be unable to administer the proof-of-citizenship requirement in a "uniform" way.

118. Consequently, HB 54's proof-of-citizenship requirement violates section 8 of the NVRA.

<u>**COUNT III**</u>
**Unconstitutionally Vague in Violation of the First and Fourteenth Amendments**
**U.S. Const. Amend. I, XIV, 42 U.S.C. § 1983**
**Against All Defendants**

119. Plaintiffs reallege and reincorporate the above allegations as though fully set forth herein.

120. Under the Fourteenth Amendment to the U.S. Constitution, states are proscribed from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV, § 1.

121.    A law is unconstitutionally vague if it (1) "fails to provide people with ordinary intelligence a reasonable opportunity to understand what it says" or (2) "authorizes or encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

122.    "Vague laws in any area suffer a constitutional infirmity." *Ashton v. Kentucky*, 384 U.S. 195, 200 (1966).

123.    When a statute "interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)).

124.    But "[e]ven when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

125.    "Where a statute or rule does not itself provide fair notice of what it proscribes, an agency might adopt a clarifying interpretation sufficient to provide fair notice. An agency may not, however, use such an interpretation, even if it is reasonable, as a basis for sanctioning conduct that preceded its issuance." 32 Wright & Miller's Fed. Prac. & Proc. § 8141 (2d ed. updated May 22, 2025) (footnote omitted).

126.    HB 54's proof-of-citizenship requirement implicates the First Amendment rights of voting-eligible Ohio citizens, including Plaintiffs' members, because it burdens and regulates these citizens' abilities to register to vote.

127.    HB 54's proof-of-citizenship requirement implicates voting-eligible Ohio citizens'

fundamental right to vote under the First and Fourteenth Amendments.

128.     HB 54 does not define "proof of United States citizenship," nor does it specify what forms of documentation will suffice to prove citizenship.

129.     Different states have specified different forms of proof of citizenship, and the other forms of voter registration in Ohio do not require proof of citizenship beyond attestation and provide no guidance as to what may constitute proof of citizenship.

130.     Neither the Secretary of State nor the Registrar have provided any guidance on the documents that constitute sufficient proof of citizenship.

131.     Consequently, HB 54's proof-of-citizenship requirement is unconstitutionally vague.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

a)  Declaring that HB 54's proof-of-citizenship provision violates the National Voter Registration Act and the First and Fourteenth Amendments to the U.S. Constitution;

b)  Enjoining Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from taking any steps to implement and enforce the proof-of-citizenship provision of HB 54;

c)  Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and other applicable laws; and

d)  Granting such other and further relief as the Court deems just and proper.


By: _/s/ J. Corey Colombo_____
J. Corey Colombo (0072398)
MCTIGUE & COLOMBO, LLC

545 East Town Street
Columbus, OH 43215
Tel: (614) 263-7000
ccolombo@electionlawgroup.com

Ben Stafford*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Tel: (206) 656-0176
bstafford@elias.law

Joshua Abbuhl*
Qizhou Ge*
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
Tel: (202) 968-4652
jabbuhl@elias.law
age@elias.law

*Attorneys for Plaintiffs*
*\* Pro hac vice applications forthcoming*