**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RED WINE & BLUE, and OHIO ALLIANCE FOR RETIRED AMERICANS, | : <br> : <br> : <br> : |
| Plaintiffs, | :   **Case No. 1:25-cv-01760** <br> : <br> :   **Judge Solomon Oliver, Jr.** |
| v. | : <br> :   **Mag. Judge James E. Grimes, Jr.** |
| FRANK LAROSE, in his official capacity as Ohio Secretary of State; and CHARLES L. NORMAN, in his official capacity as Ohio's Registrar of Motor Vehicles, | : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : |

---

**DEFENDANTS' COMBINED MOTION TO DISMISS AND PARTIAL MOTION FOR
JUDGMENT ON THE PLEADINGS**

---

Under Federal Rule of Civil Procedure 12, Defendants respectfully move this Court to dismiss this case or issue a partial judgment on the pleadings in their favor. Because Plaintiffs lack standing, this Court lacks jurisdiction. Furthermore, Plaintiffs' unconstitutional vagueness claim and claim under Section 8 of the National Voter Registration Act both fail as a matter of law. A more detailed explanation of the reasons for this Motion can be found in the attached Memorandum in Support.

<div style="margin-left:40%">

Respectfully submitted,
DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*

ANN YACKSHAW (0090623)*
*Counsel of Record*
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)

</div>

Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov

*Counsel for Defendants*

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

Federal courts do not "operate as an open forum for citizens to press general complaints about the way in which government goes about its business." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (cleaned up). That is precisely what Plaintiffs seek to do in this case. Plaintiffs, a pair of citizen-activism organizations, ask this Court to weigh in on the validity of Ohio's motor-voter procedures vis-à-vis documentary proof of citizenship. But they lack the standing to do so. Neither Plaintiff has plausibly alleged injury, traceability, and redressability—either on their own behalf, or on behalf of their members. This is so largely because anyone applying for an Ohio credential is already required to provide proof of legal presence in Ohio, which means the new statute will not affect them in any way. And Plaintiffs' policy disagreements with Ohio's BMV procedures are not enough to satisfy Article III. Even if Plaintiffs could establish standing, their vagueness claims fail as a matter of law. Plaintiffs overlook statutory and regulatory provisions that spell out precisely which documents prove citizenship or legal presence in Ohio.

Accordingly, this Court should dismiss Plaintiff's Complaint for lack of jurisdiction. Alternatively, this Court should grant Defendants judgment as a matter of law on Plaintiff's vagueness clams.

**BACKGROUND**

Ohioans wishing to obtain a driver's license or state identification card must present documentary proof of their legal presence in the United States. Ohio Admin. Code § 4501:1-1-21(C). An Ohio regulation sets forth the six types of acceptable proof. Ohio Admin. Code § 4501:1-1-21(G). Five of the documents establish citizenship: birth certificates, consular reports of birth abroad, U.S. passports, U.S. passport cards, and U.S. naturalization documents. Ohio Admin. Code § 4501:1-1-

1

21(G)(1)–(5). One of the listed documents—U.S. Citizenship and Immigration Services documents showing legal presence—necessarily establishes non-citizenship along with legal presence. Ohio Admin. Code § 4501:1-1-21(G)(6). Applicants for Ohio credentials who present documents establishing both non-citizenship and legal presence receive credentials designating them as non-citizens. Ohio Rev. Code § 4507.13(A)(2)(j) (driver's license); Ohio Rev. Code § 4507.52(A)(2) (state identification card); Ohio Rev. Code § 4506.11(A)(13) (commercial driver's license). Of course, these non-citizens cannot vote and cannot register to vote. *See* Ohio Const. art. V, § 1.

Because Ohioans necessarily present proof of citizenship (or non-citizenship) through their applications for Ohio credentials, registrars and deputy registrars know which applicants are eligible to register to vote. So, in March 2025, the Ohio General Assembly, through its biennial transportation appropriations bill, amended Ohio Revised Code § 3503.11(A)(1). Am. Sub. H.B. 54, 136th Gen. Assemb. (Ohio 2025). Section 3503.11(A)(1) concerns the process through which a person who is applying for a driver's license or other Ohio identification card is offered an opportunity to register to vote. Ohio Rev. Code § 3503.11(A)(1). In its amended form, § 3503.11(A)(1) requires a registrar or deputy registrar to offer a voter registration application to any identification applicant who "presents proof of United States citizenship" or had previously done so. *Id.* Notably, § 3503.11(A)(1) uses the language of obligation, not prohibition; it imposes a requirement on registrars or deputy registrars to offer a voter registration application to proven citizens. *Id.*

Plaintiffs, a pair of citizen organizations, objected to these amendments. Compl. ¶ 15, Dkt. 1 at PageID 5. Believing § 3503.11(A)(1) to be in violation of the National Voter Registration Act ("NVRA"), on May 23, 2025, Plaintiffs sent a written notice of the alleged violations to Defendant Secretary of State LaRose under 52 U.S.C. § 20510(b). Compl. ¶ 15, Dkt. 1 at PageID 5. Defendant LaRose responded on August 21, 2025. Compl. ¶ 15, Dkt. 1 at PageID 5. Included in Defendant

LaRose's response was a list of the documents sufficient to establish legal presence and citizenship. Answer ¶ 15, Exs. 1–2. Plaintiffs then filed this suit, alleging § 3503.11(A)(1) violates the NVRA and is unconstitutionally vague. Compl. ¶¶ 5–11, Dkt. 1 at PageID 2–3.

Plaintiff Red Wine & Blue ("RWB") "is a membership organization whose mission is to empower women to engage in political discourse and to work together to counter extremism by building connections and organizing their communities." Compl. ¶ 20, Dkt. 1 at PageID 6. RWB alleges its "members regularly engage with and communicate with [RWB] through organizing and voter education emails and social medica posts and virtual and in-person organizing events." Compl. ¶ 21, Dkt. 1 at PageID 6. RWB's "core mission" "involves encouraging its members to vote, to be politically engaged, and to organize their communities to be politically engaged." Compl. ¶ 22, Dkt. 1 at PageID 6. RWB alleges that it "regularly reminds members to check their voter registration and update their registration if they have moved." Compl. ¶ 22, Dkt. 1 at PageID 6.

Plaintiff Ohio Alliance for Retired Americans ("OARA") is an affiliate member of the Alliance for Retired Americans "consisting of retirees from public and private sector unions, who reside throughout Ohio." Compl. ¶¶ 32–33, Dkt. 1 at PageID 10. OARA's "mission is to protect the civil rights of retirees and to ensure that they obtain social and economic justice." Compl. ¶ 34, Dkt. 1 at PageID 10. "Central to that mission is ensuring that its members are able to register and turn out to vote." Compl. ¶ 34, Dkt. 1 at PageID 10.

Plaintiffs allege they have been harmed by § 3503.11(A)(1) in several different ways. RWB asserts injury to both its organization and its members. Compl. ¶¶ 20–31, Dkt. 1 at PageID 6–9. As to its organization, RWB notes that because one of its "core missions" is "ensuring that [its] members are able to register, vote, and participate in the political process" the changes to § 3503.11(A)(1), as RWB interprets them, will frustrate that mission by "mak[ing] it hard for their members to make

3

their voices heard through the ballot box." Compl. ¶ 12, Dkt. 1 at PageID 4. RWB argues its organization will be particularly harmed because women and older citizens, two demographics that comprise a large share of RWB, "are more likely to lack proof-of-citizenship documents." Compl. ¶ 27, Dkt. 1 at PageID 8.

RWB also alleges injury to its members. It offers two examples. The first, Peggy Dutcher, recently moved to Ohio from another state and alleges that she "intends to register to vote at the BMV when she gets her driver's license." Compl. ¶ 29, Dkt. 1 at PageID 9. According to the Complaint, "Ms. Dutcher possesses a passport," but "she strongly believes that she and other U.S. citizens should not be required to produce a passport or other document to the State in order to register to vote." Compl. ¶ 29, Dkt. 1 at PageID 9.

RWB's next representative member is Gia Borgerson. Ms. Borgerson "recently moved back to Ohio from another state." Compl. ¶ 30, Dkt. 1 at PageID 9. Although she has already registered to vote in Ohio, she alleges that "she intends to change her legal name in approximately two months, at which point she will need to update her voter registration." Compl. ¶ 30, Dkt. 1 at PageID 9. "She intends to do so at the BMV when she updates her driver's license to reflect her new name." Compl. ¶ 30, Dkt. 1 at PageID 9. She "does not wish to" "obtain, locate, and product proof of citizenship to register to vote at the BMV," "because she strongly believes that Ohio should not impose needless burdens on citizens who are trying to register to vote." Compl. ¶ 30, Dkt. 1 at PageID 9.

OARA makes similar injury claims but lacks representative members. As for its alleged organizational harm, OARA argues the amendments to § 3503.11(A)(1) will frustrate its mission by "threaten[ing] the right to vote of Alliance members who are otherwise eligible to vote." Compl. ¶ 34, Dkt. 1 at PageID 10. As for the harm to its members, OARA asserts its members "will not be offered the opportunity to register to vote unless they produce acceptable proof of citizenship."

4

Compl. ¶ 35, Dkt. 1 at PageID 11. "Those burdens fall disproportionately on [OARA]'s members, which broadly include older voters. Older voters are more likely to lack proof-of-citizenship documents such as passports or birth certificates; or, if they have a birth certificate, it may be worn or illegible, or otherwise unacceptable to the BMV to prove citizenship." Compl. ¶ 36, Dkt. 1 at PageID 11.

## LAW AND ARGUMENT

### A.      Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A Rule 12(b)(1) motion "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.* (citation omitted).

"A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.* "But 'a legal conclusion couched as a factual allegation' need not be accepted as true." *Marlin v. Associated Materials, LLC*, No. 5:23CV1621, 2024 U.S. Dist. LEXIS 91365, at *5 (N.D. Ohio May 22, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6)." *Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (citation omitted).

"Like a facial challenge under Rule 12(b)(1), 'the standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.'" *Bus. Dev. Corp. v. Rutter & Russin, LLC*, No. 1:19-cv-2609, 2021 U.S. Dist. LEXIS 67279, at *12 (N.D. Ohio Apr. 7, 2021) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)).

**B.     Standing is a jurisdictional prerequisite, and organizations may assert standing in two ways.**

"[Federal courts] do not have a standalone power to evaluate the constitutionality of every law passed by [a legislature] or every initiative implemented by [an executive]." *Ass'n of Am. Physicians & Surgs v. FDA*, 13 F.4th 531, 536 (6th Cir. 2021) (citing *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011)). Article III limits the power of the judiciary to deciding "Cases" or "Controversies" between litigants. U.S. Const. art. III, § 2.

"For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560–61 (1992)).

"An organization may have standing in two forms: (1) associational standing, where it alleges an injury to its members and sues on their behalf; and (2) organizational standing, where it alleges an injury to the organization itself and sues on its own behalf." *Am. Marriage Ministries v. Collins*, 781 F. Supp. 3d 669 (E.D. Tenn. 2025) (citing *All. for Hippocratic Med.*, 602 U.S. at 393); *accord Online Merchs. Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021). Regardless of the theory of standing asserted, "[t]he party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up).

**C.     Plaintiffs lack associational standing**

Associational standing "sometimes permits an entity to sue over injuries suffered by its members." *Ass'n of Am. Physicians & Surgs.*, 13 F.4th at 537. This form of third-party standing has been circumscribed in recent years, and its continued viability has been called into question. *See id.*

6

at 537–42 (noting that "it is hard to see how the Supreme Court's more recent caselaw on standing has not undercut its associational-standing test," but recognizing that it has not been formally overturned). Nevertheless, under current law, an organization may establish associational standing if it satisfies three elements: "(1) its 'members would otherwise have standing to sue in their own right'; (2) the 'interests' that the suit 'seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Id.* at 537 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

"[A]n organization must do more than identify a likelihood that the defendant's conduct will harm an unknown member in light of the organization's extensive size or membership base." *Id.* at 543 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009)). "The organization must instead identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Id.*

### 1. RWB has failed to demonstrate associational standing

RWB identifies two members on whose behalf it seeks to bring this suit. Neither individual satisfies the elements of associational standing because neither individual would have standing to sue in their own right. Start with Peggy Dutcher. She recently moved to Ohio from another state and plans to register to vote at the BMV when she applies for a driver's license. Compl. ¶ 29, Dkt. 1 at PageID 9. She possesses a passport, but she "strongly believes" she should not have to produce it to register to vote. Compl. ¶ 29, Dkt. 1 at PageID 9.

Ms. Dutcher has failed to satisfy any of the three elements of standing. First, she has not pleaded a "concrete, particularized, and actual or imminent" injury. *TransUnion LLC*, 594 U.S. at 423. Ms. Dutcher has not alleged, for instance, that she will be unable to produce the required documents and thus be unable to register to vote, only that she is morally opposed to doing so. *See*

7

Compl. ¶ 29, Dkt. 1 at PageID 9. But she "cannot sue based on the 'psychological' distress [she] may suffer from a law [she] dislike[s]." *Tenn. Conference of the NAACP v. Lee*, 139 F.4th 557, 562 (6th Cir. 2025) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982)). Her moral opposition is insufficient to prove injury. *See All. for Hippocratic Med.*, 602 U.S. at 381 ("By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action."); *see also id.* ("Nor may citizens sue merely because their legal objection is accompanied by a strong moral, ideological, or policy objection to a government action." (citation omitted)); *Kachinski v. City of Taylor*, No. 2:25-cv-11975, 2025 U.S. Dist. LEXIS 143051, at *9 (E.D. Mich. July 25, 2025) ("[S]imply being a concerned citizen who disagrees with [governmental] action—absent a 'personal and individual' harm—is not enough to create standing to challenge such action." (citation omitted)).

Second, Ms. Dutcher's alleged injury is not traceable to the amendments to § 3503.11(A)(1). She alleges that she intends to register to vote when she applies for her driver's license. Compl. ¶ 29, Dkt. 1 at PageID 9. But the very same documents she objects to producing to register to vote are required to obtain a driver's license. *See* Ohio Admin. Code §§ 4501:1-1-21(C)(5), 4501:1-1-21(G)(1)–(5); Answer ¶ 4. Thus, her alleged injury is not traceable to the amendments to § 3503.11(A)(1) because she must produce those documents anyway. *See Murthy v. Missouri*, 603 U.S. 43, 68 n.8 (2024) ("The whole purpose of the traceability requirement is to ensure that 'in fact, the asserted injury was the consequence of the defendants' actions,' rather than of 'the independent action' of a third party." (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U. S. 26, 42, 45 (1976))). Additionally, the fact that Ms. Dutcher already has a passport readily available further undermines traceability. If she refuses to produce her passport, any injury will be self-inflicted,

8

which "by definition, is not traceable to anyone but [Ms. Dutcher]." *Buchholz v. Tanick*, 946 F.3d 855, 866 (6th Cir. 2020).

Third and finally, Ms. Dutcher's alleged injury is not likely to be redressed by an order from this Court. As discussed above, to obtain a driver's license, Ms. Dutcher will have to provide the very same documents she objects to producing. *See* Ohio Admin. Code §§ 4501:1-1-21(C)(5), 4501:1-1-21(G)(1)–(5); Answer ¶ 4. Thus, an order from this Court allowing Ms. Dutcher to register to vote through her driver's license application without documentation will not redress her alleged injury: she will still have to produce these documents to the registrar or deputy registrar during the application process. *See, e.g.*, *Miller v. City of Wickliffe*, No. 1:12-CV-1248, 2015 U.S. Dist. LEXIS 170196, at *16 (N.D. Ohio Dec. 21, 2015) (finding plaintiffs lacked standing to challenge a zoning ordinance because they lacked other necessary permits, so striking the ordinance would not redress their injury). In other words, because traceability is lacking, redressability is necessarily lacking, too. *See All. for Hippocratic Med.*, 602 U.S. at 380–81 (noting that causation and redressability "are often 'flip sides of the same coin.'" (citation omitted)); *R. K. v. Lee*, 53 F.4th 995, 1001 (6th Cir. 2022) ("Because the plaintiffs' injuries are not fairly traceable to any defendant here, no remedy applicable to those defendants (be it an injunction or a declaration) would redress the plaintiffs' alleged injuries.").

Much the same is true of Gia Borgerson. She registered to vote when she moved back to Ohio, but she alleges that she intends to change her name and update her voter registration. Compl. ¶ 30, Dkt. 1 at PageID 9. She plans to do so when she updates her driver's license at the BMV. Compl. ¶ 30, Dkt. 1 at PageID 9. Ms. Borgerson "does not wish to" "obtain, locate, and produce proof of citizenship" because she "strongly believes" that Ohio should not require such documentation for voter registration. Compl. ¶ 30, Dkt. 1 at PageID 9.

9

Much like with Ms. Dutcher, RWB lacks associational standing because Ms. Borgerson would lack standing to sue on her own behalf. First, she has not alleged a legally cognizable injury: her moral opposition to the law is not enough. *See All. for Hippocratic Med.*, 602 U.S. at 381; *Tenn. Conference of the NAACP*, 139 F.4th at 562. Notably, she has not alleged that she will be unable to produce these documents, only that she does not want to do so. *See* Compl. ¶ 30, Dkt. 1 at PageID 9.

Second, Ms. Borgerson's alleged injury, producing citizenship documents, is not traceable to § 3503.11(A)(1). Remember, Ms. Borgerson asserted she is planning to "update[] her driver's license." Compl. ¶ 30, Dkt. 1 at PageID 9. This means she either already has an Ohio license or plans to get one. If she is a citizen and already possesses an Ohio license, then she necessarily previously produced citizenship documents and does not need to produce them to register to vote—which would obviate her alleged injury altogether. *See* Ohio Admin. Code §§ 4501:1-1-21(C)(5), 4501:1-1-21(G)(1)–(5); Answer ¶ 4; Ohio Rev. Code § 3503.11(A)(1) (offering voter registration to an individual who "has previously presented proof of United States citizenship to the registrar or any deputy registrar"). If she is instead "updat[ing] her driver's license" by replacing her out-of-state license, she will need to produce citizenship documents to engage in that transaction, irrespective of the changes to § 3503.11. *See* Ohio Admin. Code §§ 4501:1-1-21(C)(5), 4501:1-1-21(G)(1)–(5); Answer ¶ 4. Thus, just like Ms. Dutcher, Ms. Borgerson's injury is not traceable to § 3503.11(A)(1) because her driver's license application independently requires the production of citizenship documents.

Third and finally, Ms. Borgerson's alleged injury is not redressable for much the same reasons as Ms. Dutcher. "Article III standing ultimately turns on whether a plaintiff gets something (other than moral satisfaction) if the plaintiff wins." *Drutis v. Rand McNally & Co.*, 499 F.3d 608,

10

612 (6th Cir. 2007) (emphasis omitted). Because Ms. Borgerson will be required to produce these documents regardless, an order from this Court would not cure her alleged injury.

Since neither Ms. Dutcher nor Ms. Borgerson could establish standing to sue on their own behalf, RWB lacks associational standing. *See Ass'n of Am. Physicians & Surgs.*, 13 F.4th at 537 (noting that associational standing requires "members [who] would otherwise have standing to sue in their own right"). This Court should grant Defendants' motion to dismiss for lack of subject-matter jurisdiction.

### 2. OARA has failed to demonstrate associational standing.[1]

Unlike RWB, OARA did not identify *any* members who will allegedly be injured by the amendments to § 3503.11(A)(1). At best, OARA identifies classes of individuals who may be affected by § 3503.11(A)(1): "older Americans" and "women who marry or divorce." Compl. ¶ 35, Dkt. 1, PageID 10–11. But these allegations are insufficient, because "an organization must do more than identify a likelihood that the defendant's conduct will harm an unknown member." *Ass'n of Am. Physicians*, 13 F.4th at 543.

Even if classes of individuals were acceptable representatives, OARA's allegations are nevertheless deficient. The fact that "older Americans" and "women who marry or divorce" may have more difficulty locating their proof of citizenship documents does not mean they will be injured by § 3503.11(A)(1). Even accepting OARA's misinterpretation of § 3503.11(A)(1), *see Marlin*, 2024 U.S. Dist. LEXIS 91365, at *5 ("'[A] legal conclusion couched as a factual allegation' need not be accepted as true." (quoting *Twombly*, 550 U.S. at 555)). OARA overlooks the fact that these same documents are required to obtain a driver's license or Ohio identification card. *See* Ohio Admin. Code §§ 4501:1-1-21(C)(5), 4501:1-1-21(G)(1)–(5); Answer ¶ 4. These hypothetical

---

[1] It is unclear whether OARA seeks to invoke associational standing, but Defendants will address it out of an abundance of caution.

11

individuals either already produced such documents or will have to do so to obtain their credential, regardless of whether they want to register to vote. Thus, the amendments to § 3503.11(A)(1) create no additional burden on these individuals.

By failing to identify members who are actually harmed by the amendments to § 3503.11(A)(1), OARA has failed to establish associational standing. *See Ass'n of Am. Physicians*, 13 F.4th at 543.

### D. Plaintiffs lack organizational standing

In addition to suing on behalf of its members, an organization may allege harm to the organization itself, so-called "organizational standing." *All. for Hippocratic Med.*, 602 U.S. at 393. Under this theory, "organizations may have standing 'to sue on their own behalf for injuries they have sustained.'" *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U. S. 363, 379, n.19 (1982)). But they must satisfy the traditional requirements of injury in fact, causation, and redressability. *Id.* at 394.

"Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct . . . ." *Id.* (cleaned up). "[T]he alleged injury must resemble the types of harms that litigants have traditionally gone to court over. So only 'concrete' and 'particularized' injuries—such as economic or physical harms—will suffice." *Tenn. Conference of the NAACP*, 139 F.4th at 562 (cleaned up) (quoting *TransUnion*, 594 U.S. at 424).

Moreover, causation is often more difficult to prove in the context of organizational standing. "When a law regulates a plaintiff (which must alter its conduct), this causal showing does not pose much difficulty." *Id.* (citing *Lujan*, 504 U.S. at at 561–62). But when a challenged law regulates "someone else," as is frequently the case when asserting organizational standing, "an unregulated party must show more to sue because it must trace its injuries to the enforcement of the law (rather

12

than the decisions of third parties not before the court).” *Id.* at 562–63 (citing *All. for Hippocratic Med.*, 602 U.S. at 384–85).

A helpful example comes from *Alliance for Hippocratic Medicine*. There, four pro-life medical associations challenged the FDA’s relaxed regulations of mifepristone, an abortion-inducing drug. 602 U.S. at 376. The organizations claimed they had standing because the FDA had “impaired” their “ability to provide services and achieve their organizational missions.” *Id.* at 394. The Court rejected this argument, noting that “[a] plaintiff must show ‘far more than simply a setback to the organization’s abstract social interests.’” *Id.* (quoting *Havens*, 455 U. S. at 379). Nor was it sufficient that the organizations had, in response to the FDA’s actions, “expend[ed] considerable time, energy, and resources.” *Id.*

In the wake of *Alliance for Hippocratic Medicine*, the Sixth Circuit tackled an organizational standing question in the context of the NVRA. In *Tennessee Conference of the NAACP v. Lee*, the NAACP challenged a policy requiring individuals with criminal convictions to produce additional documentation to confirm their eligibility to vote. 139 F.4th at 559, 565. The NAACP argued that “promoting voter registration and turnout” was among its core missions, and it would have to “divert significant resources” from other activities to assist applicants in “present[ing] additional paperwork.” *Id.* at 565. Although the court ultimately found standing lacking for factual reasons, it expressed doubts about whether this diversion-of-resources theory of standing remained available after *Alliance of Hippocratic Medicine*. *See id.* at 566.

The most analogous case, however, is *Equality State Policy Center v. Gray*, a recent case from the federal district court in Wyoming. Ex. A. There, an organization with a mission “to advance fair elections” challenged a Wyoming law requiring “proof of United States citizenship” and “proof of Wyoming residence” to register to vote. Ex. A at 1–2. The plaintiff alleged the new law directly

13

affected and interfered with its core activities, and the law required the organization to divert resources to help Wyomingites register to vote. Ex. A at 6. The court found these assertions insufficient to establish organizational standing. Ex. A at 7. The court noted that this diversion-of-resources injury was akin to the one the Supreme Court rejected in *Alliance for Hippocratic Medicine*. Ex. A at 8–9. Although the plaintiff would likely "have to alter the education and assistance it provides when educating potential voters," the new law "[did] not prohibit or preclude any [such] activity." Ex. A at 9–10. "Continuing to do something an organization already does, even in a newly modified manner, generally is not a concrete injury sufficient for Article III standing." Ex. A at 10 (citing *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459–60 (6th Cir. 2014) (noting "it is not an injury to instruct election volunteers about absentee voting procedures when the volunteers are being trained in voting procedures already")).

Turning to this case, RWB's and OARA's claims for organizational standing are functionally identical. Both assert they are "organizations whose core missions involve ensuring that their members are able to register, vote, and participate in the political process." Compl. ¶ 12, Dkt. 1 at PageID 4. They allege the amendments to § 3503.11(A)(1) will "hinder [their] missions and make it harder for their members to make their voices heard through the ballot box." Compl. ¶ 12, Dkt. 1 at PageID 4.

These allegations, even when accepted as true, fail to establish standing for at least three reasons. First, they have failed to demonstrate a legally cognizable injury to the organizations. The crux of their alleged injury is that § 3503.11(A)(1) makes it more difficult for their members to register to vote. Compl. ¶ 12, Dkt. 1 at PageID 4. It is unclear how the statute affects the organizations in any way. How will the organizations be harmed by a common-sense statute governing voter registration? The organizations themselves cannot vote. Plaintiffs allege that they

14

assist their members in registering to vote, and presumably the new § 3503.11(A)(1) could affect such assistance programs. Compl. ¶¶ 22, 34, Dkt. 1 at 6, 10. But "[c]ontinuing to do something an organization already does, even in a newly modified manner," is not sufficient to establish standing. Ex. A at 10 (citing *Fair Elections Ohio*, 770 F.3d at 459–60). And even if Plaintiffs' allegations can be read to imply that they will be required to expend more resources to help members register, that argument is undercut by *Alliance for Hippocratic Medicine*, *Tennessee Conference of the NAACP*, and *Equality State Policy Center*.

Second, Plaintiffs cannot sufficiently trace their alleged injury to the amendments to § 3503.11(A)(1). Take the diversion-of-resources theory first. Because any diversion of resources by Plaintiffs will be voluntary, its injuries will be "self-inflicted." *Tenn. Conference of the NAACP*, 139 F.4th at 564; *see also id.* (noting that in *Alliance for Hippocratic Medicine*, "the associations' *voluntary decision* to spend time and money opposing the FDA's actions broke any causal link between their expenditures and the challenged actions"). Similarly, even if Plaintiffs' allegations are liberally construed to imply that fewer of its members will ultimately register, which in turn will weaken the organization's political power, the causal link is nevertheless still lacking. Recall that "an unregulated party must show more to sue because it must trace its injuries to the enforcement of the law (rather than the decisions of third parties not before the court)." *Id.* at 562–63. Applying that test here, any such injury to Plaintiffs would be caused by "decisions of third parties," specifically its members, not to register.

Third and finally, because their alleged organizational injuries flow from their members, Plaintiffs face many of the same traceability and redressability problems shared by Ms. Dutcher and Ms. Borgerson. *See supra* Section C. For instance, because the same proof-of-citizenship documents are required to obtain an Ohio driver's license or identification card, *see* Ohio Admin. Code

15

§§ 4501:1-1-21(C)(5), 4501:1-1-21(G)(1)–(5); Answer ¶ 4, it is unclear whether § 3503.11(A)(1) will harm anyone at all. Similarly, Plaintiffs appear to overlook the text of § 3503.11(A)(1), which concerns when registrars and deputy registrars are required to provide voter registration applications, not when they are forbidden from doing so.

At the end of the day, it is worth remembering that the standing requirements derived from Article III "prevent[] the federal courts from becoming a 'vehicle for the vindication of the value interests of concerned bystanders.'" *All. for Hippocratic Med.*, 602 U.S. at 382 (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984)). Plaintiffs are precisely that: concerned bystanders with strong opinions about voter registration procedures. But their level of interest does not confer standing on this Court to adjudicate their claims. *See id.* (noting that the "intensity of the litigant's interest" or "strong moral opposition" are not bases for standing). Plaintiffs have failed to demonstrate either associational or organizational standing, depriving this Court of jurisdiction.

**E.   Even if Plaintiffs have standing, their vagueness claims under the Constitution and the NVRA[2] are deficient as a matter of law.**

**1.   Plaintiffs' vagueness claim under the U.S. Constitution fails because the BMV's regulations provide fair notice of the documents that establish U.S. citizenship.**

Plaintiffs' void-for-vagueness claim ignores an on-point regulation that provides the precise guidance Plaintiffs claim is lacking. This claim therefore fails as a matter of law.

A statute may be unconstitutionally vague if it either (1) fails to provide fair notice, i.e., fails to apprise people of ordinary intelligence what conduct it prohibits or (2) authorizes or encourages arbitrary and discriminatory enforcement. *Platt v. Bd. of Comm'rs on Grievs. & Disc. of the Ohio Supreme Ct.*, 894 F.3d 235, 246 (6th Cir. 2018) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

---

[2] Count II of Plaintiffs' Complaint alleges that Ohio Rev. Code § 3503.11 violates two subsections of Section 8 of the NVRA: 52 U.S.C. § 20507(a)(1)(A), *see* Compl. ¶¶ 112–14, Dkt. 1 at PageID 27–28, and 52 U.S.C. § 20507(b)(1), *see* Compl. ¶ 116–18, Dkt. 1 at PageID 28. Defendants move for judgment on the pleadings only on the claim under 52 U.S.C. § 20507(b)(1).

A court should examine the "words of the [law] itself" when determining whether it affords fair notice. *Id*. (quoting *Grayned v. City of Rockford*, 408 U.S 104, 110 (1972)). A statute's failure to define a term "will not render the statute void for vagueness" if the term's common meaning provides adequate notice of the prohibited conduct. *Id*. at 247. And as to discriminatory enforcement, the court should consider whether the statute "provides explicit standards guiding its enforcement." *Id*. at 252 (quoting *United Food & Com. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998)).

Under both strains of the vagueness analysis, fair notice and arbitrary enforcement, the court should "consider not only the challenged language, but also those phrases and words in the context of the law in its entirety." *Stevens v. City of Columbus*, No. 21-3755, 2022 U.S App. LEXIS 20829, at *15 (6th Cir. July 27, 2022). The court may not, for example, ignore regulations implementing the challenged statute. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 504 (1982) ("The village may adopt administrative regulations that will sufficiently narrow potentially vague or arbitrary interpretations of the ordinance. In economic regulation especially, such administrative regulation will often suffice to clarify a standard with an otherwise uncertain scope."); *see also Or. Ass'n of Hosps. & Health Sys. v. Oregon*, No. 24-3770, 2025 U.S. App. LEXIS 16395, at *6 (9th Cir. July 3, 2025) ("[T]he statute's plain text, combined with [the Oregon Health Authority's] rules promulgating criteria and its sub-regulatory guidance on how those criteria are applied, provide sufficient notice to weigh against a finding of vagueness.").

Here, the challenged statute survives a vagueness challenge as a matter of law. In conjunction with the applicable regulations,[3] § 3503.11(A)(1) informs a person of ordinary intelligence what

---

[3] This Court may take judicial notice of administrative rules and regulations that are outside the complaint's four corners. *Hughes v. City of Wayne*, No. 22-1178, 2023 U.S. App. LEXIS 10201, at *11 (6th Cir. Apr. 26, 2023). Following this logic, this Court recently took judicial notice of

17

constitutes "proof of United States citizenship" that triggers the registrar or deputy registrar's duty to offer voter registration. And read together, the statute and regulations set forth explicit enforcement standards.

Under Ohio law, the registrar of the BMV may require applicants for Ohio credentials like driver's licenses or state identification cards to submit identification documents with their applications. *See, e.g.*, Ohio Rev. Code § 4507.51(A)(4). To that end, the BMV promulgated Ohio Admin. Code § 4501:1-1-21, which sets forth the acceptable identification documents for any type of Ohio credential. This regulation has existed in its current form since 2022. A person must present "identification documents sufficient to establish" five pieces of information: (1) full legal name, (2) date of birth, (3) social security number, (4) street address of the person's principal residence in Ohio, and (5) "[s]tatus as a citizen, permanent resident or temporary resident of the United States." Ohio Admin. Code § 4501:1-1-21(C). The regulation lists the documents that suffice to establish each piece of information. *See* Ohio Admin. Code § 4501:1-1-21(E)–(J).

To establish legal presence in the United States—citizenship, permanent residency, or temporary residency—an applicant may present the following documents:

(1) A birth certificate, either an original or certified copy, with a seal and issued by an appropriate governmental agency of any state, territory, or possession of the United States, provided that a birth certificate issued by Puerto Rico must have been issued on or after July 1, 2010;

(2) A consular report of birth abroad issued by the United States department of state;

(3) A United States passport;

(4) A United States passport card;

(5) A United States naturalization document; or

---

Ohio statutes and regulations unmentioned in the complaint that "establish[ed] the factual context of the case." *Davis v. City of Cleveland*, No. 1:23-cv-536, 2024 U.S. Dist. LEXIS 33813, at *6 n.2 (N.D. Ohio Feb. 28, 2024). The BMV's regulations set forth the documents needed to apply for an Ohio credential, and the Court should take judicial notice of them.

(6) For a person who is not a citizen of the United States, appropriate United States citizenship and immigration services (USCIS) documents that are original and valid, or like documents issued by the successor agency to the USCIS showing the dates of legal presence. The registrar may require that any documentation presented be verifiable through the verification lawful status (VLS) or systematic alien verification entitlement (SAVE) databases maintained by the federal government.

Ohio Admin. Code § 4501:1-1-21(G). To be sure, the regulation does not specify which listed documents suffice to establish U.S. citizenship. But a person of ordinary intelligence will glean as much from the regulation's structure. A person "who is not a citizen of the United States" must present a document listed in (G)(6) to establish legal presence in this country.[4] So, a person of ordinary intelligence would conclude that a citizen must present a document listed in the regulation's other sections, (G)(1)–(5), to establish citizenship.

Plaintiffs were made aware of the BMV's implementing regulations. *See* Compl. Ex. B, at 2, Dkt. 1-2 at PageID 39 ("The documents that are sufficient to establish legal presence and citizenship are specified in the Ohio Administrative Code. *See* Ohio Admin. Code § 4501:1-1-21(G)."); *see also* Answer ¶ 15, Exs. 1–2 (providing the document list to Plaintiff). Yet Plaintiffs' Complaint simply ignores those regulations while incorrectly claiming that there is no guidance on which documents may prove citizenship. *See* Compl. ¶ 130, Dkt. 1 at PageID 30. Instead, Plaintiffs myopically focus on § 3503.11(A)(1) as if it were the only law regulating registrars and deputy registrars' voter-registration efforts. But this Court cannot ignore the "context of the law in its entirety," *Stevens*, 2022 U.S App. LEXIS 20829, at *15, and the BMV's implementing regulations give fair—and uniform—notice of the documents sufficient to prove U.S. citizenship when obtaining an Ohio credential. Accordingly, Plaintiffs' vagueness challenge fails as a matter of law.

---

[4] The BMV publishes a list of acceptable USCIS documents on its website. *See* Answer Exs. 1–2. This publicly available document also includes the acceptable proof-of-citizenship documents. Although the Court could take judicial notice of the public records published on the BMV's website, *see Reynolds v. Medtronic*, No. 3:20-cv-403, 2021 U.S. Dist. LEXIS 88385, at *11 (S.D. Ohio May 10, 2021), it is not necessary to do so to grant Defendants' motion.

19

**2.** **Because Plaintiffs do not challenge Ohio's list-maintenance laws, their claim that Ohio's process is not "uniform" fails as a matter of law.**

Plaintiffs' NVRA claim fails as a matter of law insofar as it arises under 52 U.S.C. § 20507(b)(1). That section mandates that state "program[s] or activit[ies] to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office . . . shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). This portion of the NVRA governs the *removal* of already registered voters from the rolls in order to maintain accurate voter lists. *See Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 764 (2018) ("[T]he NVRA also imposes two general limitations that are applicable to state removal programs. First, all such programs must be 'uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965.'").

Plaintiffs' challenge under 52 U.S.C. § 20507(b)(1) therefore fails for two independent reasons. First, this portion of the NVRA applies to list maintenance, not initial registrations. *See Husted*, 584 U.S. at 764. Plaintiffs cannot simply graft that provision onto a process where it does not apply. And second, as set forth in Section E.1 *supra*, Ohio regulations provide a uniform and nondiscriminatory list of documents that applicants can use to prove their U.S. citizenship. The Court should therefore dismiss the portion of Count II arising under 52 U.S.C. § 20507(b)(1).

### CONCLUSION

Because Plaintiffs do not have standing, this Court lacks jurisdiction over this case. For this reason, the Court should dismiss Plaintiff's Complaint. Alternatively, if this Court believes Plaintiffs have standing, it should grant Defendants judgment as a matter of law on Count III and the portion of Count II alleging a violation of 52 U.S.C. § 20507(b)(1).

Respectfully submitted,

DAVE YOST
Ohio Attorney General


/s/ Ann Yackshaw

ANN YACKSHAW (0090623)*
*Counsel of Record*
JULIE M. PFEIFFER (0069792)*
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov

*Counsel for Defendants*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2025, the foregoing was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system. Additionally, a copy of the foregoing was emailed to all counsel of record.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to a track. This memorandum complies with the page limitations for unassigned cases.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General