UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RED WINE & BLUE, *et al.*, | ) | Case No.: 1:25 CV 1760 |
| | ) | |
| Plaintiffs | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK LAROSE, in his official capacity | ) | |
| as Ohio Secretary of State, *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case is the Republican National Committee's ("RNC" or the "Committee") Motion to Intervene ("Motion") pursuant to Federal Rule of Civil Procedure 24(a), or alternatively, Rule 24(b). (ECF No. 17.) For the following reasons, the court denies the Motion.

**I. BACKGROUND**

Red Wine & Blue and Ohio Alliance for Retired Americans (collectively, "Plaintiffs") are non-partisan civic engagement organizations. (Compl. ¶ 12, ECF No. 1.) On August 22, 2025, Plaintiffs filed a three-count Complaint for Declaratory and Injunctive Relief (ECF No. 1) against Defendants Frank LaRose, in his official capacity as Ohio Secretary of State, and Charles L. Norman, in his official capacity as Ohio's Registrar of Motor Vehicles (collectively, "State Defendants"). Plaintiffs allege that the recently enacted proof-of-citizenship requirement in Ohio House Bill 54

("HB 54") imposes an unnecessary obstacle to register to vote at Ohio's Bureau of Motor Vehicles offices ("BMV") in violation of the National Voter Registration Act ("NVRA") (Counts I and II), and is impermissibly vague in violation of the First and Fourteenth Amendments (Count III). (*Id.* at ¶ 11.)

Congress enacted the NVRA in 1993 to establish procedures that: (1) increase the number of eligible citizens registering to vote; (2) protect the integrity of the electoral process; and (3) ensure accurate and current voter registration rolls are maintained. 52 U.S.C. § 20501; *see also Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833 (6th Cir. 1997) (explaining that Congress passed the NVRA "in an attempt to reinforce the right of qualified citizens to vote by reducing the restrictive nature of voter registration requirements"). To that end, one of NVRA's requirements is that states offer in-person voter registration to people applying for a motor vehicle driver's license. 52 U.S.C. § 20503.

Chapter 35 of the Ohio Revised Code incorporates the NVRA's mandates. Section 3503.11 deals specifically with voter registration procedures when a person applies for or renews a driver's license or state of Ohio identification card. Until June 30, 2025, the provision read, in relevant part:

> When any person applies for a driver's license, commercial driver's license, a state of Ohio identification card [...] or motorcycle operator's license or endorsement, or the renewal or duplicate of any license or endorsement [...] the registrar of motor vehicles or deputy registrar shall offer the applicant the opportunity to register to vote or to update the applicant's voter registration[.]

Ohio Rev. Code § 3503.11(A)(1) (2025) (amended June 30, 2025). However, House Bill 54, which principally addressed transportation appropriations for the fiscal year 2026–2027 biennium, amended the provision. *See* Am. Sub. H.B. 54, 136th Gen. Assemb., Reg. Sess. (Ohio 2025). Now, before the

registrar or deputy registrar can offer the applicant an opportunity to register to vote or update their registration, the applicant must first "*present[] proof of United States citizenship* to the registrar of motor vehicles or the deputy registrar or [have] *previously presented proof of United States citizenship* to the registrar or any deputy registrar[.]" Ohio Rev. Code § 3503.11(A)(1) (emphasis added).

Plaintiffs contend that this additional proof-of-citizenship language is not necessary to assess an applicant's eligibility because Ohio already requires people registering to vote at the BMV to attest under penalty of perjury that they are United States citizens. (Compl. ¶¶ 3, 107.) This new requirement, Plaintiffs assert, conflicts with the NVRA's mandate that state motor vehicle authorities "may require only the minimum amount of information necessary to ... enable State election officials to assess the eligibility of the applicant." (*Id.* at ¶ 107 (citing 52 U.S.C. § 20504).) Moreover, Plaintiffs claim that this proof-of-citizenship requirement is unconstitutionally vague, in violation of the First and Fourteenth Amendments. (*Id.* at ¶¶ 126–31.)

On September 18, 2025, the State Defendants filed their Answer (ECF No. 14), as well as a Combined Motion to Dismiss and Partial Motion for Judgment on the Pleadings (ECF No. 15). In their Answer, the State Defendants deny that HB 54 violates the NVRA or the U.S. Constitution (Answer ¶ 13), and further deny that the proof-of-citizenship provision makes it "difficult" to register to vote (*id.* at ¶ 36). The State Defendants also assert 10 affirmative defenses, including that Plaintiffs lack standing and that they fail to state a claim upon which relief may be granted. (*Id.* at PageID 99.)

On September 24, 2025, approximately one month after Plaintiffs filed their Complaint, the Republican National Committee filed the instant Motion to Intervene as a defendant. (ECF No. 17.)

The RNC is a national committee that manages the Republican Party's business at the national level. (Mot. at PageID 160.) The Committee supports Republican candidates nationwide, including those in Ohio, by "coordinat(ing) fundraising and election strategy, and develop[ing] and promot[ing] the National Republican platform." (*Id.*) Plaintiffs filed their Opposition (ECF No. 23) on October 8, 2025, to which the RNC filed a Reply (ECF No. 24) on October 15, 2025. The State Defendants did not respond to the Motion. Therefore, the RNC's Motion to Intervene is ripe for review.

## II. LAW AND ANALYSIS

The Republican National Committee moves to intervene as a party defendant, first as of right, under Federal Rule of Civil Procedure 24(a)(2), and, alternatively, seek permissive intervention pursuant to Rule 24(b). The RNC asserts it has an interest in the rules and procedures governing Ohio's elections, and that such interests are heightened given that Ohio's elections for federal and state office are next year. (Mot. at PageID 161.) Plaintiffs oppose the Motion, arguing that the RNC fails to identify any specific, legally protectible interest that this litigation may impair, that the RNC does not overcome the presumption that the existing Defendants adequately represent its interests, and that it fails to demonstrate why permissive intervention is merited. (Opp'n at PageID 207.) The court first addresses intervention as of right under Rule 24(a)(2), and then analyzes permissive intervention under Rule 24(b).

### A.  Intervention as of Right Pursuant to Fed. R. Civ. P. 24(a)

Federal Rule of Civil Procedure 24(a) entitles certain applicants to intervene in a lawsuit as of right. The Rule requires courts to allow a party to intervene if the party makes a timely motion, and: (1) a federal statute gives the party an unconditional right to intervene, or (2) the moving party "claims an interest relating to the property or transaction that is the subject of the action, and is so

situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). There is no federal statute authorizing the RNC to intervene as of right under Rule 24(a)(1). As such, the RNC's asserted right must arise, if at all, under Rule 24(a)(2).

The RNC argues it has an "unconditional right to intervene," because it satisfies each factor of the intervention as of right standard (Mot. at PageID 161), and because "the great weight of authority" supports its intervention (Reply at PageID 223). Plaintiffs assert that the RNC does not meet the four-factor intervention as of right test, and that the majority of case law does not support its intervention. (Opp'n at PageID 208.) Before proceeding to the Sixth Circuit's four requirements for intervention as of right, the court briefly reviews the election law cases cited by the RNC and Plaintiffs that involve a partisan political committee proposed intervenor.

First, there is no binding Sixth Circuit decision that addresses whether a political party or partisan candidate can intervene by right or permissively in an election law case. Of the in-Circuit district court cases considering the question, nearly all are unreported, two granted intervention as of right on unopposed motions,[1] four granted permissive intervention on unopposed motions,[2] and

---

[1]    *League of Women Voters of Ohio, et al., v. Frank LaRose, et. al.*, No. 2:20-CV-1638, ECF No. 38 (S.D. Ohio Apr. 2, 2020) (granting unopposed motions to intervene as of right by the Ohio Democratic Party, the Libertarian Party of Ohio, and the Ohio Republican Party); *Libertarian Party of Michigan, Gary Johnson, and Denee Rockman-Moon v Ruth Johnson*, No. 2:12-CV-12782, ECF No. 23 (E.D. Mich. Sept. 5, 2012) (granting unopposed motion to intervene as of right by the Michigan Republican Party).

[2]    *League of Women Voters of Ohio v. LaRose*, No. 1:23-CV-2414-BMB, ECF No. 25 (N.D. Ohio Feb. 6, 2024) (granting permissive intervention on unopposed motion by the RNC); *King v. Whitmer*, No. 20-13134, 2020 WL 7053810 (E.D. Mich. Dec. 2, 2020) (granting permissive intervention on unopposed motion by the Democratic National Committee and Michigan Democratic Party); *Donald J.*

four granted permissive intervention on opposed motions.[3] The single in-Circuit reported case on the issue, *Nemes v. Bensinger*, 336 F.R.D. 132, 137 (W.D. Ky. 2020), denied intervention as of right and permissively. *Nemes* involved challenges to Kentucky's rules governing the number of polling precincts in certain counties for the state's primary election. 336 F.R.D. at 137. The court first denied intervention as of right, rejecting the campaign committee's Rule 24(a)(2) argument because it and the existing plaintiffs brought nearly identical claims under the Voting Rights Act, and sought nearly identical injunctive and declaratory relief regarding the number of polling locations. *Id.* Thus, the court found that the campaign committee failed to demonstrate that the plaintiffs would not protect their interests. *Id.* (quoting *Moore v. Johnson*, No. 14-11903, 2014 WL 2171097, at *2 (E.D. Mich. May 23, 2014)). Then the court declined to grant permissive intervention, despite the motion's timeliness and the committee alleging at least one common question of law or fact, reasoning that intervention would cause undue delay and prejudice to the original parties because the committee

---

*Trump for President, Inc. v. Benson*, No. 1:20-CV-1083, 2020 WL 8573863 (W.D. Mich. Nov. 17, 2020) (same); *Ohio Democratic Party v. Blackwell*, No. 2:04-CV-1055, 2005 WL 8162665 (S.D. Ohio Aug. 26, 2005) (granting permissive intervention to Ohio Republican Party only on unopposed motion).

[3]     *Ne. Ohio Coal. for the Homeless v. LaRose*, No. 1:23-CV-00026, 2023 WL 2991932 (N.D. Ohio Apr. 18, 2023) (granting permissive intervention on opposed motion by Ohio Republican Party); *A. Philip Randolph Inst., of Ohio v. LaRose*, No. 1:20-CV-01908, 2020 WL 5524842 (N.D. Ohio Sept. 15, 2020) (granting permissive intervention on opposed motion by RNC, Ohio Democratic Party, NRCC, and Trump for President committee); *Priorities USA v. Nessel*, No. 19-13341, 2020 WL 2615504 (E.D. Mich. May 22, 2020) (granting permissive intervention on opposed motion by Michigan Republican Party, RNC, and individual Michigan state senate and house representatives); and *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-CV-357, 2018 WL 8805953 (S.D. Ohio Aug. 16, 2018) (granting permissive intervention on opposed motion by Republican congressman, two county Republican Parties, and Republican voters).

sought to add additional claims outside the subject matter of the original complaint. *Id.* Given this sole in-Circuit reported case denied a partisan political committee's intervention motion, the court does not find that the "great weight of authority" in the Sixth Circuit supports intervention.

Outside the Sixth Circuit, courts are similarly inconsistent as to whether partisan political committees can intervene in election law cases. Plaintiffs and the RNC discuss more than two dozen cases concerning a political party's intervention request, and nearly all are unreported. Eight denied intervention,[4] ten granted permissive intervention on opposed motions,[5] three granted permissive

---

[4]     Denying Intervention: *Bost v. Illinois State Board of Elections*, 75 F.4th 682, 690 (7th Cir. 2023); *Liebert v. Wisconsin Elections Comm'n*, 345 F.R.D. 169 (W.D. Wis. 2023); *N.H. Youth Movement v. Scanlan*, No. 24-CV-291-SE, ECF No. 48 (D.N.H. Mar. 13, 2025); *Mi Familia Vota v. Hobbs*, No. V-22-609, ECF No. 57 (D. Ariz. June 23, 2022); *Democracy N.C. v N.C. State Bd of Elections*, No. 1:20-CV-457, 2020 WL 6589359, at *1 (M.D.N.C. June 30, 2020); *Yazzie v. Hobbs*, No. CV-20-08222-PCT-GMS, 2020 WL 8181703, at *4 (D. Ariz. Sep. 16, 2020); *Common Cause R.I. v. Gorbea*, No. 1:20-CV-00318-MSM-LDA, 2020 WL 4365608, at *3 n.5 (D.R.I. July 30, 2020); *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 258 (D.N.M. 2008).

[5]     Granting Permissive Intervention on Opposed Motion: *Int'l All. of Theater Stage Emps. Local 927 v. Lindsey*, ECF No. 84, No. 1:23-CV-4929 (N.D. Ga. May 3, 2024); *New Georgia Project v. Raffensperger*, No. 1:21-CV-01229-JPB, 2021 WL 2450647 (N.D. Ga. June 4, 2021); *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-CV-4869 (N.D. Ga. Dec 9, 2020); *Montana Pub. Int. Rsch. Grp. v. Jacobsen*, No. CV 23-70-H-BMM-KLD, 2024 WL 197364 (D. Mont. Jan. 18, 2024); *Harriet Tubman Freedom Fighters Corp. v. Lee*, Doc 34, No. 4:21-CV-242 (N.D. Fla. July 6, 2021); *Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*, No. 4:21CV187-MW/MAF, 2021 WL 5014153 (N.D. Fla. June 8, 2021); *League of Women Voters of Fla., Inc. v. Lee*, No. 4:21-CV-186-MW/MAF, 2021 WL 5278735 (N.D. Fla. June 4, 2021); *Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966-NR, 2020 WL 14069341 (W.D. Pa. Aug. 3, 2020); *Pavek v. Simon*, No. 19-CV-3000 (SRN/DTS), 2020 WL 3960252, at *3 (D. Minn. July 12, 2020); *Nielsen v. DeSantis*, No. 4:20-CV-236-RH-MJF, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020).

-7-

intervention on unopposed motions,[6] and three were granted with no additional explanation.[7] Intervention as of right was granted in only four cases relied on by the RNC, and as the court explains below, each decision turns on facts distinguishable from those here. *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022), *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 1:25-CV-00946-CKK, ECF No. 135 (D.C.C. June 12, 2025), *Issa v. Newsom*, No. 220-CV-01044-MCECKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020), *Citizens United v. Gessler*, No. 14-CV-002266-RBJ, 2014 WL 4549001, (D. Col. Sept. 14, 2014). With this context in mind, the court turns to the Sixth Circuit's four-factor intervention as of right analysis.

The Sixth Circuit requires a movant to satisfy four elements to establish a right to intervene under Rule 24(a)(2): (1) the motion to intervene is timely; (2) the movant has a substantial legal interest in the subject matter of the case; (3) the movant's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the movant's interest. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007). A failure to meet any one of the four factors "will require that the motion be denied." *Id.* at 780 (quoting *Grubbs v. Norris,* 870 F.2d 343, 345 (6th Cir. 1989)).

### 1.  Timeliness

---

[6]  Granting Permissive Intervention on Unopposed Motion: *DNC v. Hobbs*, N. 2:22-CV-1369, ECF No. 18 (D. Ariz. Aug. 23, 2022); *United States v. Georgia*, Minute Order, No. 1:21-CV-2575 (N.D. Ga. July 12, 2021); *Vote.org v. Byrd*, No. 4:23-CV-111-AW-MAF, 2023 WL 7174246 (N.D. Fla. May 26, 2023).

[7]  Granting Intervention Without Additional Explanation: *Wood v. Raffensperger*, No. 1:20-CV-5155, ECF No. 14 (N.D. Ga. Dec 28, 2020); *VoteVets Action Fund v. Detzner*, No. 4:18-CV-524, ECF No. 16 (N.D. Fla. Nov. 11, 2018); *Brown v. Detzner*, Minute Order, No. 3:12-CV-852 (M.D. Fla. Sept. 17, 2012).

Plaintiffs do not challenge the RNC's timeliness argument, and the court agrees that the Motion is timely under the relevant circumstances. Thus, the court proceeds to the other intervention factors without further analysis of timeliness.

### 2. *Substantial Legal Interest*

Broadly, the RNC asserts that it has an interest in defending the lawfulness of the challenged election rule and protecting the integrity of Ohio's elections. (Mot. at PageID 164.) More specifically, the Committee argues it has an interest in Republican voters voting, in Republican candidates winning, and in Republican resources being used effectively. (*Id.* at PageID 164–65.) These interests, the RNC contends, are not too generalized because, "[n]ot all Ohioans have an interest in electing Republicans or conserving the resources of the Republican Party." (*Id.* at PageID 165.)

Plaintiffs argue that the RNC's alleged legal interests are too speculative and generalized to support intervention. (Opp'n at PageID 212.) Rebutting the RNC's assertion that its interests are not too generalized, Plaintiffs note that enjoining the new proof-of-citizenship requirements will not particularly impact Republican voters or the Republican Party. (*Id.* at PageID 213.) Rather, "an injunction of HB 54 will ensure that *all* voters can register and update their registration at the BMV [...] whether or not they have provided proof-of-citizenship documents." (*Id.*) Plaintiffs also challenge the RNC's claims that if HB 54 is enjoined, Republican voters will stay home due to diminished voter confidence, and the Committee will have to divert resources to regain Republican voter trust in Ohio's electoral system. (*Id.* at PageID 214–15.)

To satisfy the second intervention as of right factor, the RNC "must show that [it has] a substantial interest in the subject matter of this litigation." *Granholm*, 501 F.3d at 780 (quoting

*Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (internal quotations omitted).  Establishing a substantial legal interest "is necessarily fact-specific." *Granholm*, 501 F.3d at 780 (quoting *Michigan AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)) (cleaned up). Although the Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to invoke intervention of right, . . . this does not mean that any articulated interest will do." *Id.*

While there is no Sixth Circuit case factually on point, the court finds *Michigan AFL-CIO v. Miller* instructive. In *Miller*, the Michigan Chamber of Commerce sought to intervene as of right in a lawsuit brought by labor unions challenging newly enacted provisions of Michigan's Campaign Finance Act. The district court denied intervention, but the Sixth Circuit reversed, explaining that, while the intervention issue "is a close one," four factors pertaining to the substantial legal interest element weighed in favor of intervention. *Miller*, 103 F.3d at 1247. Specifically, the Chamber had a substantial legal interest because it "was (1) a vital participant in the political process that resulted in legislative adoption of the 1994 amendments in the first place, (2) a repeat player in Campaign Finance Act litigation, (3) a significant party which is adverse to the challenging union in the political process surrounding Michigan state government's regulation of practical campaign financing, and (4) an entity also regulated by at least three of the four statutory provisions challenged by plaintiffs." *Id.*

The Sixth Circuit invoked these factors again in *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007), when it affirmed the lower court's denial of intervention as of right to a ballot-initiative group called Standing Together to Oppose Partial-Birth-Abortion ("STTOP"). *Northland Family Planning* concerned Michigan's Legal Birth Definition Act, which Michigan adopted after a proposal by a citizen initiative petition. 487 F.3d at 327. The plaintiffs, six

health care facilities and four obstetrician-gynecologists sued the state for declaratory and injunctive relief, and STTOP, which was formed to promote the passage of the Act, moved to intervene. *Id.* at 328. The Sixth Circuit determined that unlike the Michigan Chamber of Commerce in *Miller*, STTOP was not regulated by any of the challenged statutory provisions, and therefore the group had only an ideological interest in the litigation. *Id.* at 345. Importantly, the court explained that,

> STTOP's interest in this case simply pertains to the enforceability of the statute in general, which we do not believe to be cognizable as a substantial legal interest sufficient to require intervention as of right. Without these sorts of limitations on the legal interest required for intervention, Rule 24 would be abused as a mechanism for the over-politicization of the judicial process.

*Id.* at 346. *See also Granholm*, 501 F.3d at 782 ("Where, however, an organization has only a general ideological interest in the lawsuit—like seeing that the government zealously enforces some piece of legislation that the organization supports—and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed substantial.").

Like STTOP, the RNC is not regulated by the state statute that Plaintiffs challenge. Moreover, there is no indication that the RNC was a "vital participant" in the political process that resulted in the adoption of the new proof-of-citizenship provision. Nor are the Plaintiffs—Ohio-specific non-partisan civic engagement groups—the RNC's "traditional political adversaries," like the Michigan labor unions were to the Michigan Chamber of Commerce. *Miller*, 103 F.3d at 1243. Rather, the RNC's overall legal interest in this action "simply pertains the enforceability of the statute in general," *Northland Family Planning*, 487 F.3d at 346. Furthermore, to allow its intervention in an action where partisan interests do not already exist would result in "the over-

-11-

politicization of the judicial process." *Id.* Accordingly, the court finds that the RNC has not shown a substantial legal interest in the subject matter of this litigation.

The court's conclusion on this element is not at odds with the cases discussed by the RNC where the court granted intervention as of right to a political party. In *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) ("*LUPE*"), several non-partisan groups challenged the validity of Senate Bill 1, which amended various provisions of the Texas Election Code pertaining to voter registration, voting by mail, poll watchers, and more. The RNC and several other committees associated with the Republican Party moved to intervene, and on appeal, the Fifth Circuit concluded that the partisan committees had satisfied Rule 24(a)(2)'s interest requirement. 29 F.4th at 306. The court based its conclusion solely on the committee's argument that the poll watcher provision regulated their conduct, noting that it changed the requirements for carrying out poll watching duties. *LUPE*, 29 F.4th at 306, n. 5 ("Because we deem this interest sufficient, we need not address whether the Committees' more election-specific interests are enough to establish intervention by right.").

Indeed, unlike the narrow proof-of-citizenship requirement here, which was enacted as part of Ohio's 2026–2027 transportation appropriations bill, the challenged law in *LUPE* only pertained to the Texas Election Code—a statute that already regulated how political parties conduct poll watching activities. *Id.* at 307. Here, neither the language of the proof-of-citizenship provision, nor the transportation bill at large regulates the conduct of political parties. Thus, the Fifth Circuit's intervention decision in *LUPE* does not support the RNC's position.

The D.C. District Court's decision to grant the RNC intervention as of right in *League of United Latin American Citizens v. Executive Office of the President*, No. 1:25-CV-00946-CKK, ECF

-12-

No. 135 (D.C.C. June 12, 2025) ("*LULAC*"), is also distinguishable. There, the RNC's "traditional political adversary," the Democratic Party, was already a plaintiff in the litigation. Furthermore, when discussing the D.C. Circuit's standing requirement for intervention as of right, the court explained that the RNC had standing "for many of the same reasons the Court previously concluded that the Democratic Party Plaintiffs ha[d] shown a substantial likelihood of standing to challenge some of those provisions." *Id.* at Page 6 (citing *LULAC 1*, 2025 WL 1187730 at *33–35, *46–48 (D.D.C. Apr. 24, 2025)). There is no similar comparison here since no Democratic Party entities are part of the current lawsuit.

Similarly, the *Issa v. Newsom*, No. 220-CV-01044-MCECKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) decision is distinguishable because, like in *LULAC*, the political party intervenors (the Democratic Congressional Campaign Committee and the Democratic Party of California) sought to intervene in a case where their "traditional political adversary," (the RNC, National Republican Congressional Committee, and the California Republican Party) were already plaintiffs in the litigation. Thus, the *LULAC* and *Issa* rulings do not persuade the court that the RNC has shown a substantial legal interest warranting intervention as of right.

Accordingly, the court concludes that the RNC does not have a substantial legal interest in the subject matter of this litigation. Because a failure to meet any one of the four factors "will require that the motion be denied," *Granholm*, 501 F.3d at 780, the court denies the RNC's motion for intervention as of right. However, after reviewing the other Rule 24(a)(2) factors, the court also finds that denial is warranted under the adequate representation factor.

*3.     Adequate Representation*

The RNC contends that the State Defendants do not adequately represent its interests because they are acting on behalf of all Ohioans, whereas the RNC "cares about the effect this case has on the Republican Party, Republican candidates, and Republican voters." (Mot. at PageID 168.) Thus, the RNC argues its interests diverge from the State Defendants'. (Reply at PageID 230.) Plaintiffs argue that the RNC's objective is the exact same as the State Defendants, and therefore a presumption of adequate representation arises, which the RNC cannot overcome. (Opp'n at PageID 216.)

When, as here, the proposed intervenor and a party to the suit currently share the "same ultimate objective" (*e.g.*, defending the proof-of-citizenship requirement in HB 54), a presumption of adequate representation arises. *Wineries of the Old Mission Peninsula Ass'n. v. Twp. of Peninsula*, 41 F.4th 767, 774 (6th Cir. 2022). In this Circuit, a movant fails to overcome this presumption when, "1) no collusion is shown between the existing party and the opposition; 2) the existing party does not have any interests adverse to the intervenor; and 3) the existing party has not failed in the fulfillment of its duty." *Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000). Moreover, "[a] mere disagreement over litigation strategy," does not on its own demonstrate inadequate representation. *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). However, the Sixth Circuit also advises that, when assessing whether the proposed intervenor satisfies the inadequate representation requirement, "courts must remember that certainty about future events is not required[,]" and "Rule 24(a) is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as

-14-

minimal." *Wineries*, 41 F.4th at 774 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (cleaned up).

As Plaintiffs note, the RNC does not allege, in either its Motion or Reply, that there is collusion between the Plaintiffs and State Defendants, nor that the State Defendants have failed in the fulfillment of their duties. The RNC also does not argue that the State Defendants have interests adverse to it. Rather, the RNC attempts to show it meets this factor by continuously asserting that its interests "diverge" from the State Defendants, and it contends that the State Defendants' non-response to the Motion "confirms that it does not share 'identical' interests with the RNC." (Reply at PageID 230.) According to the RNC, the fact that it and the State Defendants have not raised exactly the same affirmative defenses, and that the RNC represents partisan interests, whereas the State Defendants represent the public interest illustrates this purported divergence. (*Id.* at PageID 229–30.) The court is unpersuaded.

In *Wineries*, the Sixth Circuit concluded that the township defendant could not adequately represent the interests of an organization representing various property owners because it alone faced the possibility of money damages, and it had limited ability to represent the property interests of individual citizens implicated by the lawsuit. 41 F.4th at 775–77. The court explained that because the possibility of damages loomed large in the case, the township's motivation for defending the zoning ordinance could change should more favorable settlement terms with the plaintiffs be reached. *Id.* at 776. Such a change could "dampen[] the allure of continued legal battle" serving the intervenors' interest in protecting its member's property values. *Id.* No such threat of money damages exists here, so the RNC's purported divergence is distinguishable.

-15-

Unlike the *Wineries* plaintiffs, here Plaintiffs seek declaratory and injunctive relief. Thus, the RNC should not be concerned that the State Defendants' legal battle over HB 54 will dampen due to attractive settlement discussions. Furthermore, as Plaintiffs point out, the State Defendants, like the RNC, view HB 54 as not only constitutional, but necessary to protect the integrity of Ohio's elections. (*Compare* Mot. at PageID 164, *with* Ohio Sec'y of State, *Secretary LaRose Issues Statement Regarding Activist Lawsuit Attempting to Derail Key Election Integrity Law* (Aug. 25, 2025), https://www.ohiosos.gov/media-center/press-releases/2025/2025-08-25/.) This common motivation is also reflected in the types of affirmative defenses raised by the RNC and State Defendants. Both assert that Plaintiffs' lawsuit should be dismissed for lack of standing and for failure to state a claim. (RNC Answer at PageID 183; State Defs.' Answer at PageID 99.) It is true that the RNC lists the "*Purcell* principle" as an affirmative defense in its Answer (RNC Answer at PageID 183), and the State Defendants do not. Even so, there is no indication that, should the case advance beyond the State Defendants' pending Motion to Dismiss, they could not or would not argue the *Purcell* principle, since they "reserve[d] the right to supplement [their] Answer with additional defenses, including affirmative defenses, as litigation in this matter proceeds." (State Defs.' Answer at PageID 99.) Furthermore, the *Purcell* principle is one the court can, and should, assess on its own, should the procedural context for its consideration arise.[8]

---

[8]     The "*Purcell* principle" is an injunction principle adopted by the Supreme Court and named after *Purcell v. Gonzalez*, 549 U.S. 1 (2006). The Supreme Court regularly cites to *Purcell* for the proposition that "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Tennessee Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Lee*, 105 F.4th 888 (6th Cir. 2024) (internal quotations omitted) (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423 (2020)). This injunction principle often arises in the context of stay requests in election law cases. For example, in *Tennessee*, the district court agreed to permanently enjoin a voter registration

-16-

The court's conclusion that the State Defendants adequately represent the RNC's interests also does not conflict with *Citizens United v. Gessler*, No. 14-CV-002266-RBJ, 2014 WL 4549001, (D. Col. Sept. 14, 2014), another case granting intervention as of right and relied on by the RNC. In *Gessler*, the Colorado Democratic Party, a Colorado voter, and two candidates for the state legislature moved to intervene in a lawsuit brought by Citizens United, challenging the constitutionality of Colorado's reporting and disclosure requirements for electioneering communications and independent expenditures. 2014 WL 4549001, at *1. The existing parties objected to intervention, arguing that the defendants adequately represented the intervenors' interests because they shared an overall objective of having Colorado's campaign finance disclosure laws be found facially constitutional. *Id.* at *2. Although agreeing there was a shared overall objective, the court found that the defendants' and intervenors' objectives were likely to diverge when the court eventually considered the reach of the disclosure exemptions. *Id.* at *3. In addition to seeking declaratory and injunctive relief as to the constitutionality of the disclosure laws, the plaintiff also sought, in the alternative, a declaration that it is a "press entity" exempt from the reporting and disclosure requirements should the law be facially constitutional. *Id.* at *2. On that issue, the defendants had a track record of supporting the creation of a "press entity status" that would exempt the plaintiff. However, the intervenor-defendants strongly opposed this position. *Id.* at *3. Given this

provision requiring some felons to submit certain records with their registration forms to confirm eligibility. 105 F.4th at 890. The Tennessee Secretary of State applied for a stay of the injunction pending appeal, which the Sixth Circuit granted finding that the *Purcell* principle applied, since the injunction was issued less than a month before the voter registration deadline for the upcoming election. *Id.* This case is not in a procedural posture for *Purcell* to apply. If it ever is, the court, as directed by the Supreme Court, should consider the injunction principle whether a party raises it or not.

-17-

likely conflict between the intervenor-defendant and existing defendants, the court concluded that the existing defendants did not adequately represent the interests of the proposed intervenors. *Id.* Such a significant divergence is unlikely to occur here. This case presents a narrower legal question, and, as discussed previously, the RNC's election integrity interests are consistent with the State Defendants' position. Thus, *Gessel*, like the other intervention of right cases cited by the RNC is unpersuasive to the court on the distinct facts presented here.

On the other hand, the court's decision on the adequate representation element is consistent with other courts that denied intervention as of right to a political party in an election law case. For example, in *American Association of People with Disabilities v. Herrera*, 257 F.R.D. 236 (D.N.M. 2008), the Republican Party of New Mexico moved to intervene in a lawsuit brought by public interest groups against the New Mexico Secretary of State, challenging a state statute mandating registration of third-party voter-registration agents. There, as here, the Republican party sought to defend the constitutionality of the state statute, and the state defendant was already advocating for this position. 257 F.R.D. at 258. The *Herrera* court explained that, "[w]hile the Defendant is governmental, the RPNM's protectable interest is essentially the same as the public interest asserted by the Defendant, not a distinct private interest." *Id.* Here, the court finds that the RNC's interest is also "essentially the same as the public interest" asserted by the State Defendants because both view HB 54 as not only constitutional, but necessary to protect the integrity of Ohio's elections.

Likewise, in *Democracy North Carolina v. North Carolina State Board of Elections*, No. 1:20-CV-457, 2020 WL 6589359, (M.D.N.C. June 30, 2020), four Republican Party organizations moved to intervene as defendants in a lawsuit by non-partisan voting rights groups challenging North Carolina's voting and election laws. The court denied intervention to the Republican groups twice,

and on reconsideration stated, "Proposed Intervenors' interests are, at their center, in preserving North Carolina's voting and election laws, which the court has already found are being adequately represented by [d]efendants[.]" *Id.* at *1.

Like the government defendants in *Herrera* and *Democracy N.C.*, the State Defendants here are already advocating for the RNC's position: that to protect the integrity of Ohio's elections, the constitutionality of the proof-of-citizenship law must be defended. The RNC does not show a distinct, protectable legal interest that the State Defendants' arguments cannot cover. Therefore, the State Defendants adequately represent the RNC's interests, and the RNC's motion for intervention as of right is denied.

**B.      Permissive Intervention Pursuant to Fed. R. Civ. P. 24(b)**

Having denied the RNC's Motion for intervention as of right, the court considers its request for permissive intervention pursuant to Rule 24(b). Rule 24(b) governs permissive intervention and provides, in relevant part, that: "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). To intervene under this rule, "a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). If a proposed intervenor establishes these two requirements, the court "must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id.* A court's denial of permissive intervention "should be reversed only for clear abuse of discretion by the trial judge." *Granholm*, 501 F.3d at 784 (internal quotations omitted) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991)).

-19-

The RNC argues it is entitled to permissive intervention because its Motion is timely and it will raise defenses that share common questions of law and fact with the existing parties. Furthermore, the RNC contends that its intervention will not cause undue delay or prejudice because it already filed its proposed Answer, and it commits to complying with the court's briefing schedule. (Mot. at PageID 168–69.) Moreover, the RNC contends that its intervention will aid the court by providing "perspective that others miss or choose not to provide." (*Id.* at PageID 169) (quoting *Nielsen v. DeSantis*, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020)).)

Plaintiffs argue that the court should deny permissive intervention because the RNC's legal interests and arguments are closely aligned with the Defendants', and its failure to assert or substantiate any separate interest makes its participation duplicative. (Opp'n at PageID 218.) Such duplication of efforts, Plaintiffs assert, would "serve only to 'use up the court's time and resources' in 'an election-law case that needs to be streamlined and decided quickly.'" (*Id.*) (quoting *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 691 (7th Cir. 2023).) Furthermore, the Plaintiffs claim that intervention by the RNC would unduly delay and complicate the litigation, and force the parties and court to contend with "unnecessary partisan politics in[] an otherwise nonpartisan legal dispute." (*Id.*) (quoting *Miracle v. Hobbs*, 333 F.R.D. 151, 156 (D. Ariz. 2019).)

1.     *Timeliness*

As discussed under the Rule 24(a) intervention as of right standard, the court concludes that the RNC's Motion is timely. Thus, the timeliness requirement for permissive intervention under Rule 24(b) is satisfied.

### 2.    *Common Question of Law or Fact*

The RNC asserts it will raise defenses sharing common questions of law and fact with the existing parties, noting that its defenses and those brought by the existing Defendants turn on the same legal issue: the legal validity of Ohio's proof-of-citizenship requirement. (Mot. at PageID 169.) Plaintiffs do not dispute that common questions of law and fact exist between the RNC and named Defendants. The court also finds that there is a common question of law and fact between the RNC and existing parties; therefore, the second requirement for permissive intervention is satisfied.

### 3.    *Undue Delay, Prejudice, and Other Factors*

Having determined that the RNC satisfies the first two elements of permissive intervention, the court now balances "undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Michigan*, 424 F.3d at 445.

As previously stated, the RNC asserts that its intervention will not cause undue delay or prejudice to the original parties because the lawsuit is in its earliest stage, it attached its proposed Answer to the Motion, placing it in the same procedural posture as Defendants, and any additional burdens its intervention may pose fall within the bounds of everyday case management. (Mot. at PageID 169.) Conversely, Plaintiffs maintain that permissive intervention is unnecessary because the RNC's legal interests and arguments are closely aligned with Defendants', rendering its participation duplicative and wasteful of the court's resources and time in a time-sensitive election law case. (Opp'n at PageID 218.) In response, the RNC argues that the permissive intervention standard does not require the court to address whether Defendants adequately represent the RNC's

-21-

interests, and Plaintiffs' concerns about its intervention burdening the court or delaying the case are without merit given the timeliness of its Motion. (Reply at PageID 231–32.)

When deciding whether to grant permissive intervention under Rule 24(b), courts in this Circuit may consider as "other relevant factors" the same factors it considers when evaluating intervention as of right. *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018). The court acknowledges that the RNC's Motion was filed in the early stages of litigation, and that it provided its proposed Answer, thereby placing it in a similar procedural position to the State Defendants. However, even if the court assumes a lack of undue delay, this factor does not outweigh the court's conclusion that the RNC's position is adequately represented by the State Defendants, which, "counsels against granting permissive intervention." *League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018) (quoting *Snyder*, 720 F. App'x at 759); *see also Granholm*, 501 F.3d at 784 (affirming denial of permissive intervention where district court concluded proposed intervenor's lack of a substantial legal interest and adequate representation by existing parties weighed against permissive intervention).

The court notes that a number of unreported district court cases in this Circuit have granted permissive intervention to partisan groups. *See* cases cited *supra* note 1. But, in all of those cases, the court declined to tackle the intervention as of right elements, thereby limiting the "other relevant factors" potentially outweighing undue delay and prejudice.

In those cases where courts explore the intervention as of right elements and the court decide Rule 24(a)(2) is not met, the courts often also decline permissive intervention. For example, in *Liebert v. Wisconsin Elections Comm'n*, 345 F.R.D. 169 (W.D. Wis. 2023), the court denied intervention as of right to the RNC and Wisconsin Republican Party as well as permissive

-22-

intervention, because the existing parties represented a full range of interests that might be implicated, and the Republicans identified no unique arguments. Thus "adding the Republicans as a party would create more complexity in a case without any benefit." 345 F.R.D. at 173. Similarly, in *Yazzie v. Hobbs*, No. CV-20-08222-PCT-GMS, 2020 WL 8181703 (D. Ariz. Sept. 16, 2020), the court denied permissive intervention to the Republican movants in a lawsuit challenging Arizona's vote by mail requirements, explaining that because "[d]efendant seeks the exact same objective as the Republican [m]ovants, the Republican [m]ovants' intervention would unnecessarily delay this time-sensitive proceeding." *Id.* at *4. *See also Bost v. Illinois State Board of Elections*, 75 F.4th 682, 690 (7th Cir. 2023) (affirming district court's denial of permissive intervention because adding the Democratic Party of Illinois ("DPI") "would use up the court's time and resources; because this is an election-law case that needs to be streamlined and decided quickly; and because DPI's legal interests and arguments are closely aligned with those of the Board, meaning DPI's addition as a party would add little substance"); *cf. Miracle v. Hobbs*, 333 F.R.D. at 156 (denying permissive intervention to Speaker of Arizona House and President of Arizona Senate because their interests aligned with the defendant's, and allowing intervention would "introduce unnecessary partisan politics into an otherwise nonpartisan legal dispute").

Here, as in *Liebert*, *Yazzie*, and *Bost*, adding the RNC as a party to this case via permissive intervention is unnecessary, and would likely create delay and duplication in this time-sensitive proceeding. Moreover, the court's conclusion is ground, in part, in the Sixth Circuit's warning that "without [...] limitations on the legal interest required for intervention, Rule 24 would be abused as a mechanism for the over-politicization of the judicial process." *Northland Family Planning Clinic*, 487 F.3d at 346. As the RNC lacks a substantial legal interest, and the interests it does have are

-23-

adequately represented by the State Defendants, the court declines to grant the RNC permissive intervention. To do so otherwise runs the risk of over-politicization and abuse of Rule 24.

### III. CONCLUSION

For the foregoing reasons, the court denies the Republican National Committee's Motion to Intervene (ECF No. 17).

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

November 20, 2025