# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| RED WINE & BLUE, and OHIO ALLIANCE FOR RETIRED AMERICANS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FRANK LAROSE, in his official capacity as Ohio Secretary of State, CHARLES L. NORMAN, in his official capacity as Ohio's Registrar of Motor Vehicles,<br><br>　　　　Defendants. | Case No.: 1:25-cv-01760<br><br>Judge Solomon Oliver, Jr.<br><br>Mag. Judge James E. Grimes, Jr.<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF EXHIBITS.................................................................................................................. ii

TABLE OF AUTHORITIES........................................................................................................ iv

STATEMENT OF THE ISSUE.................................................................................................... vi

SUMMARY OF ARGUMENT..................................................................................................... vii

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

    I.  The National Voter Registration Act.................................................................................. 2

    II.  Voter Registration Procedures in Ohio ............................................................................. 3

    III. The Plaintiffs.................................................................................................................... 4

LEGAL STANDARD .................................................................................................................... 5

ARGUMENT................................................................................................................................. 6

    I.  Plaintiffs are likely to succeed on the merits: HB 54 violates the plain language of the
        National Voter Registration Act. ....................................................................................... 6

        A.      The NVRA presumptively prohibits states from requiring more than a sworn
                 attestation to prove citizenship................................................................................. 6

        B.      Defendants cannot rebut the presumption that a voter's attestation of citizenship
                 is the "minimum . . . information necessary" to establish citizenship. ................... 9

    II.  Plaintiffs will suffer irreparable harm unless HB 54 is enjoined. .................................... 11

    III. The balance of equities tip in Plaintiffs' favor and an injunction is in the public
        interest.............................................................................................................................. 15

CONCLUSION................................................................................................................................ 15

**TABLE OF EXHIBITS**

| Exhibit Number | Exhibit Title |
|---|---|
| 1 | Declaration of Laura Mullen |
| 2 | Declaration of Norman Wernet |
| 3 | Ohio Voter Registration and Information Update Form (Form 4010, 02/2026) |
| 4 | National Mail Voter Registration Form ("Federal Form") (OMB Control No. 3265-0015) |
| 5 | U.S. Election Assistance Commission, Election Administration and Voting Survey 2024 Comprehensive Report ("2024 EAVS Report") |
| 6 | Screenshot of Ohio Secretary of State Election Database (retrieved April 22, 2026) |
| 7 | Nick Evans, *Ohio Sec. of State LaRose flagged more than 520 cases of noncitizen voter fraud. Only one was legit.*, Ohio Cap. J. (Sep. 27, 2023) |
| 8 | Jo Ingles, *LaRose wants action on possible voter fraud cases. Prosecutors say they haven't for a reason.*, Statehouse News Bureau (Sep. 13, 2024) |
| 9 | Sarah Donaldson, *'It doesn't say we're the police.' LaRose bristles with prosecutors over election law cases*, Statehouse News Bureau (Sep. 17, 2024) |
| 10 | Press Release, *Grand Juries Indict 6 for Illegal Voting*, Ohio Att'y Gen. (Oct. 22, 2024) |
| 11 | Nick Evans, *Ohio Attorney General Dave Yost announces six voter fraud indictments two weeks from Election Day*, Ohio Cap. J. (Oct. 23, 2024) |
| 12 | Jo Ingles, *Here's a real fact on required REAL ID: some Ohioans may not need one after all*, Statehouse News Bureau (Apr. 14, 2025) |
| 13 | Stephen Richer, *Trump's Claims About Noncitizens Voting Are False. We Can Prove It.*, Cato.org (Feb. 5, 2026) |
| 14 | Jillian Andres Rothschild et al., *Who Lacks ID in America Today? An Exploration of Voter ID Access, Barriers, and Knowledge*, Univ. of Md. Ctr. for Democracy & Civic Engagement (June 2024) |
| 15 | *Only one-third of Americans have a valid US passport*, YouGov.com (survey conducted Apr. 10-13, 2021) |

ii

| 16 | Ohio Bureau of Motor Vehicles, Driver's License Renewals, https://www.bmv.ohio.gov/dl-renewal-current.aspx (accessed Apr. 28, 2026) |
|---|---|
| 17 | Ohio Bureau of Motor Vehicles, Types of Cards, https://ww.bmv.ohio.gov/dl-real-id.aspx (accessed Apr. 28, 2026) |
| 18 | Ohio Admin. Code § 4501:1-1-21 (eff. Feb. 1, 2008) |
| 19 | Ohio Admin. Code § 4501:1-1-21 (eff. Oct. 8, 2009) |

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. Inter Tribal Council of Ariz.*,
570 U.S. 1 (2013) ........................................................................................ 8, 14

*Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*,
162 F.4th 631 (6th Cir. 2025) ........................................................................ 5, 7

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) ..................................................................... *passim*

*Fish v. Schwab*,
957 F.3d 1105 (10th Cir. 2020) ......................................................................... 8

*Foster v. Love*,
522 U.S. 67 (1997) ............................................................................................ 6

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) .......................................................................................... 9

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
808 F. Supp. 3d 29 (D.D.C. 2025) ..................................................................... 8

*Madan B.K. v. Noem*,
No. 1:25-cv-419, 2025 WL 1171572 (W.D. Mich. Apr. 23, 2025) ......................... 15

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025) ............................................................................ 8

*Ne. Ohio Coal. for Homeless v. Blackwell*,
467 F.3d 999 (6th Cir. 2006) ........................................................................... 15

*Obama for Am. v. Husted*,
697 F.3d 423 (6th Cir. 2012) ...................................................................... 11, 12

*Poffenbarger v. Kendall*,
588 F. Supp. 3d 770 (S.D. Ohio 2022) .............................................................. 15

*Reynolds v. Sims*,
377 U.S. 533 (1964) .......................................................................................... 6

*Thompson v. DeWine*,
   976 F.3d 610 (6th Cir. 2020) ................................................................ 6

*Williams-Yulee v. Fla. Bar*,
   575 U.S. 433 (2015) ............................................................................ 10

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................... 5, 15

**STATUTES**

18 U.S.C. § 611 ....................................................................................... 3

52 U.S.C. § 20501 ................................................................................... 2

52 U.S.C. § 20504 ............................................................................. *passim*

8 U.S.C. § 1182 ....................................................................................... 3

Ohio R.C. 3599.11 .................................................................................. 3

Ohio R.C. 3501.01 .................................................................................. 4

Ohio R.C. 3503.11 ........................................................................... *passim*

Ohio R.C. 3503.20 .................................................................................. 3

Ohio R.C. 3599.12 .................................................................................. 3

**REGULATIONS**

6 C.F.R. § 37.11(g) ............................................................................... 13

Ohio Admin. Code § 4501:1-1-21 ........................................... 3, 12, 13, 14

**OTHER AUTHORITIES**

H.R. Rep. No. 103-66 (1993) (Conf. Rep.) .......................................... 3, 8

**STATEMENT OF THE ISSUE**

Whether HB 54's proof-of-citizenship requirement for individuals applying to register to vote at the Ohio Bureau of Motor Vehicles should be preliminary enjoined as preempted by the National Voter Registration Act.

## SUMMARY OF ARGUMENT

The National Voter Registration Act ("NVRA") prohibits states from requiring more than the "minimum . . . information necessary" to determine an applicant's eligibility to vote, including eligibility based on citizenship. 52 U.S.C. § 20504(c)(2)(B). The Act also requires states to require individuals applying to register to vote in conjunction with a driver's license application to attest to their citizenship under penalty of perjury. *Id.* § 20504(c)(2)(C). Taken together, these provisions indicate that a sworn attestation of citizenship is the "presumptive" minimum amount of information necessary to determine a voter registration applicant's citizenship. *Fish v. Kobach* ("*Fish I*"), 840 F.3d 710, 717 (10th Cir. 2016). A state may require more than a sworn attestation of citizenship only if the state makes a factual showing that substantial numbers of noncitizens register to vote notwithstanding the attestation requirement. *Id.*

House Bill 54's ("HB 54") requirement that persons seeking to register to vote at the Bureau of Motor Vehicles ("BMV") must provide documentary proof of citizenship ("DPOC") goes beyond the NVRA's presumptive minimum amount of information. Consequently, HB 54 is preempted unless Defendants can show that substantial numbers of noncitizens have registered to vote in Ohio notwithstanding the attestation requirement. They cannot. Both in Ohio and elsewhere, confirmed instances of noncitizen voting are vanishingly rare. In addition, HB 54 imposes a DPOC requirement only on voter registration applicants at the BMV, not applicants seeking to register via any other means. That under-inclusiveness disproves that a DPOC requirement is "necessary" to prevent noncitizen voting. Consequently, Plaintiffs are likely to succeed on the merits because HB 54 is preempted by the NVRA. Plaintiffs' members also face irreparable harm as a result of being denied voter registration, and the balance of equities and public interest tip in their favor. Plaintiffs therefore are entitled to a preliminary injunction.

vii

**INTRODUCTION**

The National Voter Registration Act ("NVRA") requires states to offer voter registration at their motor vehicle offices, and to require generally no more than a sworn attestation as proof of citizenship. In enacting House Bill 54 ("HB 54"), the Ohio legislature disregarded these federal strictures and required that prospective voters present additional documents proving their citizenship before they can register to vote at the Bureau of Motor Vehicles ("BMV"). This flatly conflicts with the NVRA. Other courts have considered and enjoined similar documentary proof-of-citizenship ("DPOC") requirements as preempted by the NVRA, and there is no reason for this Court to chart a different course. The NVRA prohibits states from requiring anything more than "the minimum amount of information necessary" to assess an applicant's eligibility to vote. By requiring voters to present "proof of United States citizenship" beyond a sworn attestation, HB 54—like similar laws that came before it—conflicts with the NVRA and is preempted.

The only way Defendants could demonstrate that HB 54 is not preempted is to show that a substantial number of noncitizens have registered despite the NVRA's requirement that voter registration applicants make a sworn attestation of their citizenship. Defendants cannot satisfy this burden. Time and again, after scouring their voter files, states have found only vanishingly few instances of noncitizen voting—numbers that cannot plausibly influence any election. The same is true in Ohio, where Secretary LaRose has taken a microscope to Ohio's voter list and referred hundreds of cases of alleged noncitizen misconduct to county prosecutors—a fraction of votes cast—yet only a tiny handful of prosecutions have come from it. That is because the referrals "lack[ed] minimal evidence necessary to pursue charges or pursue an indictment." Ex. 9 at 2.

While HB 54 remains in force, eligible voters will be denied the opportunity to register to vote at the BMV, in plain defiance of the NVRA. Election season is approaching, and the deadline

1

to register for the midterm general election is October 5. Because the NVRA straightforwardly preempts HB 54's DPOC requirement, Plaintiffs are likely to succeed on the merits. This matter will almost certainly not be finally resolved before October 5. Thus, to ensure that eligible voters do not miss their opportunity to participate in the election—a textbook example of irreparable harm—the Court should enjoin HB 54's DPOC requirement well ahead of the October 5 deadline.

## BACKGROUND

### I.      The National Voter Registration Act

The NVRA arose "against a backdrop of lackluster voter registration and political participation." *Fish I*, 840 F.3d at 720. Congress recognized that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." *Id.* (quoting 52 U.S.C. § 20501(a)(3)). It therefore enacted the NVRA to "ensure that . . . simple means are available to register for federal elections and those means are actively presented to voters by the states." *Id.* at 721.

To that end, the NVRA requires states to offer citizens the opportunity to register to vote when they apply for a driver's license—the so-called "motor voter" provision. 52 U.S.C. § 20504. The NVRA specifies that motor-voter registration applications "may require only the *minimum* amount of information necessary to . . . enable state election officials to assess the eligibility of the applicant." *Id.* § 20504(c)(2)(B) (emphasis added). One such eligibility requirement is that only citizens may vote. The NVRA facilitates a state's ability to determine a citizen's eligibility by commanding that a state's motor-voter form must require applicants to attest that they are a citizen, under penalty of perjury. *Id.* § 20504(c)(2)(C).

In enacting the NVRA, Congress contemplated whether to provide a DPOC provision within it. Specifically, the Senate version of the bill considered by the NVRA's conference

committee included a provision that would have provided "that nothing in this Act shall prevent a State from requiring presentation of documentation relating to citizenship of an applicant for voter registration." H.R. Rep. No. 103-66, at 23 (1993) (Conf. Rep.). The conference committee rejected that provision, finding it "not necessary or consistent with the purposes of this Act," and that it "could also adversely affect the administration of the [Act's] registration programs." *Id.*

## II.     Voter Registration Procedures in Ohio

Individuals can register to vote in Ohio in many ways, including by registering online, submitting Ohio's paper registration form, and using the Federal Form. Each of those methods allows applicants to demonstrate citizenship with a sworn statement—DPOC is not required. *See* Ex. 3; Ex. 4; Ohio R.C. 3503.20(D)(3). For decades, Ohio has also allowed drivers to register to vote in conjunction with a driver's license application. *See* Ohio R.C. 3503.11(D) (1989). Prior to HB 54's enactment, and consistent with Ohio's requirements for other forms of voter registration, motor-voter applicants could demonstrate their citizenship by a sworn attestation without providing DPOC. Ohio R.C. 3503.11(A)(1) (Apr. 2025).

Both Ohio law and federal law make it a crime for noncitizens to vote, 18 U.S.C. § 611; Ohio R.C. 3599.12(A)(1), (B); *id.* 3599.11(A) (knowingly registering or attempting to register to vote when not a "qualified voter" is a felony), and Ohio voter registration forms contain conspicuous warnings of those criminal consequences, *see, e.g.*, Ex. 3. Further, a noncitizen that attempts to vote is permanently "inadmissible" under federal immigration law, absent narrow exceptions. 8 U.S.C. § 1182(a)(6)(C)(ii), (a)(10)(D). As discussed below, Ohio's voter registration regime has long ensured that noncitizens do not vote in Ohio. *Infra* Arg. § 1.B. Nonetheless, the Ohio legislature in March 2025 enacted HB 54, which requires BMV customers to "present[] proof of United States citizenship" before being offered "the opportunity to register to vote or to update [their] voter registration." Ohio R.C. 3503.11(A)(1). Individuals who have "previously presented

3

proof of United States citizenship to the registrar or any deputy registrar" are not required to do so again. *Id.* This DPOC requirement applies only to registration at the BMV.

When first enacted, HB 54 failed to define "proof of United States citizenship," or otherwise identify the documents that would satisfy the DPOC requirement. The Legislature later enacted SB 293, which defines "proof of citizenship" to include: (1) the number of an Ohio driver's license or state ID, if BMV records verify citizenship; (2) a copy of an Ohio credential that was issued on or after April 7, 2023 and that does not indicate noncitizenship, (3) a birth certificate, certification of report of birth, or consular report of birth abroad; (4) a current U.S. passport or passport card; (5) a naturalization certificate or certificate of citizenship; or, (6) an I-797 notice of action for form N-565, if the notice indicates that the application has been granted. Ohio R.C. 3501.01(EE)(1). If the individual's current legal name differs from the name on the individual's proof of citizenship, they must also provide proof of the name change. *Id.* § 3501.01(EE)(2).[1]

### III.    The Plaintiffs

Red Wine & Blue is a membership organization whose mission is to empower women to engage in political discourse and to work together to counter extremism by building connections and organizing their communities. Ex. 1 ¶ 3. Part of that core mission involves encouraging its members to vote, to be politically engaged, and to organize their communities to be politically

---

[1] Contrary to Defendants' suggestion, *see* ECF No. 28, SB 293 does not resolve Count III or part of Count II. Those claims concern whether HB 54 will be applied in a "uniform" way, Compl. ¶ 116, and whether it will lead to "arbitrary" enforcement, *id.* ¶ 121. It is unclear how BMV officials will apply these definitions in the context of HB 54. Defendants argued that HB 54 does not "prohibit" the BMV from registering individuals who lack DPOC, contending instead that it merely *requires* BMV employees to offer registration "under certain circumstances." *See* ECF No. 26 at PageID 274. Plaintiffs explained why that argument is incorrect, ECF No. 25 at PageID 258-59, but the fact Defendants advanced it shows that HB 54 could be enforced in nonuniform ways: in Defendants' view, it is allowable for some deputy registrars to offer to register BMV applicants who fail to provide DPOC, while others could rely on HB 54 to refuse that opportunity. Discovery regarding the implementation of HB 54 will be necessary to resolve those claims. But that can wait for another day. In this motion, Plaintiffs seek a preliminary injunction solely pursuant to Count I.

engaged. *Id.* ¶ 5. To achieve that mission, Red Wine & Blue provides information on the voting process, registers and turns out its members and their communities to vote, and regularly reminds its members to check their voter registration and update it if they have moved. *Id.*

Red Wine & Blue has over 600,000 members, including approximately 62,000 members who reside throughout Ohio. *Id.* ¶ 4. Members commonly find themselves at the BMV, including because they need to update their driver's license because of a recent move or name change. *Id.* ¶ 6. The large majority of Red Wine & Blue's members are women, many of whom have changed or will change their name as a result of marriage or divorce. *Id.*

The Ohio Alliance for Retired Americans ("Alliance") is a state affiliate of the Alliance for Retired Americans. Ex. 2 ¶ 2. The Alliance's mission is to protect the civil rights of retirees and to ensure that they obtain social and economic justice, and central to that mission is ensuring that its members are able to register and turn out to vote. *Id.* ¶ 4. It has approximately 253,000 members, consisting of retirees from public and private sector unions, who reside throughout Ohio. *Id.* ¶ 3. The Alliance's members also frequently visit the BMV to renew or update their driver's licenses. *Id.* ¶ 5. In addition, Alliance members are largely older voters, who may lack DPOC or whose documents may have become worn, illegible, or otherwise unacceptable to the BMV. *Id.* ¶ 8.

## LEGAL STANDARD

A plaintiff is entitled to a preliminary injunction if it shows that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of relief, (3) the equities tip in its favor, and (4) an injunction is in the public interest. *Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*, 162 F.4th 631, 637 (6th Cir. 2025) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Where a preliminary injunction is sought to remedy "an

5

alleged constitutional violation, the likelihood of success on the merits often will be the determinative factor." *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020) (cleaned up).

## ARGUMENT

I. **Plaintiffs are likely to succeed on the merits: HB 54 violates the plain language of the National Voter Registration Act.**

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). The NVRA is a critical safeguard for this most basic right, protecting voters from arbitrary barriers to voter registration. Its requirement that prospective voters be permitted to register at state motor vehicle offices is critical to the Act's success, with such registrations accounting for more than 37% of voter registrations nationwide in 2024. Ex. 5 at 140. To that end, the NVRA preempts any state law that requires voters to present more than the "minimum amount of information necessary to . . . enable state election officials to assess the eligibility of the applicant." 52 U.S.C. § 20504(c)(2)(B). HB 54 is an exemplar of such a law. Because there is no evidence that noncitizens are registering to vote and voting in any meaningful numbers in Ohio—or anywhere else in the country—HB 54's DPOC requirement exceeds the "minimum amount of information necessary" to verify an applicant's citizenship.

A. **The NVRA presumptively prohibits states from requiring more than a sworn attestation to prove citizenship.**

Under the Elections Clause, a state's authority to regulate federal elections extends "only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997). In enacting the NVRA, Congress specified that when an applicant seeks to register to vote in conjunction with applying for a driver's license, the state "may require only the minimum amount of information necessary" to assess an applicant's eligibility to vote. 52 U.S.C. § 20504(c)(2)(B). Accordingly, the critical question here is whether HB 54's DPOC requirement

6

exceeds the "minimum . . . information necessary" for Ohio to determine an applicant's citizenship. If it does, HB 54 conflicts with the NVRA and is preempted.

In answering that question, this Court does not write on a blank slate. In *Fish I*, the Tenth Circuit thoroughly examined how Kansas's now-enjoined DPOC requirement measured up against Section 5 of the NVRA—finding it came up short and was thus preempted. As here, the key question in *Fish I* was how to interpret the NVRA's prohibition on states requiring motor voter applicants to provide more than the "minimum . . . information necessary" to determine citizenship. *Id.* at 733-42. To construe that provision, the Tenth Circuit first looked to the "plain and ordinary meaning" of the NVRA's use of the word "minimum," *see id.* (quotation omitted), canvassing several dictionaries, from which it concluded that "[t]he term 'minimum' contemplates the least possible amount of information" to determine a voter's eligibility, *id.* at 736.

The court then looked to the NVRA's next provision, which mandates that states require applicants to attest to their citizenship under penalty of perjury. 52 U.S.C. § 20504(c)(2)(C). To read these two provisions "harmoniously," *Fish I*, 840 F.3d at 736, the Tenth Circuit concluded it is "entirely reasonable . . . to infer from the statutory structure that Congress contemplated that the attestation requirement would be regularly used and would typically constitute the minimum amount of information necessary for state officials to carry out their eligibility-assessment and registration duties." *Id.* at 737-38. This is buttressed by the fact that "Congress has historically relied on an attestation requirement 'under penalty of perjury' as a gate-keeping requirement for access to a wide variety of important federal benefits and exemptions." *Id.* (collecting authority). In short, these provisions demonstrate that Congress intended a sworn attestation to be "the *presumptive* minimum amount of information necessary" to determine citizenship. *Id.* at 738.

To rebut that presumption, then, a state seeking to impose additional requirements for

7

motor-voter registration must show that such additional requirements were in fact the "minimum . . . necessary" to determine citizenship. *See id.* To that end, in order for "a state advocating for a DPOC regime to rebut the presumption that the attestation requirement is the minimum information necessary for it to carry out its eligibility-assessment and registration duties, it must make a factual showing that the attestation requirement is insufficient for these purposes." *Id.* More specifically, a state must "show that a substantial number of noncitizens have successfully registered notwithstanding the attestation requirement." *Id.* at 739 (cleaned up).

These holdings from the Tenth Circuit are also fully consistent with the NVRA's legislative history, in which Congress expressly *rejected* a proposal that would have specifically authorized state DPOC regimes. *Supra* H.R. Rep. No. 103-66, at 23. And, since *Fish I*, courts have continued to recognize that the attestation requirement is sufficient to demonstrate an applicant's eligibility to vote. *See Fish v. Schwab* ("*Fish II*"), 957 F.3d 1105, 1139 (10th Cir. 2020) (applying *Fish I* framework); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 713 (9th Cir. 2025) (holding that documentary proof of residence was "not 'necessary' for new applicants," and thus could not be required on Arizona's state voter registration form for federal elections under Section 6 of the NVRA, "because attestation sufficiently confirms the eligibility of registered voters"); *League of United Latin Am. Citizens v. Exec. Off. of the President*, 808 F. Supp. 3d 29, 74 (D.D.C. 2025) (permanently enjoining executive order requiring the EAC to add a DPOC requirement to the national mail voter registration form); *see also Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 15, 20 (2013) (holding DPOC requirement to register by mail preempted by the NVRA).

Because the standard the Tenth Circuit adopted in *Fish I* reflects the best reading of the NVRA's text and is consistent with the statute's structure and purpose, the Court should apply the same standard to assess Ohio's DPOC requirement.

### B. Defendants cannot rebut the presumption that a voter's attestation of citizenship is the "minimum . . . information necessary" to establish citizenship.

Under HB 54, a person must provide DPOC before they can register to vote. Ohio R.C. 3503.11(A)(1); *id.* 3501.01(EE)(1)-(2). By requiring more than a sworn attestation to prove citizenship, HB 54 exceeds the NVRA's presumptive minimum amount of information that a state may require. *Fish I*, 840 F.3d at 716-17. Consequently, the DPOC requirement conflicts with the NVRA and is preempted unless Defendants "show that a substantial number of noncitizens have successfully registered notwithstanding the attestation requirement." *Id.* at 739 (cleaned up).

"[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). Therefore, because "the Government bears the burden of proof on the ultimate question" of whether a substantial number of noncitizens have successfully registered to vote, "[Plaintiffs] must be deemed likely to prevail" unless Defendants can make that required showing at the preliminary injunction stage. *Id.*; *see id.* at 429-30 (explaining that while this principle was announced in a First Amendment case, it extends to other claims where the defendant bears the ultimate burden of proof).

Defendants will not be able to make that showing. Voting by noncitizens is exceedingly rare in Ohio and nationwide. Any minimal evidence the Secretary might be able to marshal on this score will inevitably "fall well short" of what is required to show DPOC is "necessary" to determine the citizenship of voter registration applicants. *See Fish I*, 840 F.3d at 747.

For starters, the fact that HB 54 imposes a DPOC requirement *only* for voter registration at the BMV—and not for voter registration done online, by mail, or by in-person submission— undercuts any suggestion that DPOC is "necessary" to determine citizenship. *See* Ohio R.C. 3503.11(A)(1). In the exceedingly uncommon event where a noncitizen wants to register—risking criminal prosecution, imprisonment, and a permanent bar to admissibility in the United States—

HB 54 does nothing to prevent that, since the noncitizen could simply submit some other form of registration with a perjured attestation of citizenship and no DPOC. A similar issue arose in *Fish I*, where Kansas conceded that it would ultimately accept a sworn attestation to prove citizenship if made in conjunction with a hearing on someone's eligibility to vote. 840 F.3d at 747. "That concession . . . undermines the legitimacy of [the State's] assertion that a written attestation on a motor voter registration form is insufficient to allow" election officials to determine someone's citizenship. *Id.* So too here: Ohio's acceptance of a sworn attestation to prove citizenship in every other means of registering to vote demonstrates that Ohio does *not* believe DPOC is "necessary" to determine an applicant's citizenship. *Cf. Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (observing that a law's under-inclusivity can cast doubt on the strength of its purported purpose).

The evidence bears out that a DPOC requirement is not necessary to prevent noncitizen registration and voting. Actual instances of noncitizen voting are vanishingly rare, despite spirited efforts to scour Ohio records to uncover any such illegal registration and voting. For example, Secretary LaRose took office in 2019, and by 2024 he had made around 600 referrals alleging a noncitizen had violated election laws, but only *12* have been pursued by county prosecutors. Ex. 8 at 1-2; Ex. 9 at 2; *see* Ex. 7 at 1-2. The tiny percentage of pursued cases was explained by a representative of Ohio prosecutors, who bluntly stated that Secretary LaRose's referrals "often lack minimal evidence necessary to pursue charges or pursue an indictment, let alone obtain a conviction." Ex. 8 at 2. He continued: "Our experience with referrals from this secretary of state is that many of the cases he refers haven't been properly investigated by his office or it is just a lead and when a prosecutor chases down the lead, it turns out that there's nothing there." *Id.*

Unhappy with this showing, Secretary LaRose re-referred cases that county prosecutors declined to pursue to the Attorney General's office. But out of the hundreds of referrals, only seven

were presented to a grand jury. And in one of them, the grand jury declined to return an indictment. Commenting on the indictments, Attorney General Yost cautioned that "[i]rregularities like this are rare, and this is a small number of cases." Ex. 10 at 2. And he has "repeatedly stressed" that these low rates "should enable everybody to take a deep breath and be more confident that . . . the noncitizens are not going to vote." Ex. 11 at 3. "Rare" is right—Ohio has nearly *eight million* registered voters. *See* Ex. 6. Between county prosecutors and Attorney General Yost, there have been prosecutions of roughly 0.000225% for alleged noncitizen voting. The Secretary's referrals are not competent evidence that can support a "factual showing that substantial numbers of noncitizens have successfully registered to vote." *Fish I*, 840 F.3d at 717.

The lack of evidence that meaningful numbers of noncitizens have registered to vote and voted in Ohio is consistent with trends nationwide. A recent publication from the Cato Institute illustrates the point, highlighting "compelling evidence debunking the false claims"—including recent state investigations—that noncitizens vote in U.S. elections with any amount of regularity. Ex. 13 at 2. In Utah, of the state's 2.1 million registered voters, a review uncovered "one 'confirmed noncitizen.' Just one." *Id.* And that person had never voted. *Id.* Idaho uncovered 36 "'very likely' registered noncitizens" of over one million registered voters. *Id.* Louisiana discovered 390 noncitizen registrants of nearly 3 million voters; Montana discovered 23 *possible* noncitizen registrants of 785,000 registered voters; and Georgia's 2024 audit uncovered a mere 20 registered noncitizens of 8.2 million registered voters. *Id.* In short, there simply is no evidence *anywhere*—including Ohio—that substantial numbers of noncitizens are registering and voting. Defendants therefore will fail to carry their burden, and Plaintiffs will likely succeed on the merits.

## II.     Plaintiffs will suffer irreparable harm unless HB 54 is enjoined.

"When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). That principle applies strongly when

11

voting is at stake, because "[a] restriction on the fundamental right to vote . . . constitutes irreparable injury." *Id.* at 436. The reason for that is simple: if a citizen is unable to cast a ballot in an election, no damages or other relief is available to remedy that harm. *See Fish I*, 840 F.3d at 752 ("[T]here can be no 'do-over' or redress of a denial of the right to vote after an election.").

Plaintiffs will suffer irreparable injury absent preliminary injunctive relief. Plaintiffs filed suit in August 2025. The case remains in its early stages, with Defendants' motion to dismiss still pending. Meanwhile, this is an election year, and the registration deadline for the general election is October 5. Unless HB 54's DPOC requirement is enjoined, Ohioans who show up to the BMV without DPOC will be turned away without being registered to vote. This will include Plaintiffs' members, who go to the BMV to update their driver's license when they move or change their name, both of which also require an update to their voter registration. *See* Ex. 1 ¶¶ 6-7; Ex. 2 ¶¶ 5-6. There are several ways in which HB 54 will result in individuals not being registered at the BMV when they otherwise would have, thereby jeopardizing their ability to vote, a risk that increases as we get closer to this year's election.

*First*, many Ohio drivers likely do not have DPOC on file with the BMV and will not be required to provide DPOC when they next renew their license. These individuals will be affected by HB 54 because Ohio regulations allow them to use their current driver's license (as long as it is not expired for more than six months) to obtain an updated one without providing DPOC, *see* Ohio Admin. Code § 4501:1-1-21(C), (L), but they will *not* be able to use their license to satisfy HB 54's DPOC requirement, *see* Ohio R.C. 3503.11(A)(1), 3501.01(EE)(1). Thus, if one of these individuals changes their name or address, they may take only their driver's license to the BMV because they (correctly) believe that is all they need to obtain a new license but then be surprised

12

when they cannot register to vote since they have not provided DPOC.[2]

This is not a small category of Ohioans. The fact that, as of April 2025, only 56% of Ohio drivers had a license that was compliant with the federal Real ID Act, Ex. 12 at 1, indicates as much. Although Real IDs do not themselves prove citizenship, obtaining one requires documents showing legal presence, which, for citizens, is typically done by proving citizenship. *See* Ex. 17; 6 C.F.R. § 37.11(g). There has been a nationwide campaign attempting to convince Americans to get a Real ID, yet nearly half of Ohio drivers still have what is known as a "standard" credential. Ex. 12. This is not surprising, as it is simply easier to obtain for many people. In particular, a driver seeking to *renew* a license is not required to submit separate documents demonstrating their legal presence if their current license is unexpired or has been expired for less than six months. Ohio Admin. Code § 4501:1-1-21(C), (G), (L); *see* Exs. 16 & 17. This also means that, if a driver has timely renewed their license since before Ohio began requiring proof of legal presence in 2009,[3] they have never been required to produce DPOC.

*Second*, individuals who do not possess DPOC (even if they could conceivably obtain it), or who have DPOC but have not previously submitted it to the BMV and neglect to bring it with them, will also not be able to register to vote under HB 54. This includes Ohioans who simply do not have an acceptable document (*e.g.*, a birth certificate or passport), including members of Plaintiffs who may have misplaced those documents after a lifetime of moves. *See* Ex. 1 ¶ 9; Ex. 2 ¶ 8. It also includes women who have their birth certificate or current passport but lack a certified

---

[2] For this reason, some people who obtained a driver's license issued after April 7, 2023 will never have provided DPOC, even though licenses issued after that date *would* count as proof of citizenship under Ohio R.C. 3501.01(EE)(1)(b).

[3] *Compare* Ex. 18 (2008 version of § 4501:1-1-21, which does not contain a requirement to prove legal presence), *with* Ex. 19 (2009 version of § 4501:1-1-21, which contains this requirement). Plaintiffs' opposition to the motion to dismiss mistakenly stated that legal presence was first required in this regulation in 2016.

copy of a document that matches their legal name with the citizenship document. Red Wine & Blue members, who are predominantly women, have experienced this problem. Ex. 1 ¶ 10.

Although the BMV has the authority to decline to issue a *driver's license* if an individual fails to bring such documents to the BMV, under the NVRA the BMV is still required to offer such persons the opportunity to register to vote, regardless of whether they brought DPOC. That is because the NVRA specifies that the BMV must offer the chance to register to any driver's license *applicant*—it is not limited only to individuals who can submit a *successful* driver's license application. 52 U.S.C. § 20504(a)(1); *cf. Inter Tribal Council of Ariz.*, 570 U.S. at 15 (distinguishing between *submitted* and *successful* voter registration applications).

*Third*, some individuals do not have qualifying DPOC and will not be able to obtain it. For these individuals, Ohio regulations offer an alternate path to obtain a driver's license. Ohio Admin. Code § 4501:1-1-21(Q). But under HB 54, someone invoking this process would not be allowed to register to vote at their local BMV office when they apply for a driver's license, as they necessarily will not have provided satisfactory DPOC at that time. Ohio R.C. 3503.11(A)(1).

There are many reasons why a citizen might not readily possess DPOC. A recent study found that as many as 9% of eligible, voting-age citizens—21.3 million people—lack ready access to many of the documents HB 54 would require. Ex. 14 at 6. And Plaintiffs' members are among those particularly likely to be impacted. For one, Red Wine & Blue's members are mostly women, many of whom lack DPOC that matches their current name. Ex. 1 ¶¶ 9-10. Both Plaintiffs represent older Ohioans, and it is often more difficult for older citizens to produce DPOC. According to one recent study, only 35% of Americans 65 and older possess a valid, non-expired passport. Ex. 15 at 60. And many do not have access to documents like birth certificates or marriage and divorce certificates, either because they never received them or because they have been lost, misplaced, or

14

damaged over the years. Ex. 1 ¶ 9. They also may be worn with age or illegible. Ex. 2 ¶ 8.

In any of the circumstances described above, HB 54 will result in an individual who fails to bring DPOC to the BMV or who lacks it altogether being denied the opportunity to vote simply because they did not bring documents to prove their citizenship. As this year's election approaches, those denials of registration will increasingly result in individuals who otherwise would have registered at the BMV failing to meet the voter registration deadline and losing their right to vote in that election. HB 54 should be preliminarily enjoined to prevent that irreparable harm.

**III.    The equities tip in Plaintiffs' favor and an injunction is in the public interest.**

The remaining preliminary injunction factors—the balance of harms and the public interest—"merge when the Government is the party opposing injunctive relief." *Poffenbarger v. Kendall*, 588 F. Supp. 3d 770, 797 (S.D. Ohio 2022). At this step, the court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation omitted).

Here, the balance tips sharply in Plaintiffs' favor. Absent preliminary relief, Plaintiffs' members face irreparable harm, specifically interference with their right to vote. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Poffenbarger*, 588 F. Supp. 3d at 797 (citation omitted). And the public interest favors ensuring that all eligible Ohioans can cast a ballot come election day. *See Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1012 (6th Cir. 2006). On the other hand, if an injunction issues, Defendants face no injury at all: they would merely be restrained from enforcing an unlawful statute. "[N]either [the State] nor the public have a legitimate interest in enforcing unconstitutional or unlawful actions." *Madan B.K. v. Noem*, No. 1:25-cv-419, 2025 WL 1171572, at *8 (W.D. Mich. Apr. 23, 2025) (citation omitted).

**CONCLUSION**

For the foregoing reasons, the Court should preliminarily enjoin HB 54.

15

By: */s/ Stacey N. Hauff*
J. Corey Colombo (0072398)
Stacey N. Hauff (0097752)
MCTIGUE & COLOMBO, LLC
545 East Town Street
Columbus, OH 43215
Tel: (614) 263-7000
shauff@electionlawgroup.com

Ben Stafford*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Tel: (206) 656-0176
bstafford@elias.law

Joshua Abbuhl*
Qizhou Ge*
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
Tel: (202) 968-4652
jabbuhl@elias.law
age@elias.law

*Attorneys for Plaintiffs*
*\* Admitted pro hac vice*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2026, the foregoing was filed electronically with the Clerk of the Court using the Court's electronic case filing system, which will serve such filing on all counsel of record.

/s/ *Stacey N. Hauff*
Stacey N. Hauff

**CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to a track. This memorandum complies with the relevant page limitation.

/s/ *Stacey N. Hauff*
Stacey N. Hauff

17