**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RED WINE & BLUE,** *et al.*, | **:** | |
| | **:** | Case No. 1:25-cv-01760 |
| Plaintiffs, | **:** | |
| | **:** | Judge Solomon Oliver, Jr. |
| v. | **:** | |
| | **:** | |
| **FRANK LAROSE, in his official capacity** | **:** | |
| **as Ohio Secretary of State,** *et al.*, | **:** | |
| | **:** | |
| Defendants. | **:** | |

---

**THE HONEST ELECTIONS PROJECT'S PROPOSED**
**AMICUS BRIEF IN SUPPORT OF DEFENDANTS**
**FRANK LAROSE AND CHARLES L. NORMAN**

---

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

BRIEF OF AMICUS CURIAE THE HONEST ELECTIONS PROJECT ...................................... 1

A.    The Court Should Deny Injunctive Relief Because Plaintiffs Lack Standing and Their Lengthy Delay Undermines Any Argument of Irreparable Harm ............................. 1

B.    Plaintiffs Are Unlikely to Succeed on the Merits Because *Arizona v. Inter Tribal Council of Arizona, Inc.*, which Plaintiffs Cite in Support of Their Position, Supports Ohio's Documentary Proof of Citizenship Requirement ..................................................... 2

C.    Plaintiffs' Reliance on *Fish v. Kobach* is Misplaced Because It Was Wrongly Decided ................................................................................................................. 3

    1.    *Fish v. Kobach* ignores *Inter Tribal's* instruction to defer to States' assessment of what documentation is necessary to enforce voting qualifications ............................................................................................... 3

    2.    *Fish v. Kobach's* "substantial number" test for whether a requirement is necessary to enforce a State's qualifications is unfounded and inconsistent with longstanding election-law jurisprudence .......................................................... 6

CONCLUSION .................................................................................................................. 7

CERTIFICATE OF SERVICE ............................................................................................. 9

110056136v2

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ...................................... *passim*

*Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531 (6th Cir. 2021) ............................. 1, 2

*Benisek v. Lamone*, 585 U.S. 155 (2018) ..................................................................................... 2

*Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366 (6th Cir. 2019) ............................................. 5

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) ........................................................ 7

*Crawford v. Marion County Election Board.*, 553 U.S. 181 (2008) ........................................... 6, 7

*Crowell v. Benson*, 285 U.S. 22 (1932) ....................................................................................... 6

*FEC v. Nat'l Right to Work Comm.*, 459 U.S. 197 (1982) ........................................................... 7

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ................................................................... 3, 4, 5, 6

*Husted v. A. Philip Randolph Inst.*, 584 U.S. 756 (2018) ............................................................ 7

*Kobach v. EAC*, 772 F.3d 1183 (10th Cir. 2014) ........................................................................ 6

*Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017) ............................................................................... 1

*Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378 (6th Cir. 2020) ........................... 1, 2

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986) ............................................................. 7

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................................. 1, 2

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. XVII. .......................................................................................................... 2

U.S. Const., art. I, § 2, cl. 1 ...................................................................................................... 2, 7

U.S. Const., art. I, § 4, cl. 1 ........................................................................................................ 2

## REGULATIONS

Ohio Adm.Code 4501:1-1-21(C), (G)(1)–(5) (2022) ................................................................ 1

110056136v2

iii

## OTHER AUTHORITIES

Hamilton, A. *The Federalist Papers*. No. 60 .................................................................................. 3

National Voter Registration Act ........................................................................................... *passim*

110056136v2

**BRIEF OF AMICUS CURIAE THE HONEST ELECTIONS PROJECT**

Amicus curiae The Honest Elections Project offers the following brief in support of Defendants Frank LaRose and Charles L. Norman.

**A.    The Court Should Deny Injunctive Relief Because Plaintiffs Lack Standing and Their Lengthy Delay Undermines Any Argument of Irreparable Harm**

A "party who fails to show a 'substantial likelihood' of standing is not entitled to a preliminary injunction." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (vacating a preliminary injunction where plaintiffs failed to show standing). That is because "[w]ithout standing, [a court] lack[s] subject matter jurisdiction over the claims." *Id.* (citing *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017)). Defendants' Motion to Dismiss analyzes the jurisdictional defects in detail, and this Court's order scheduling argument on Plaintiffs' substantial likelihood of standing recognizes that standing is a threshold matter. *See* ECF Nos. 15, 34.

Plaintiffs' declarations do not cure those defects. Associational standing requires an organization to "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543 (6th Cir. 2021) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009)). Neither identifies a member who has been denied registration under HB 54 or who will be denied registration imminently as a direct result of HB 54, rather than the preexisting BMV documentary requirements found in Ohio Admin. Code § 4501:1-1-21(C), (G)(1)–(5) (2022). Instead, both speak in generalities—members who "may lack" documents, who "may" visit the BMV, or who are "likely" to be impacted. *See* Ex. 1 to Mot. Prelim. Inj. ¶¶ 6, 9, ECF No. 29-2; Ex. 2 to Mot. Prelim. Inj. ¶¶ 5, 8, ECF No. 29-3. This is the speculative showing *Summers* prohibits: an organization may not "identif[y] a likelihood that the defendant's conduct will harm an unknown member in light of the organization's extensive size or membership base." *Summers*,

1

555 U.S. at 498–99; *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 543. Plaintiffs' motion should be denied on this threshold ground. *See Hargett*, 978 F.3d at 385–86.

Independent of standing, Plaintiffs' delay in seeking relief undermines their claim of irreparable harm. HB 54 was enacted in March 2025. Plaintiffs filed suit in August 2025 but did not seek preliminary relief until April 28, 2026, more than thirteen months after HB 54's enactment. The Supreme Court has recognized that such delays weigh against preliminary relief. *Benisek v. Lamone*, 585 U.S. 155, 160 (2018) (per curiam) (affirming denial of a preliminary injunction where plaintiffs' "unnecessary, years-long delay" undercut urgency). Plaintiffs chose to forgo emergency relief for over a year and now assert that they will suffer irreparable injury because of the October 5, 2026 registration deadline. But that deadline has not changed and has long been known to Plaintiffs. Their inaction thus provides an independent threshold reason for denying their motion. But even if this Court reaches the merits, it should deny injunctive relief.

**B.     Plaintiffs Are Unlikely to Succeed on the Merits Because *Arizona v. Inter Tribal Council of Arizona, Inc.*, which Plaintiffs Cite in Support of Their Position, Supports Ohio's Documentary Proof of Citizenship Requirement**

In *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013), the Supreme Court considered the interaction between Congress's authority under the Constitution's Elections Clause (Art. I, § 4, cl. 1) and States' authority under the Qualifications Clause (Art. I, § 2, cl. 1)[1] in the context of the National Voter Registration Act's ("NVRA") creation of a uniform federal form that it required States to use to register voters for federal elections. The Supreme Court held that the Elections Clause "empowers Congress to regulate how federal elections are held, but not who may vote in them." *Id.* at 16–17. Meanwhile, the power to prescribe voter qualifications is reserved exclusively to the States under the Qualifications Clause, and "forms no part of the power to be

---

[1] And, with respect to Senators, the Seventeenth Amendment.

110056136v2

conferred upon the national government" by the Elections Clause. *Id.* (quoting The Federalist No. 60, at 371 (A. Hamilton)). Critically, the Supreme Court recognized in *Inter Tribal* that the Constitution's grant of power to the State to set qualifications necessarily encompasses the power to enforce them: "Since the power to establish voting requirements is of little value without the power to enforce those requirements . . . it would raise serious constitutional doubts if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications." *Id.* at 17.

The Supreme Court thus acknowledged that to the extent the NVRA prevented a State from enforcing its voting qualifications, that would be a constitutionally suspect restriction by Congress on a power the Constitution clearly confers on the States. It was able to sidestep the constitutional question only because the statute provided Arizona with "another means" to obtain the needed information: requesting that the Election Assistance Commission ("EAC") modify the federal registration form and, if the EAC rejected that request, seeking judicial review of that decision. *Id.* at 17–18. This procedural safety valve, not present here, was the linchpin of the decision—without it, the constitutional-avoidance canon would have compelled a different statutory reading.

**C.      Plaintiffs' Reliance on *Fish v. Kobach* is Misplaced Because It Was Wrongly Decided**

      **1.      *Fish v. Kobach* ignores *Inter Tribal's* instruction to defer to States' assessment of what documentation is necessary to enforce voting qualifications**

Plaintiffs urge this Court to follow the Tenth Circuit's lead in *Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) rather than "writ[ing] on a blank slate." But *Fish* was wrongly decided. While it addressed the same tension at issue here, that case inaccurately framed it as whether "the states' Qualifications Clause powers trump Congress's Elections Clause powers." *Id.* at 748–49. Ohio does not seek to trump *Congress's* authority under the Elections Clause, only to protect its *own* authority under the Qualifications Clause to "obtain[] the information necessary to enforce its voter

3

qualifications." *Inter Tribal*, 570 U.S. at 17. The approach adopted by the *Fish* court and urged by Plaintiffs would deprive Ohio of that information and thus fully implicate the "serious constitutional doubts" the Supreme Court identified but was able to avoid resolving in *Inter Tribal* thanks to the procedural safety valve earlier discussed. *Id.* No such mechanism for review is present in Section 5 of the NVRA, at issue in *Fish* and here.

Without the safety valve present in *Inter Tribal*, the *Fish* court had to squarely confront the potential conflict between the States' Qualifications Clause power and Congress's Elections Clause power. It sought to avoid this conflict by characterizing Kansas's citizenship requirement as substantive and the requirements to establish that qualification as procedural, and thus freely preemptible without triggering the constitutional concerns *Inter Tribal* identified. *Fish*, 840 F.3d at 749−50. But the Supreme Court rejected such a firm binary in *Inter Tribal*. It observed that setting qualifications is inextricably linked to enforcing them: "the power to establish voting requirements is of little value without the power to enforce those requirements." *Inter Tribal,* 570 U.S. at 17. Thus, an encroachment by Congress under the Elections Clause into the States' Qualifications Clause authority cannot be waved away by characterizing the intrusion as merely procedural in nature.

Faced with the prospect of Section 5 of the NVRA violating the Qualifications Clause, and without a safety valve to defuse the conflict, the *Fish* court should have heeded the Supreme Court's direction to employ the canon of constitutional avoidance. The Supreme Court was keenly aware in *Inter Tribal* that the NVRA came right up to the line between Congress's Elections Clause authority and States' Qualifications Clause authority. To ensure that the NVRA did not cross that line into unconstitutionality, it was ready to defer to Arizona's interpretation of what documentation was necessary under the well-established canon of constitutional avoidance as long

4

as it was "at least a possible [reading]." *Inter Tribal*, 570 U.S. at 18. The Supreme Court did not ultimately employ this canon of construction because the "statute provid[ed] another means by which Arizona may obtain information needed for enforcement"—the EAC request process. *Id.* But the *Fish* court, like this one, cannot avoid the constitutional question by resort to that process. Thus, constitutional avoidance applied in full force.

That canon "oblige[s]" federal courts "to avoid constitutional questions if an alternative interpretation of the statute 'though plainly not the best reading, is at least a possible one.'" *Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 376–77 (6th Cir. 2019) (quoting *Inter Tribal*, 570 U.S. at 18). But the *Fish* court's framing of what constitutes a showing that a State requires "the minimum amount of information necessary" to enforce its qualifications does exactly the opposite. First, it held that reading the various parts of the statute "harmoniously," the attestation requirement is "the presumptive minimum amount of information necessary for a state to carry out its eligibility-assessment and registration duties." *Fish*, 840 F.3d at 736, 737. This created a categorical presumption that the NVRA preempted *all* state verification requirements designed to enforce citizenship qualifications. Next, to rebut that presumption, it required a State to show that "a substantial number of noncitizens have successfully registered to vote under the attestation requirement." *Id.* at 739.

This approach failed to defer to Kansas's reading of the statute. Kansas had argued "that if even one noncitizen successfully registers under the attestation regime, then Documentary proof of citizenship (DPOC) is necessary to ensure applicant eligibility." *Fish*, 840 F.3d at 747−48. Because the lack of the safety valve present in *Inter Tribal* left open a potential conflict between the States' Qualifications Clause power and Congress's Elections Clause power, the *Fish* court was required to defer to Kansas's interpretation if it both (1) kept the court from having to decide

5

a constitutional question and (2) "was at least a possible" reading, even if "plainly not the best [one]." *Inter Tribal*, 570 U.S. at 18. Interpreting "necessary" documentation as that which is needed to prevent at least one noncitizen from voting is a "construction of the statute" that is both "fairly possible" and one "by which the constitutional question may be avoided." *Inter Tribal*, 570 U.S. at 18 (cleaned up, quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). Thus, the *Fish* court erred in not doing so, and this Court should not compound that error here.

> **2.** ***Fish v. Kobach's* "substantial number" test for whether a requirement is necessary to enforce a State's qualifications is unfounded and inconsistent with longstanding election-law jurisprudence**

Even if it was not required to defer to Kansas's interpretation that preserved States' constitutional right to set and enforce voter qualifications, the *Fish* court still erred in imposing its "substantial number" test. That requirement lacks any basis in *Inter Tribal* or the text of the NVRA. It comes from a single, unexplained sentence in a prior Tenth Circuit decision denying Kansas's appeal from the EAC's refusal to include its DPOC requirement. *See Kobach v. EAC*, 772 F.3d 1183, 1197–98 (10th Cir. 2014). The *Kobach* court provided no reasoning for why this was the applicable evidentiary burden, and the *Fish* court simply adopted it without further analysis. This standard was pulled from thin air without explanation or support.

*Fish*'s "substantial numbers" test not only lacks any reasoned basis but is fundamentally at odds with the Supreme Court's election-law jurisprudence. That test insists, before an enforcement measure can be considered necessary, upon a showing of harm to the electoral process that (1) has already occurred, (2) at scale, and (3) has been detected. *Fish*, 840 F.3d at 739. In stark contrast, the Supreme Court has long affirmed prophylactic state action to protect election integrity and urged deference to such measures. In *Crawford v. Marion County Election Board.*, 553 U.S. 181 (2008), it upheld Indiana's in-person voter ID law because the State's interest in "counting only the votes of eligible voters" and in "public confidence in the integrity of the electoral process" was

6

legitimate even absent evidence of actual in-person voter fraud. *Id.* at 191, 194, 196–97. So too in *Munro v. Socialist Workers Party*, 479 U.S. 189 (1986), it declined "[t]o require States to prove actual [harms to the electoral process]" because that "would necessitate that a State's political system sustain some level of damage before the legislature could take corrective action." *Id.* at 195. "Legislatures," it held, "should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively." *Id.* at 195–96. After all, the Supreme Court held recently, "it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 686 (2021). Moreover, the Supreme Court has already explicitly declined to "second-guess[] the judgment of the Ohio Legislature" with respect to another statutory voting measure enacted pursuant to its Qualifications Clause authority. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 774 (2018) (citing Art. I, § 2, cl. 1); *see also FEC v. Nat'l Right to Work Comm.*, 459 U.S. 197, 210 (1982) (refusing to "second-guess a legislative determination as to the need for prophylactic measures where corruption is the evil feared").

Against this backdrop, the *Fish* test requiring States to show that noncitizens have already exploited its registration system *and* that it has documented "substantial numbers" engaging in such fraud is a gross deviation from the Supreme Court's election-law jurisprudence and should not be adopted by this Court.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction, and Plaintiffs' claims should also be dismissed for lack of standing.

7

110056136v2

Respectfully submitted,

*/s/ Brodi J. Conover*
Brodi J. Conover (0092082)*
   **Lead and Trial Counsel*
BRICKER GRAYDON WYATT LLP
2 East Mulberry Street
Lebanon, OH 45036
(513) 870-6693
bconover@bricker.com

Jason Torchinsky(*Pro Hac forthcoming*)
Alexander Lee (*Pro Hac forthcoming*)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
(202) 737-8808
jtorchinsky@holtzmanvogel.com
alee@holtzmanvogel.com

Andrew Wilson (*Pro Hac forthcoming*)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
1221 Broadway, Suite 2100
Nashville, TN 37203
(615) 647-8528
awilson@holtzmanvogel.com

*Counsel for Honest Elections Project*

8

9

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the United States District Court, Northern District of Ohio, on June 4, 2026, and served upon all parties of record via the Court's electronic filing system.

/s/ Brodi J. Conover
Brodi J. Conover (0092082)

110056136v2