**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

RED WINE & BLUE, and OHIO ALLIANCE
FOR RETIRED AMERICANS,

*Plaintiffs,*

v.

Case No: 1:25-cv-01760

FRANK LAROSE, in his official capacity as
Ohio Secretary of State, CHARLES L.
NORMAN, in his official capacity as Ohio's
Registrar of Motor Vehicles,

*Defendants,*

**AMICUS BRIEF BY THE REPUBLICAN NATIONAL COMMITTEE
IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFFS' PRELIMINARY INJUNCTION MOTION**

In the midst of election season, Plaintiffs demand an order requiring Ohio to hand out voter-registration forms to people who have provided proof that they're not U.S. citizens. Misreading the National Voter Registration Act, they argue that Ohio must hand out voter-registration forms to everyone who walks in the BMV. But Congress did not require States to undermine their own elections in that manner. Neither the NVRA, nor precedent, nor common sense support Plaintiffs' view that known noncitizens are entitled to voter-registration forms, any more than 16-year-olds are entitled to them. The Court can thus deny the Plaintiffs' preliminary injunction motion on the merits.

But the Court need not even reach the merits. Seeking a preliminary injunction requires reasonable diligence. And a 12-month delay is the opposite of reasonable diligence. Plaintiffs' inexplicable delay shows that they don't take their own claims of irreparable harm seriously. Ohio's law has been in effect all that time—including during a primary election—but Plaintiffs can't muster a single fact from the past year supporting their speculation that the law irreparably injures voters.

These equities would be a clear-cut reason to deny Plaintiffs' motion in an ordinary case. They take special significance when a motion seeks to enjoin the State's election laws. Just three days ago, the Supreme Court reminded "lower federal courts" that they "should not 'alter the election rules on the eve of an election.'" *Allen v. Milligan*, No. 25A1314, slip op. at 3-4 (June 2, 2026) (per curiam) (quoting *RNC v. DNC*, 589 U.S. 423, 424 (2020)). It stayed the preliminary injunction of a district court that failed to heed that "repeated[]" admonition. *Id.* at 3. Voter registration is ongoing. Ohio just completed its primary election under the very rules Plaintiffs challenge. The Court should decline Plaintiffs' late invitation to "impose changes close to an election." *Id.* at 4. So it should deny their motion.

## INTERESTS OF AMICUS CURIAE

The RNC is a national committee as defined by 52 U.S.C. §30101 that manages the Republican Party's business at the national level. It supports Republican candidates for public office at all levels nationwide, including in Ohio. The RNC coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The RNC's membership consists of the party chair, national committeeman, and committeewoman for each State and territory, including multiple representatives from Ohio who are registered Ohio voters. The RNC has interests in the rules and procedures governing Ohio's elections. These interests are heightened given Ohio's upcoming elections for federal and state office in which over 1.5 million Republicans are registered to vote.

Plaintiffs in this case move to enjoin Ohio's voter-registration practices in advance of the November midterm elections. Those practices help ensure security and confidence in Ohio's elections. And they make it easy for Ohioans to register to vote. The RNC has strong interests in ensuring that those practices remain effective and clear for Ohio voters in the upcoming elections. As the Supreme Court recently explained, "[a]n unfair and inaccurate election plainly affects those who compete for the support of the people." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 78 (2026). The RNC and the

2

candidates it represents have strong interests in rules that ensure the fairness and accuracy of Ohio's elections.

## ARGUMENT

I.   **The *Purcell* principle precludes enjoining state registration laws in the midst of election season.**

The *Purcell* principle is a "bedrock tenet of election law." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring in grant of stay applications) (mem.). It instructs that "[w]hen analyzing the balance of equities" in election cases, federal courts "'should ordinarily not alter the election rules on the eve of an election.'" *Kishore v. Whitmer*, 972 F.3d 745, 751 (6th Cir. 2020) (quoting *RNC*, 589 U.S. at 424). To "overcome" *Purcell*, Plaintiffs must show "at least" that "the underlying merits are entirely clearcut" in their favor, they " would suffer irreparable harm absent the injunction," they have "not unduly delayed," and "the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). Plaintiffs do not meet these stringent requirements.

*Purcell* applies "to registration-changing injunctions" of the sort Plaintiffs challenge here. *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 897 (6th Cir. 2024) (per curiam). That's because "[c]ourt orders affecting elections … can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Indeed, those principles apply with special force to "an injunction suspending the voter identification rules," because "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id.* at 4, 6. So "[t]he concerns that underlie *Purcell*—the risk of voter confusion and the unfairness of unexpected administrative burdens—can apply just as much to last-minute registration changes as to other types of belated voting changes." *Tenn. Conf. of the NAACP*, 105 F.4th at 897.

3

### A. Enjoining ongoing registration rules would disrupt the upcoming election and confuse voters.

Election season is underway. The Supreme Court applied the *Purcell* principle just this week, reminding courts yet again that they "should not impose changes close to an election." *Allen*, slip op. at 4. The three-judge district court had found "it difficult to imagine a case where the facts more clearly counsel" that "*Purcell* does not bar relief." *Singleton v. Allen*, 2026 WL 1469518, at *5 (N.D. Ala. May 26). But the Supreme Court disagreed. The district court violated *Purcell* by enjoining "Alabama's on-going efforts to conduct its imminent 2026 congressional elections under maps that its elected representatives selected." *Allen*, slip op. at 4. In fact, the Supreme Court applied *Purcell* for this election cycle as far back as December 2025 when a district court "improperly inserted itself into an active primary campaign." *Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025). When "a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief," even if that relief would ordinarily be justified. *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). Already, "candidates, election officials, and voters have relied on the rules in place." *Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring in grant of stay) (mem.).

In the last few weeks, district courts across the country have thus concluded that *Purcell* "counsels strongly against the issuance of an injunction" this late in the day. *E.g.*, *Sherman v. Hargett*, 2026 WL 1471870, at *7 (M.D. Tenn. May 26); *Ams. for Citizen Voting Pac v. Wolfe*, 2026 WL 1329715, at *3 (E.D. Wis. May 12); *Colo. Republican Party v. Griswold*, 2026 WL 1145559, at *3 (D. Colo. Apr. 28); *Shafii v. City of Charleston*, 2026 WL 1244855, at *5 (S.D. W. Va. May 6); *Gardner v. Henderson*, 2026 WL 496448, at *7 (D. Utah Feb. 23) (three-judge court); *Coll. Democrats of N.C. v. N.C. State Bd. of Elections*, 2026 WL 327927, at *3 (M.D.N.C. Feb. 8). In the few recent cases where district courts granted relief, circuit courts quickly stayed those orders because they were "a clear violation of *Purcell*." *E.g.*, *Count*

4

*US IN v. Morales*, 172 F.4th 974, 975 (7th Cir. 2026) (per curiam) (staying "preliminary injunction prohibiting the application of a statutory provision impacting voter eligibility"). These cases could not be clearer: election season is here, and *Purcell* applies.

The "Supreme Court has never specified precisely when an injunction's proximity to an election violates the *Purcell* principle." *McClure v. Jefferson Cnty. Comm'n*, 2025 WL 2977740, at *1 (11th Cir. Oct. 16) (cleaned up) (granting motion to stay injunction). But "[h]ow close to an election is too close may depend in part on the nature of the election law at issue, and how easily the State could make the change without undue collateral effects." *Milligan*, 142 S. Ct. at 881 n.1 (Kavanaugh, J., concurring). "Changes that require complex or disruptive implementation must be ordered earlier than changes that are easy to implement," *id.*, and courts defer to the State on those questions, *see Allen*, slip op. at 4 (the district court's view that "court-imposed maps would be more convenient for the State was not a valid justification for that intervention"). *Purcell* itself stayed "an injunction issued about a month before an election." *Tenn. Conf. of the NAACP*, 105 F.4th at 897. The Sixth Circuit has suggested that *Purcell* applies when "the district court enjoined Ohio's law just two months before the 2024 November election." *OPAWL v. Yost*, 118 F.4th 770, 774 (6th Cir. 2024) (staying injunction on other grounds). And the Supreme Court's "other cases have stayed injunctions issued many months before." *Tenn. Conf. of the NAACP*, 105 F.4th at 897. Before the 2024 November election, for example, the Supreme Court partially stayed a "district court's May 2, 2024 judgment" affecting voter registration rules. *RNC v. Mi Familia Vota*, 145 S. Ct. 108, 108 (2024) (mem.). Even when "the November election itself may be months away," courts must be cognizant that "moving or changing a deadline or procedure now will have inevitable, other consequences." *Thompson v. Dewine*, 959 F.3d 804, 813 (6th Cir. 2020) (per curiam).

Plaintiffs ignore *Purcell*. But when an election is close, courts "must address whether the *Purcell* principle applies." *OPAWL*, 118 F.4th at 774. The State's "registration deadline" is the relevant date

"to evaluate the injunction's timeliness" when an "injunction changes registration rules." *Tenn. Conf. of the NAACP*, 105 F.4th at 898. Ohio generally requires voters to register 30 days in advance of the election in which they wish to participate. Ohio Rev. Code §3503.19(B)(2)(d). The registration deadline for the upcoming midterm elections is October 5, 2026.[1] *See* Ohio Sec'y of State, *2026 Voting Schedule*, perma.cc/RZ48-NZBW. That deadline is approximately "four months" away—squarely in the *Purcell* window for injunctions affecting voter registration. *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022) (per curiam). Indeed, the *Purcell* trigger is more obvious because the requested injunction "implicates voter registration—which is currently underway." *Id.* By the time briefing is complete and the Court is poised to decide the motion, an order enjoining Ohio's rules would risk "confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5. Each day the "election draws closer, that risk will increase." *Id.* at 5.

The risk of confusion is even greater following the primary election, which operated under the very rules that Plaintiffs only now seek to enjoin. Ohio completed its primary election on May 5, 2026. *See 2026 Voting Schedule*, *supra*. Registration for that election closed on April 6. *Id.* Plaintiffs' statement that "[e]lection season is approaching" is thus belied by the fact that they filed their motion just one week before the May 5 primary. PI Mot. at 1 (Doc. 29-1). Election season was "approaching" when Plaintiffs filed their complaint nearly a year ago. But Ohio has been "in the thick of election season" for months now. *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 28 (2020) (Roberts, C.J., concurring in denial of application to vacate stay) (mem.). This case does not concern rules that *will be* applied on or close to election day, such as "the State's deadline for receipt of absentee ballots." *Id.* at 30 (Kavanaugh, J., concurring in denial of application to vacate stay). Even then, Plaintiffs would face

---

[1] Ohio could potentially hold special elections on August 4, 2026. *See 2026 Voting Schedule*, *supra*. The registration deadline for those special elections is July 6. *Id.* But as of yet, no offices or ballot questions have been scheduled for that election.

an uphill battle. *See id.* Rather, Plaintiffs seek to enjoin rules that are currently in place; that have been in place since June 30, 2025; and that voters registered under for the just-concluded primary election. Forcing the State and voters to follow new rules for the general election than applied in the primary election is exactly the sort of "conflicting guidance" that "could create an 'incentive' for voters to 'remain away from the polls.'" *See Tenn. Conf. of the NAACP*, 105 F.4th at 900 (quoting *Purcell*, 549 U.S. at 5). That's why the Eleventh Circuit, for example, stayed an injunction issued "four months" before "the next statewide election" that "implicate[ed] voter registration—which [was] currently underway." *League of Women Voters of Fla.*, 32 F.4th at 1371.

## B.     Plaintiffs unduly delayed.

Even if the injunction wouldn't impose "significant cost, confusion, or hardship" on voters and election officials, Plaintiffs' ten-month delay in seeking relief is inexcusable. *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (per curiam). That Plaintiffs don't even try to provide a "reasonable explanation" for their delay is reason enough to deny their motion. *Tenn. Conf. of the NAACP*, 105 F.4th at 898. But in all events, Sixth Circuit precedent forecloses any afterthought excuse.

The principle that "courts will generally decline to grant an injunction to alter a State's established election procedures" is "especially true when a plaintiff has unreasonably delayed bringing his claim." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016). The law Plaintiffs seek to enjoin "went into effect on June 30, 2025." Compl. ¶60 (Doc. 1). Plaintiffs filed suit about two months later, on August 22. They did not move for a preliminary injunction, even though HB 54 was in effect and their complaint noted the possibility of "preliminary … injunctive relief." *Id.* ¶19. Months passed, and election season began. Registration for Ohio's primary election closed on April 6. *See 2026 Voting Schedule, supra.* Overseas voting began on March 20, and absentee voting by mail began on April 7. These

7

deadlines came and went, with voters registering and voting under HB 54. Only in late April did the Plaintiffs finally move for preliminary injunctive relief. The Sixth Circuit has held that *Purcell* foreclosed relief when plaintiffs "waited more than three months" to request a preliminary injunction. *Kishore*, 972 F.3d at 751. Plaintiffs' ten-month delay is unjustifiable.

### C. Plaintiffs have not shown irreparable harm.

Plaintiffs' delay further undercuts their sparse allegations that they "would suffer irreparable harm absent the injunction." *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). Nothing prevented Plaintiffs from seeking relief before the primary election. Indeed, nothing prevented them from seeking relief in July 2025, immediately after HB 54 went into effect. The NVRA's 90-day notice requirement is no excuse. *See* 52 U.S.C. §20510(b). Plaintiffs notified Secretary LaRose of their forthcoming suit on May 23, despite knowing that HB 54 "was signed by Governor Mike DeWine on March 31, 2025." Compl., Ex. A at 1. Had they acted with the urgency they only now insist this case requires, they could have filed their lawsuit as early as June 29, 2025. Instead, they waited. And waited. And waited some more. After ten months of the law being in effect—and after an intervening election—Plaintiffs can't name a single eligible voter who was unable to register because of HB 54. That Plaintiffs "are deeply concerned" is not irreparable harm. PI Mot., Ex. 1 ¶8 (Doc. 29-2).

If Plaintiffs had members truly suffering irreparable harm, they would not have waited ten months before seeking relief. "'An unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm,'" because it "'suggests that there is, in fact, no irreparable injury.'" *Kerwin ex rel. NLRB v. Trinity Health Grand Haven Hosp.*, 174 F.4th 942, 958 (6th Cir. 2026) (citations omitted). Indeed, Plaintiffs' irreparable-harm arguments are still forward-looking, despite having ten months of enforcement they could cite. *See* PI Mot. 11-15. That they still speculate about what "will" happen if the law continues to be enforced is just an admission that what *has happened* over the last ten months defeats their allegations of irreparable harm.

\*       \*       \*

"A State indisputably has a compelling interest in preserving the integrity of its election pro-cess." *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). Even "where the *Purcell* prin-ciple *alone*" does not warrant denying relief, the sum of its parts can counsel "strongly against the issuance of an injunction." *Sherman*, 2026 WL 1471870, at \*7. Here, ongoing voter registration and Plaintiffs' inexplicable ten-month delay warrant denying the motion. Indeed, those equities would warrant denying the motion even under the traditional preliminary-injunction test that Plaintiffs ac-cept. *See Churchill Downs Tech. Initiatives v. Mich. Gaming Control Bd.*, 162 F.4th 631, 637 (6th Cir. 2025). The election's proximity raises Plaintiffs' burden on each of those factors. *See Milligan*, 142 S. Ct. at 881 n.1 (Kavanaugh, J., concurring). And they don't come close to meeting any one of them. The Court should thus deny the motion.

## II.  The merits are not "entirely clearcut" in Plaintiffs' favor.

Even if Plaintiffs could satisfy *Purcell* or the standard preliminary-injunction equities, they can-not show that "the underlying merits are entirely clearcut" in their favor. *Id.* The State's brief explains how Plaintiffs misunderstand Ohio's BMV procedures. This brief explains how Plaintiffs misunder-stand the NVRA. That statute does not require States to give voter-registration applications to known noncitizens. Text, precedent, and common sense support that conclusion.

The NVRA requires each "State motor vehicle authority" to facilitate voter registration in their "vehicle driver's license application" process. 52 U.S.C. §20504(a)(1). As part of that process, States must "include a voter registration application form" for federal elections "as part of an application for a State motor vehicle driver's license." *Id.* §20504(c)(1). The NVRA sets detailed requirements for the "voter registration application portion" of that driver's license application. *Id.* §20504(c)(2). First is what the "voter registration application portion" *must* require: statements about "eligibility," an "at-testation" from the applicant, the "signature of the applicant," penalties for providing false

9

information, and assurances of confidentiality. *Id.* §20504(c)(2)(C), (D). The NVRA also limits what the "voter registration application portion" *can* require: it "may not require any information that duplicates information required in the driver's license portion of the form (other than a second signature or [eligibility attestation])." *Id.* §20504(c)(2)(A). And it "may require only the minimum amount of information necessary to … prevent duplicate voter registrations; and enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." *Id.* §20504(c)(2)(B).

Ohio complies with these procedures. Ohio's "motor vehicle authority" (the BMV) facilitates voter registration. 52 U.S.C. §20504(a)(1). As the State has explained, Ohioans necessarily present proof of citizenship (or non-citizenship) when they apply for BMV credentials. State Opp. at 1-2 (Doc. 35). When an applicant "presents proof of United States citizenship" (or had already "previously presented" that proof), the "registrar [of motor vehicles] or the deputy registrar shall offer the applicant the opportunity to register to vote." Ohio Rev. Code §3503.11(A)(1). The "voter registration application portion" of that process doesn't "duplicate[] information" from the driver's license portion. 52 U.S.C. §20504(c)(2)(A). It doesn't demand proof of citizenship or anything beyond the "minimum" information required. *Id.* §20504(c)(2)(B). And Plaintiffs don't allege that it's missing any of the required information. *Id.* §20504(c)(2)(C)-(D). So Ohio complies with the NVRA.

Plaintiffs begin by misrepresenting what the NVRA requires. They claim that "when an applicant seeks to register to vote in conjunction with applying for a driver's license, the state 'may require only the minimum amount of information necessary' to assess an applicant's eligibility to vote." PI Mot. at 6 (quoting 52 U.S.C. §20504(c)(2)(B)). But the NVRA does not limit what "the state 'may require'" as part of the "driver's license" application. *Contra id.* Instead, the NVRA details only what the "voter registration application portion" of that process can require. 52 U.S.C. §20504(c)(2). Congress said nothing about what information States can require as part of the "driver's license

application" portion. And it said nothing about the sequencing of that process, including when proof of citizenship is required.

Context confirms this plain reading. The voter-registration application is "part of an application" for a driver's license. *Id.* §20504(c)(1). And the NVRA makes clear that the driver's license application is a *process*. The applicant can, for example, "decline[] to register to vote" if they so choose. *Id.* §20504(c)(2)(D)(ii). Plaintiffs point to nothing in §20504—or anywhere else in the NVRA—that requires the BMV to provide the "voter registration application portion" to everyone who comes through their door. *Id.* §20504(c)(2). There's no dispute, for example, that a 16-year-old who just received her first driver's license should not be offered a voter-registration application.

Supreme Court precedent likewise confirms this reading. Another NVRA provision requires States to "accept and use" a federal mail-in voter-registration form. 52 U.S.C. §20505(a)(1). That form currently requires a simple attestation of citizenship rather than documentary proof. *See Voter Registration Application*, U.S. Election Assistance Comm., perma.cc/G48J-MH8Q. When Arizona tried to require proof of citizenship to accompany the federal mail-in form, the Supreme Court held that it couldn't. *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 20 (2013). When Congress required States to "accept and use" the federal form, the Court said that Congress meant for States to "accept and use" the form "as sufficient" to register the voter. *Id.* at 10. So the NVRA preempted Arizona's attempt to require "a Federal Form applicant to submit information beyond that required by the form itself." *Id.* at 20. But the motor-voter section that Plaintiffs invoke does not contain the "accept and use" language that appears in the mail-registration section. *See* 52 U.S.C. §20504. Instead, §20504 details simply what the "voter registration application portion" can require. *Id.* §20504(c)(2). Moreover, Ohio doesn't even require documentary proof of citizenship to *accompany* the voter-registration application, as Arizona did. It processes all BMV voter-registration applications without proof of

11

citizenship, so it can't be said to require anything beyond the "minimum" required information. *Id.* §20504(c)(2)(B).

*Fish v. Kobach* does not defeat this plain reading. 840 F.3d 710 (10th Cir. 2016). The Kansas law at issue in *Fish* provided that "an applicant shall not be registered until the applicant has provided satisfactory evidence of United States citizenship." Kan. Stat. §25–2309(*l*). Ohio has no such requirement. The Tenth Circuit found a problem with Kansas requiring proof of citizenship at the point of registration. *Fish*, 840 F.3d at 717. That out-of-circuit opinion says nothing about using proof of citizenship *already provided* as part of the "vehicle driver's license application" process. 52 U.S.C. §20504(a)(1).

Any doubts should be construed in the State's favor. To start, each of Congress's four stated "purposes" in enacting the NVRA counsel against Plaintiffs' reading. 52 U.S.C. §20501(b). Congress enacted the NVRA to "increase the number of *eligible citizens* who register to vote," "enhance[] the participation of *eligible citizens*" in elections, "protect the integrity of the electoral process," and ensure "accurate and current voter registration rolls." *Id.* §20501(b)(1)-(4) (emphases added). Each purpose is served by a rule that keeps *known noncitizens* off of Ohio's voter rolls. *See Bell v. Marinko*, 367 F.3d 588, 592 (6th Cir. 2004) (rejecting interpretation of NVRA that would permit noncitizens to remain on the voter rolls). And each purpose would be undermined by Plaintiffs' requested injunction.

Moreover, Plaintiffs' reading leads to the absurd result of requiring BMV workers to provide voter-registration applications to known noncitizens. Plaintiffs recognize that "[b]oth Ohio law and federal law make it a crime for noncitizens to vote." PI Mot. at 3. They're correct on that score. *See* 18 U.S.C. §611. Federal law also imposes criminal penalties on anyone who "makes any false statement or claim that he is a citizen of the United States in order to register to vote." *Id.* §1015(f). Under Plaintiffs' reading of the NVRA, registrars must provide voter registration applications even to those who have provided affirmative proof that they are not a U.S. citizen. *See* Ohio Admin. Code § 4501:1-

12

1-21(G)(6). Any doubt that Plaintiffs' reading is incorrect should be construed against a result that facilitates the commission of a federal crime.

## CONCLUSION

The Court should deny the preliminary injunction motion.

Dated: June 5, 2026

Respectfully submitted,

*/s/ Thomas R. McCarthy*

Thomas R. McCarthy*
Gilbert C. Dickey*
Conor D. Woodfin*
William Bock IV*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard**,** Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com
wbock@consovoymccarthy.com

*Practicing *pro hac vice*

*Counsel for the Republican National Committee*

13

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that on June 5, 2026, the foregoing was electronically filed with the

Clerk of Court by using the CM/ECF system, which will also send a notice of electronic filing to all

counsel of record.

*/s/ Thomas R. McCarthy*