**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| RED WINE & BLUE, and OHIO ALLIANCE FOR RETIRED AMERICANS, <br><br> Plaintiffs, <br><br> v. <br><br> FRANK LAROSE, in his official capacity as Ohio Secretary of State, CHARLES L. NORMAN, in his official capacity as Ohio's Registrar of Motor Vehicles, <br><br> Defendants. | Case No.: 1:25-cv-01760 <br><br> Judge Solomon Oliver, Jr. <br><br> Mag. Judge James E. Grimes, Jr. <br><br> **ORAL ARGUMENT SCHEDULED** |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF EXHIBITS .............................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.  Plaintiffs are likely to succeed on the merits. .................................................... 2

        A.      HB 54 imposes a DPOC requirement. .................................................... 3

        B.      HB 54's DPOC requirement is preempted by the NVRA ........................ 5

        C.      The BMV must offer driver's license applicants the opportunity to register to vote in conjunction with a driver's license transaction, even if they fail to bring all required documents. ............................................. 7

        D.      The Court should reject Defendants' standing arguments. .................................. 10

    II.  Plaintiffs will suffer irreparable harm absent an injunction. ............................................. 12

    III.  The other preliminary injunction factors strongly favor Plaintiffs. ............................... 13

    IV.  *Purcell* does not bar injunctive relief. ........................................................................... 14

CONCLUSION .................................................................................................................... 15

i

## TABLE OF EXHIBITS[1]

| Exhibit Number | Exhibit Title |
|----------------|---------------|
| 20 | Declaration of Peggy Dutcher |
| 21 | Declaration of Gianina Fazio |

---

[1] Exhibits attached to Plaintiffs' opening memorandum are identified in that filing. *See* ECF No. 29-1, at PageID 356-57.

**INTRODUCTION**

Defendants' opposition rests on the premise that HB 54 somehow does not operate as a documentary-proof-of-citizenship ("DPOC") requirement—that it "does not . . . require documentary proof of citizenship to register to vote at the BMV." ECF No. 35 ("Defs.' Opp'n") at PageID 1115. If that were so, Defendants should have no objection to the Court entering an order making clear that HB 54 does *not* require DPOC to vote at the BMV and may not be enforced in that manner. But the plain text of the statute is at odds with Defendants' litigation position. And it is telling that Defendants felt that they could defend HB 54 only by rewriting it.

In reality, HB 54 *does* purport to require DPOC, and Plaintiffs are likely to succeed on their claim that it violates the NVRA. Indeed, despite their cursory attempt to argue that HB 54 does not do what it plainly says it does, Defendants *admit* that the BMV will *not* offer voter registration to a driver's license applicant who fails to bring all documents required for a driver's license—which include DPOC.[2] The record further reflects that individuals have been prevented from registering to vote at the BMV precisely because they did not produce required documents. That practice violates the NVRA, which obligates the BMV to offer voter registration whenever an individual (other than a confirmed noncitizen) submits a driver's license application, including one that is not accompanied by all supporting documents. For such applicants, HB 54 would unlawfully require them to produce DPOC to register to vote, in violation of the NVRA. Thus, in light of HB 54's plain text, as well as the BMV's deficient administration of its voter registration duties,

---

[2] Defendants concede and represent to the Court that two other categories of voters identified in Plaintiffs' motion will be permitted to register at the BMV without presenting DPOC: (1) *renewal* applicants who have consistently updated their license since before Ohio first started requiring proof of citizenship for licenses, and (2) individuals who had to invoke an Ohio regulation allowing them to submit "alternative documents" to prove citizenship. *See* Defs.' Opp'n at PageID 1123-24 n.3. Given Defendants' express representation that such individuals are and will be permitted to register at the BMV without submitting DPOC, Plaintiffs do not address these scenarios further.

1

Plaintiffs are likely to succeed on the merits. They also will suffer irreparable harm in the absence of an injunction, and the balance of equities and the public interest strongly tip in their favor. They are accordingly entitled to a preliminary injunction.

Notably, Defendants represent that they *agree* the State *can* register people to vote without DPOC, *notwithstanding the plain text of HB 54*. The Court accordingly should enter an injunction that ensures voters are not required to produce DPOC before registering to vote at the BMV. It should also make clear that the BMV is required under the NVRA to offer registration to all individuals (except confirmed noncitizens) who submit a driver's license application, even if they do not bring to the BMV all documents required for a driver's license. That will ensure that no Ohioans are unlawfully denied registration at the BMV and will ameliorate the risk that they will irreparably lose their chance to vote in the quickly approaching general midterm election.

## ARGUMENT

### I.     Plaintiffs are likely to succeed on the merits.

HB 54 is presumptively preempted by the NVRA and Ohio cannot overcome that presumption. Nothing in Defendants' opposition provides reason to find otherwise. They first argue that HB 54 does not impose a DPOC requirement, but the plain language of the statute says the opposite. They next contend that, "*even if*" HB 54 imposes a DPOC requirement, it would survive the NVRA's prohibition on a state requiring more than the "minimum . . . information necessary" to determine an applicant's citizenship. *See* 52 U.S.C. § 20504(c). But here too, their argument is conclusory and unsupported. For example, they argue that this Court should not find the reasoning in *Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016), persuasive, but they never provide a cogent reason to disagree with that court's detailed analysis of the NVRA, which was carefully and thoroughly supported. Defendants also fundamentally misread *Arizona v. Inter Tribal Council of Ariz., Inc.* ("*ITCA*"), 570 U.S. 1 (2013), which—far from suggesting that the NVRA does not

restrict a state from imposing a DPOC requirement in voter registration—*confirmed* the NVRA *preempted* a state law that would have had that effect. As for Defendants' attack on Plaintiffs' standing, it quickly falls apart. The motion for a preliminary injunction should be granted.

### A. HB 54 imposes a DPOC requirement.

Defendants first attempt to defend HB 54 by arguing that it does not prohibit BMV officials from offering individuals the opportunity to register to vote as part of a driver's license transaction, but this imaginative interpretation cannot be squared with the law's text. By its terms, HB 54 authorizes BMV workers to extend an opportunity to register to vote *only* to Ohioans who "present," or have "previously presented," "proof of United States citizenship." Defendants' dogmatic insistence that HB 54 does not mean what it says begs the question—what does HB 54 accomplish if not a DPOC requirement? And why are Defendants so eager to rewrite the law? Common sense provides an answer—if HB 54 means what it says, it cannot survive.

To cobble together a reading of HB 54 that is *not* a DPOC requirement, Defendants argue that HB 54 *obligates* BMV officials to register someone who *presents* DPOC but is *silent* as to individuals who *fail* to bring DPOC, and therefore does not *prohibit* BMV officials from registering those individuals during a driver's license transaction. *See* Defs.' Opp'n at PageID 1122-24. This is a bizarre argument, requiring a host of contortions to accept. But when interpreting a statute, courts "rely on . . . 'traditional tools of statutory construction' to determine a statute's 'single, best meaning,'" *Ohio Telecom Ass'n v. FCC*, 150 F.4th 694, 707 (6th Cir. 2025) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024)), and there is no way to understand HB 54's "single, best meaning" as anything other than imposing a DPOC requirement.

Prior to HB 54's enactment, the provision of Ohio law regulating voter registration at the BMV read, in relevant part, as follows:

3

> When any person applies for a driver's license . . . the registrar of motor vehicles . . . shall offer the applicant the opportunity to register to vote or to update the applicant's voter registration by electronic means in conjunction with the person's [driver's license] transaction . . . .

Ohio Rev. Code 3503.11(A)(1) (May 2025). HB 54 then amended the statute's language by adding the italicized words, as follows:

> When any person applies for a driver's license . . . *and the person presents proof of United States citizenship to* the registrar of motor vehicles . . . *or has previously presented proof of United States citizenship to the registrar* . . . , *the registrar* . . . shall offer the applicant the opportunity to register to vote or to update the applicant's voter registration by electronic means in conjunction with the person's [driver's license] transaction . . . .

Ohio Rev. Code 3503.11(A)(1) (current version).

Thus, before HB 54, the previous version of Section 3503.11(A)(1) *already* required BMV officials to offer individuals who present DPOC the opportunity to register to vote, because it required officials to afford such opportunity to "any person" applying for a driver's license. Accordingly, under Defendants' reading, the new terms added to the statute are superfluous. But "[c]ourts are required to give effect to [the legislature's] express inclusions and exclusions, not disregard them." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 126 (2018). The legislature presumably had a reason for adding new language to the statute that imposed an explicit condition on when BMV employees were to offer voter registration, and a court must give those new words effect. *See Gen. Med., P.C. v. Azar*, 963 F.3d 516, 521 (6th Cir. 2020) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" (quotation omitted)).

But perhaps Defendants mean that HB 54's amendment changed the statute's scope to afford BMV officials more discretion; that it means BMV officials *must* offer the opportunity to register to vote to individuals who present DPOC and can *choose* to offer that opportunity to individuals who did not present DPOC. In that case, if the amended version simply no longer

4

applies to individuals who failed to present DPOC, Defendants' position is that the BMV would be allowed to *decline* to offer voter registration to individuals who failed to provide DPOC. But that would mean that any BMV employee would be statutorily authorized to deny voter registration to someone who fails to present DPOC. Thus, under any conceivable interpretation of HB 54, it imposes a DPOC requirement—either a mandatory one, or one that BMV employees may impose at their whim. Under either construction, HB 54 cannot survive its encounter with the NVRA.

### B.  HB 54's DPOC requirement is preempted by the NVRA.

Defendants seem to recognize that their imaginative interpretation of HB 54 is unlikely to carry the day, because they then go on to spill considerable ink arguing that "even if" it does impose a DPOC requirement, Defs.' Opp'n at PageID 1125 (cleaned up), HB 54 is not preempted by the NVRA. But none of Defendants' arguments undercut Plaintiffs' straightforward showing of preemption, following the framework set out in *Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016).

Defendants begin by noting that *Fish* is out-of-circuit and thus not controlling. True enough, but Defendants offer no good reason to suggest that the Tenth Circuit's thoughtful analysis is *wrong*. Likewise, Defendants baldly assert that *Fish* is "unpersuasive," Defs.' Opp'n at PageID 1125, but they do not offer any statutory analysis to explain why or to bring the Court's analysis into doubt, *see id.* at PageID 1125-27. As Plaintiffs explained, the Tenth Circuit's holding that a law is presumptively preempted by the NVRA if it requires prospective voters to submit more than a sworn attestation of citizenship was based on the Court's detailed textual analysis of that statute, which drew from various dictionaries and applied traditional canons of statutory construction. *See*

5

ECF No. 29-1 at PageID 368-69. The fact that Defendants can offer no analysis of the statutory text in support of a contrary rule only demonstrates the correctness of the Tenth Circuit's holding.[3]

Defendants next argue that adopting the *Fish* framework would raise constitutional doubts, claiming it would infringe Ohio's ability to confirm that a voter is eligible to vote, citing the Supreme Court's decision in *ITCA*. But that case *confirmed* the NVRA preempted a state law that would have required officials to reject a voter registration application that was "unaccompanied by documentary evidence of citizenship." 570 U.S. at 8, 20. To be sure, the Court recognized that constitutional doubts would be raised *if* application of the NVRA would "preclude[] a State from obtaining the information *necessary* to enforce its voter qualifications." *Id.* at 17 (emphasis added). But it held that Arizona had not made that showing in *ITCA*, and there can be no argument from Defendants here that a DPOC requirement *is* necessary, since all *agree* that other forms of voter registration in Ohio do not require DPOC, and Defendants advance the position that even HB 54 should not be understood to require DPOC to register to vote. *See* Defs.' Opp'n at PageID 1123. Defendants also incorrectly suggest that enjoining HB 54 would require them to register individuals to vote who present documents to the BMV proving they are *not* citizens. *Id.* at PageID 1126. Not so. Plaintiffs agree the BMV can decline to offer voter registration to individuals who present documents showing, or otherwise confirm, that they are **presently** noncitizens.[4] *See ITCA*, 570 U.S. at 15 & n.7.

---

[3] Contrary to Defendants' assertion, Defs.' Opp'n at PageID 1126, *Fish* does not require a state to satisfy "strict scrutiny." The presumption the Tenth Circuit recognized flowed directly from the NVRA's text, and *Fish* does not require a state to demonstrate its law is narrowly tailored and the "least restrictive means" to accomplish some compelling interest, as under strict scrutiny. *See Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461, 471 (2025). Defendants also claim that *Fish* is factually distinguishable because Kansas imposed a "true DPOC requirement." Defs.' Opp'n at PageID 1125. But as explained above, HB 54 also imposes a DPOC requirement.

[4] Ohio must be cautious in that regard. In particular, BMV records might show that someone was *previously* a noncitizen, but that person may since have naturalized.

6

In short, Defendants offer no convincing reason why the Court should decline to adopt the *Fish* framework or find that HB 54 is not preempted by the NVRA. Because by its plain terms HB 54 requires more than a sworn attestation to prove citizenship, its DPOC requirement is preempted unless Ohio can demonstrate that substantial numbers of noncitizens have nonetheless registered to vote. *See Fish*, 840 F.3d at 717. Defendants do not even attempt to make that showing (nor could they), and Plaintiffs are therefore likely to succeed on the merits.

**C. The BMV must offer driver's license applicants the opportunity to register to vote in conjunction with a driver's license transaction, even if they fail to bring all required documents.**

Defendants separately argue that HB 54 does not conflict with the NVRA because the BMV stocks paper voter registration forms anyone might grab and use to register—even if BMV officials will not actually register the voter during the driver's license transaction. Defs.' Opp'n at PageID 1123. Per their view, stockpiling these forms cures any NVRA problem. *See id.* at PageID 1117; ECF No. 35-1 ("King Decl."), ¶¶ 15, 32. That is not the case. This lawsuit concerns the NVRA's motor-voter provisions, found in 52 U.S.C. § 20504, the key requirement of which is that a state must treat a *driver's license* application as an application for *voter registration*. *See* 52 U.S.C. § 20504(a)(1) ("Each State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority . . . shall serve as an application for voter registration[.]"). That legal requirement is not satisfied merely by stocking *separate* paper voter registration application forms in BMV offices, and Ohio's deficient procedures will result in the unlawful denial of voter registration opportunities.

The paper voter registration forms kept at the BMV are *not* driver's license applications, they are simply copies of Ohio's generic voter registration form. *See* King Decl. ¶ 25; Defs.' Ex. A-6 at PageID 1422-24. The incongruence between the BMV's procedures under HB 54 and the NVRA is enough to end the inquiry. The distinction also matters. Congress's animating goal with

the NVRA was to "ensure that . . . simple means are available to register for federal elections," and, critically, that "those means are *actively presented* to voters by the states." *Fish*, 840 F.3d at 721 (emphasis added). The NVRA's motor-voter provisions advance that purpose by requiring that a "voter registration application form" must be made "part of" every driver's license application, 52 U.S.C. § 20504(c)(1), and that whenever a driver's license application is submitted to a BMV office, the application "shall serve as an application for voter registration," *id.* § 20504(a)(1). Those provisions collectively operate to ensure that whenever a driver submits an application to obtain or update a driver's license, they will necessarily be confronted with an opportunity to register to vote. *See Fish*, 840 F.3d at 722 ("The motor voter provision assures that all persons who drive will sooner or later be presented with an opportunity to register to vote.").

In contrast, the generic, paper voter application forms stocked at BMV offices do not accomplish the NVRA's purpose of ensuring state officials proactively present the opportunity to register to vote to potential voters. There is no obligation that BMV employees affirmatively ask customers if they would like to fill out such a form; rather, the burden is on the BMV customer to ask for a voter registration application, and Defendants offer no reason to believe that BMV customers would normally do so. *See, e.g.*, Defs.' Opp'n at PageID 1128 (anyone "who asks" to register at the BMV may do so using a generic registration form); King Decl. ¶ 25 (noting that BMV employees "may" offer the generic registration forms to BMV customers). Thus, by declining to offer voter registration "as part of an application for a State motor vehicle drivers' license," the BMV ignores Congress's directive to ensure that drivers are affirmatively presented with the opportunity to register to vote. *See* 52 U.S.C. § 20504(a), (c). The result of the BMV's procedures is that individuals who fail to bring to the BMV every document required for a driver's license will not be offered the opportunity to register to vote in conjunction with their application

8

for a driver's license. That violates the NVRA's motor-voter provisions, which requires a state to offer citizens the opportunity to register to vote as soon as they "submit[]" an "application" for a driver's license. *See id.* § 20504(a)(1) ("Each State motor vehicle driver's license *application* (including any renewal application) *submitted* to the appropriate State motor vehicle authority . . . shall serve as an application for voter registration[.]" (emphasis added)).

Although Defendants previously conceded this point, *see* ECF No. 26 at PageID 274 ("Plaintiffs correctly note that the NVRA's requirements are triggered at the time of an individual's application."), they now argue that "the NVRA does not even apply" to individuals who fail to bring all documents required for a driver's license, Defs.' Opp'n at PageID 1123-24 n.3. And Defendants assert that they may prohibit individuals who fail to bring every required document to the BMV from registering to vote as part of a driver's license application. *Id.* at PageID 1123-24 n.3. That argument misconstrues both the facts and the law. Again, the NVRA's obligations trigger when a driver "submit[s]" a "driver's license application" "to the appropriate State motor vehicle authority." 52 U.S.C. § 20504(a)(1). That is precisely what happens under the BMV's procedures, even when a driver fails to arrive with all required documents. Specifically, a driver fills out a BMV-provided application form, *see* Defs.' Ex. A-4 at PageID 1216-18; King Decl. ¶¶ 11-12 (characterizing it as an "application"), and provides it to a BMV employee for consideration (*i.e.*, they "submit" it) at the same time that the BMV employee considers the driver's supporting documents, *see* King Decl. ¶ 12. At that point, the NVRA's voter registration obligations apply.[5]

---

[5] Even if the application does not result in the applicant obtaining a driver's license because they failed to additionally show all required supporting documents, it is still an "application." That is the nature of an "application"—it is a request that is contingent on a later decision. *See, e.g.*, *Application*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/ dictionary/application (defining "application" to include "request," "petition," or "a form used in making a request"); *Application*, Dictionary.com, https://www.dictionary.com/ browse/application

Consequently, whenever a person submits the driver's license application to the BMV, the BMV *must* ask the applicant if they wish to register to vote and, if yes, to process their driver's license application as a voter registration application, even if they do not bring all documents necessary to obtain a driver's license. At that point, however, HB 54's DPOC requirement stands as an obstacle to their voter registration, since that statute would require the individual to produce DPOC before being offered the opportunity to register to vote in conjunction with a driver's license application. Ohio Rev. Code 3503.11(A)(1); *supra* 3-5. For the reasons explained above, the Court should enjoin HB 54's DPOC requirement and remove that obstacle to voter registration.

### D. The Court should reject Defendants' standing arguments.

Defendants repeat the same, incorrect arguments regarding standing that Plaintiffs have already addressed in their opposition to the motion to dismiss. *See generally* ECF No. 25. For example, Defendants again mischaracterize the harm to Plaintiffs as mere "moral objections to producing proof of citizenship." Defs.' Opp'n at PageID 1120. That is wrong. HB 54 injures Plaintiffs' members because it forces them to *take an action* that they do not wish to do: *i.e.*, to locate and produce citizenship documents in order to register to vote. As Plaintiffs explained, numerous courts have held that a legal requirement to produce a document to vote or register to vote constitutes an Article III injury sufficient to establish standing—even where the voter can

---

(defining "application" as "the act of requesting," "a formal or written request," or "a form to be filled out by an applicant, as for a job or a driver's license"). The NVRA does not define "application," and "[w]hen a statutory term is undefined, . . . courts give it the 'ordinary meaning.'" *United States v. Small*, 988 F.3d 241, 254 (6th Cir. 2021) (quoting *United States v. Santos*, 553 U.S. 507, 511 (2008)). "To ascertain ordinary meaning, courts often turn to dictionary definitions for guidance." *Id.*; *see ITCA*, 570 U.S. at 9-10 (using dictionaries to interpret the NVRA's terms). Any other interpretation—such as an interpretation that the NVRA applied only to *successful* driver's license applications—would be contrary to the NVRA's plain text. *See Action NC v. Strach*, 216 F. Supp. 3d 597, 634 (M.D.N.C. 2016) (rejecting a reading of the NVRA that would limit its reach to "in-person" applications, since the statutory language did not allow for that reading); *Bates v. United States*, 522 U.S. 23, 29 (1997) ("[Courts] ordinarily resist reading words or elements into a statute that do not appear on its face.").

10

meet the requirement. *See, e.g.*, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351-52 (11th Cir. 2009); *Fish v. Schwab*, 957 F.3d 1105, 1119-20 (10th Cir. 2020); *see also* ECF No. 25 at PageID 249-50 (collecting other authority). A federal court reaffirmed this principle just two weeks ago. *See N.H. Youth Movement v. Scanlan*, No. 24-cv-291, --- F. Supp. 3d ---, 2026 WL 1500857, at *27 (D.N.H. May 28, 2026) ("The requirement that the Muirheads must produce documentary evidence to register to vote itself constitutes an injury sufficient to confer standing.").

Plaintiffs straightforwardly have standing under that established framework. Red Wine & Blue identified two specific members who intended to obtain a driver's license and register to vote at the BMV and thus would be required to produce DPOC to register to vote in conjunction with their driver's license transactions. Compl. ¶¶ 29-30; *see* Pls.' Exs. 20-21. Further, both of those individuals were turned away during their first trip to the BMV and were not offered the opportunity to register to vote. *See* Pls.' Ex. 20, ¶¶ 14-15 (Ms. Dutcher denied opportunity to apply for driver's license or to register to vote because she did not bring a social security card matching her current name or sufficient proof of residence, even though she inquired about voter registration); Ex. 21, ¶ 7 (Ms. Fazio (formerly Borgerson) turned away for failure to bring records). As explained above, the NVRA obliges the BMV to offer voter registration in those circumstances. *Supra* 7-10. Yet because both Ms. Dutcher and Ms. Fazio lacked the documents necessary to obtain a driver's license, HB 54—and only HB 54—would have required them to produce DPOC to register to vote. These injuries and similar harms in the future would be fully remedied by an order enjoining HB 54's DPOC requirement, and Plaintiffs accordingly have established, at the

11

preliminary injunction stage, a substantial likelihood of standing.[6] *See generally* ECF No. 25 (defending Plaintiffs' standing on this and other grounds).

## II.     Plaintiffs will suffer irreparable harm absent an injunction.

"When constitutional rights are threatened or impaired, irreparable injury is presumed," and "[a] restriction on the fundamental right to vote therefore constitutes irreparable injury." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). Defendants do not dispute this presumption. Instead, they contend that HB 54 causes no harm by rehashing their arguments that HB 54 does not impose a DPOC requirement and that BMV customers could "ask" to use one of the generic paper registration forms stocked in BMV offices. Defs.' Opp'n at PageID 1128. Those arguments fail for the reasons explained above.

Defendants are also wrong to suggest that the timing of Plaintiffs' motion warrants a denial of a preliminary injunction. As Plaintiffs have explained, they have moved with dispatch in this litigation. *See* ECF No. 33 at PageID 1097. Once it became clear that relief could not otherwise be obtained in advance of the 2026 midterm elections—the first federal general election held with HB 54 in effect, in which the new law will threaten widespread harm during that likely high-turnout election—Plaintiffs promptly moved for a preliminary injunction. Moreover, alleged delay in seeking relief is only one consideration in the irreparable harm analysis. *See York Risk Servs. Grp. v. Couture*, 787 F. App'x 301, 308-09 (6th Cir. 2019). Plaintiffs have not unreasonably delayed here, but regardless, any such delay could not outweigh the risk that numerous voters

---

[6] Both Ms. Dutcher and Ms. Fazio eventually registered to vote. Pls.' Ex. 20, ¶ 18; Pls.' Ex. 21, ¶ 10. As Plaintiffs have explained, that does not moot their claims. *See* ECF No. 25 at PageID 251 n.3; *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005); *N.H. Youth Movement*, 2026 WL 1500857, at *27 (applying the same principle two weeks ago). To hold otherwise would mean that if individuals like Ms. Dutcher and Ms. Fazio wished to challenge unlawful voter registration requirements in court, they would need to give up their right to register to vote in every election pending final resolution of the litigation, including any appeals, to avoid mooting their claims.

would miss their chance to vote in the forthcoming election unless relief is granted. Nor do Defendants argue it is too late to grant such relief—and it plainly is not.

Under binding, established precedent, Plaintiffs need only show that irreparable harm is "*likely*," *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 885 (6th Cir. 2025), or, as relevant here, that "absent the court's intervention, the challenged provisions are likely to be applied to them while the case proceeds," *Moms for Liberty – Wilson Cnty. v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 514 (6th Cir. 2025). Plaintiffs readily clear that bar. HB 54 is an extant statute that applies to any individual seeking to register to vote at the BMV, and Defendants admit that the BMV will not allow an individual to register to vote as part of a driver's license transaction if they fail to bring all documents required for a driver's license. Plaintiffs' members use the BMV to apply for driver's licenses. Pls.' Ex. 1, ¶¶ 6-7; Pls.' Ex. 2, ¶¶ 5-6. For Red Wine & Blue in particular, its members (who are predominantly women) have been turned away from the BMV for lack of documents, often because of issues related to prior name changes. *See* Pls.' Ex. 1, ¶¶ 9-10. It is far more than "likely" that, during this litigation, Plaintiffs' members will submit a driver's license application at the BMV but fail to bring every document required for a driver's license, and they therefore will not be offered the opportunity to register to vote. That has already happened. Pls.' Ex. 20, ¶¶ 14-15; Pls.' Ex. 21, ¶ 7. An order enjoining HB 54's DPOC requirement and requiring Defendants to treat these Ohioans' driver's license applications as applications for voter registration will prevent that irreparable harm, ensuring that voters do not miss the opportunity to vote in the upcoming midterm election.

## III.     The other preliminary injunction factors strongly favor Plaintiffs.

The balance of equities and the public interest also both plainly favor Plaintiffs because "[i]t is always in the public interest to prevent the violation of a party's constitutional rights," *Poffenbarger v. Kendall*, 588 F. Supp. 3d 770, 797 (S.D. Ohio 2022) (citation omitted), and because

the public interest is advanced by ensuring all eligible Ohioans can vote, *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1012 (6th Cir. 2006). Defendants do not contest those points. Rather, they argue that the Court should deny preliminary relief to avoid altering the "status quo," Defs.' Opp'n at PageID 1129, but the Court need not countenance a "status quo" of a regime that likely violates the NVRA while causing the irreparable harm that would result from many Ohioans losing the opportunity to vote. Further, no state has "a legitimate interest in enforcing . . . unlawful actions," such as those (like HB 54) that conflict with federal law. *Madan B.K. v. Noem*, No. 1:25-cv-419, 2025 WL 1171572, at *8 (W.D. Mich. Apr. 23, 2025). Finally, the Court should reject Defendants' strawman that enjoining HB 54's DPOC requirement would require BMV staff "to affirmatively offer[] voter registration to . . . confirmed noncitizens." Defs.' Opp'n at PageID 1115. That is simply not what is asked for—or what would be required—should the injunction issue.

## IV.     *Purcell* does not bar injunctive relief.

The Republican National Committee ("RNC") alone contends in its amicus brief that the Court should deny the preliminary injunction based on the principles set out in *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). As an initial matter, the fact that *Defendants* did not make this argument precludes the Court from considering it: "[W]hile an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties." *Self-Ins. Inst. of Am., Inc. v. Snyder*, 827 F.3d 549, 560 (6th Cir. 2016) (quoting *Cellnet Commc's, Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998)). Thus, when an amicus "raises issues or makes arguments that exceed those properly raised by the parties, [a court] may not consider such issues." *Id.* (quotation omitted). This rule makes good sense here. The *Purcell* principle is "animat[ed]," at least in part, by "important federalism concerns." *LULAC v. Exec. Off. of the Pres.*, 818 F. Supp. 3d 34, 83 (D.D.C. 2026). It is *Defendants* (not the RNC) who are charged with enforcing Ohio law, and they have not identified any federalism concerns implicating *Purcell*.

14

That Defendants do not make this argument here is unsurprising. The *Purcell* principle is motivated by concerns of avoiding "the risk of voter confusion" and "unexpected administrative burdens" caused by late-breaking changes to election rules. *See Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 897 (6th Cir. 2024) (per curiam). Enjoining HB 54's DPOC requirement poses no risk of voter confusion because the injunction Plaintiffs seek would not require any individual voter to alter their conduct. Nor would it upset election administration. All that would change is that BMV officials would be required to offer the opportunity to register to vote to individuals who submit a driver's license application to the BMV (excepting those who the State knows to be presently ineligible), consistent with the NVRA's longstanding requirements.

Further, Ohio's voter registration deadline is approaching, but is still months away, and counsel for the State previously proposed a briefing schedule ending on June 12, noting that a schedule on that timeframe "leaves plenty of time for a decision before the registration deadline in October." ECF No. 33-1 at PageID 1110. In sum, the parties all apparently agree that *Purcell* provides no justification in this case to withhold relief that federal law requires.

## CONCLUSION

For the foregoing reasons, the Court should enter an injunction that prohibits Defendants from relying on HB 54 to require any driver's license applicant to produce DPOC before registering to vote, and that orders the BMV to offer the opportunity to register to vote to anyone (except confirmed noncitizens or other ineligible persons) who submits a driver's license application, even if the applicant fails to submit all documents necessary to obtain a driver's license.

By: */s/ Stacey N. Hauff*
J. Corey Colombo (0072398)
Stacey N. Hauff (0097752)
MCTIGUE & COLOMBO, LLC

15

545 East Town Street
Columbus, OH 43215
Tel: (614) 263-7000
shauff@electionlawgroup.com

Ben Stafford*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Tel: (206) 656-0176
bstafford@elias.law

Joshua Abbuhl*
Qizhou Ge*
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
Tel: (202) 968-4652
jabbuhl@elias.law
age@elias.law

*Attorneys for Plaintiffs*
*\* Admitted pro hac vice*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2026, the foregoing was filed electronically with the Clerk of the Court using the Court's electronic case filing system, which will serve such filing on all counsel of record.

/s/ *Stacey N. Hauff*
Stacey N. Hauff


**CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to a track. This memorandum complies with the relevant page limitation.

/s/ *Stacey N. Hauff*
Stacey N. Hauff

17