HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney General

WILLIAM MORHMAN
Senior Counsel

ANDREW BRANIFF
Acting Chief, Appellate Section

ERIC V. NEFF
Acting Chief, Voting Section

JONATHON P. HAUENSCHILD
JAMES H. CUMMING
Trial Attorneys
Civil Rights Division
United States Department of Justice
4 Constitution Square
150 M St. NE, 8th Fl.
Washington, D.C. 20002
Jonathon.Hauenschild@usdoj.gov
James.Cumming@usdoj.gov
202-215-2110

DAVID M. TOEPFER
United States Attorney
Northern District of Ohio

PATRICIA M. FITZGERALD
Assistant United States Attorney
United States Courthouse
801 West Superior Ave., Suite 400
Cleveland, OH 44113
(216) 622-3779
(216) 522-2404 (facsimile)
Patricia.Fitzgerald2@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| RED WINE & BLUE, *et al*, | } | |
| | } | Civil Case No. 1:25-cv-01760 |
| Plaintiffs, | } | |
| | } | |
| v. | } | STATEMENT OF INTEREST OF THE |
| | } | UNITED STATES |
| FRANK LAROSE, *et al.*, | } | |
| | } | |
| Defendants. | } | |

**CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................. ii

**I.**      **STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT** ...................... 1

**II.**      **PROCEDURAL BACKGROUND** ............................................................................ 2

**III.**      **ARGUMENT** .................................................................................................... 6

     *A.*      *The Tenth Amendment Guarantees Ohio Has the Right to Establish Eligibility and Documentary Requirements for Driver's Licenses and Identification Cards* ............................ 6

     *B.*      *The NVRA Allows Ohio to Collect Citizenship and Residency Information to Complete the Driver's License and Identification Card Process* ............................................. 8

     *C.*      *Preventing Voter Fraud and Safeguarding Voter Confidence are Legitimate State Interests, and Requiring Documentary Proof of Citizenship is One Valid Method for the State to Achieve its Interests* ............................................. 10

**IV.**      **CONCLUSION** ............................................................................................... 16

## TABLE OF AUTHORITIES

CASES

*Anderson v. Celebrezze*,
460 U.S. 780 (1983)..................................................................................... 15

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013)....................................................................................9, 11

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015)..................................................................................... 1

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021)......................................................................... 10, 12, 13

*Burdick v. Takushi*,
504 U.S. 428 (1992).....................................................................................11

*Carrington v. Rash*,
380 U.S. 89 (1965)....................................................................................... 15

*Chicago, B. & Q. Ry. Co. v. People of the State of Illinois*,
200 U.S. 561 (1906)..................................................................................... 6

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008)........................................................................ 1, 12, 13, 15

*Doe v. Reed*,
561 U.S. 186 (2010)..................................................................................... 14

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016).......................................................................... 9

*Foster v. Love*,
522 U.S. 67 (1997)....................................................................................8, 11

*Hamilton v. Kentucky Distilleries & Warehouse Co.*,
251 U.S. 146 (1919)..................................................................................... 6

*In re Ford Motor Company F-150 and Ranger Truck Fuel Economy Marking and Sales Practices*,
65 F.4th 851 (6th Cir. 2023)........................................................................... 8

*Jacobson v. Commonwealth of Massachusetts*,
197 U.S. 11 (1905)....................................................................................... 6

*Kentucky v. Biden*,
23 F.4th 585 (6th Cir. 2022)........................................................................... 7

*Mack v. United States*,
66 F.3d 1025 (9th Cir. 1995) ............................................................................... 7

*Munro v. Socialist Workers Party*,
479 U.S. 189 (1986) ................................................................................. 13, 14

*New York v. United States*,
505 U.S. 144 (1992) ...................................................................................... 6

*Northeast Ohio Coalition for the Homeless v. LaRose*,
767 F. Supp. 3d 585 (N.D. Ohio 2024) ................................................... 12

*Ohio Democratic Party v. Husted*,
834 F.3d 620 (6th Cir. 2016) ........................................................... 11, 12, 14

*Oneok, Inc. v. Learjet, Inc.*,
575 U.S. 373 (2015) ...................................................................................... 8

*Oregon v. Mitchell*,
400 U.S. 112 (1970) ...................................................................................... 8

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ....................................................................................... 14

*Reno v. Condon*,
528 U.S. 141 (2000) ...................................................................................... 7

*Shelby County v. Holder*,
570 U.S. 529 (2013) .................................................................................... 15

*United States v. Lopez*,
514 U.S. 549 (1995) ...................................................................................... 6

*United States v. Missouri*,
114 F.4th 980 (8th Cir. 2024) ...................................................................... 1

*United States v. Snyder*,
852 F.2d 471 (9th Cir. 1988) ....................................................................... 7

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) ...................................................................................... 1

**STATUTES**

18 U.S.C. § 1015................................................................................11, 14

18 U.S.C. § 611..................................................................................11, 14

28 U.S.C. § 517..................................................................................... 1

52 U.S.C. § 20501................................................................................ 12

52 U.S.C. § 20504................................................................................ 12

52 U.S.C. § 21083................................................................................11

Kan. Stat. Ann. § 25-2309(*l*)............................................................... 10

Ohio Rev. Code § 3503.01....................................................................11, 14

Ohio Rev. Code § 3503.07....................................................................11, 14

Ohio Rev. Code § 3503.11..................................................................... 3, 5

Ohio Rev. Code § 3503.21..................................................................... 9

Ohio Rev. Code § 3599.12..................................................................... 14

Ohio Rev. Code § 4501.02..................................................................... 4

Ohio Rev. Code § 4507.06..................................................................... 3, 5

Ohio Rev. Code § 4507.11..................................................................... 9

REAL ID Act of 2005, Pub. L. 109-13 .................................................... 7


**OTHER AUTHORITIES**

Executive Order 14,248, "Preserving and Protecting the Integrity of American Elections," 90 Fed. Reg. 14005 (Mar. 25, 2025)*................................................................... 2

Julie Carr Smyth, *Ohio Finds 597 noncitizens who voted or registered in recent elections, a fraction of its electorate*, ASSOCIATED PRESS (Aug. 21, 2024)................................................. 10

Press Release, Ohio Secretary of State Frank LaRose, Secretary LaRose Announces Additional Evidence of Noncitizen Election Crimes (Sep. 16, 2025) ....................................................... 10

**REGULATIONS**

Ohio Admin. Code § 4501:1-1-21 ................................................................ 4

**CONSTITUTIONAL PROVISIONS**

OHIO CONST. art. V, § 1 .................................................................... 11, 14

U.S. CONST amend. XIX ......................................................................... 11

U.S. CONST amend. XVI ......................................................................... 11

U.S. CONST amend. XXIV ....................................................................... 11

U.S. CONST. amend. X ............................................................................. 6

U.S. CONST. amend. XV .......................................................................... 11

U.S. CONST. art. 1, § 4, cl.1 ............................................................. 11, 13, 15

U.S. CONST. art. I, § 2, cl. 1 ................................................................ 11, 15

# I. STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT

When Ohio voters cast their ballots, they should be confident that each vote tallied is given its due weight, undiluted by fraudulent votes. This confidence is the bedrock of participatory democracy. Requiring documentary proof of citizenship ("DPOC") when registering to vote is one way to accomplish this goal. To the extent that Ohio's laws regulating the prerequisites for driver's licenses or identifications cards may impact the voter-registration process, Ohio has a compelling, legitimate interest in protecting against fraud and ensuring public confidence in the electoral process.

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." This case presents important questions regarding enforcement of the Fourteenth Amendment's voting rights protections. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008). The United States has a substantial interest in ensuring elections are conducted fairly and in enforcing the guarantees of the Constitution. *See, e.g.*, *United States v. Missouri*, 114 F.4th 980, 986 (8th Cir. 2024) (finding that United States has standing in part due to the "equitable tradition" of suits to enjoin unconstitutional state action); *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015) (finding that "relief may be given in a court of equity … to prevent an injurious act by a public officer"); *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (recognizing that the United States may suffer "injury to its sovereignty arising from violation of its laws"). The United States also has a strong interest in ensuring the proper interpretation and application of federal election laws such as the National Voter Registration Act of 1993 ("NVRA").[1]

---

[1] National Voter Registration Act of 1993, Pub. L. 103-31, codified as amended at 52 U.S.C. §§ 20501, *et seq*.

1

Furthermore, on March 25, 2025, the President signed Executive Order 14248 entitled "Preserving and Protecting the Integrity of American Elections" (EO) to ensure that elections are being held in compliance with federal laws that guard against unlawful voting. 90 Fed. Reg. 14005 (Mar. 25, 2025). "Free, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic." *Id.* Pursuant to this EO, the Attorney General has been instructed to prioritize enforcement of federal election laws to ensure election integrity. *Id.*

The United States submits this Statement of Interests to make three points:

1. The Fourteenth Amendment does not prohibit Ohio from requiring proof of citizenship or lawful residency for driver's licenses;

2. The NVRA does not prohibit Ohio from collecting DPOC prior to issuing state driver's licenses; and

3. If the Court determines that Ohio's prerequisites for driver's licenses impact voter registration, Ohio's interests in that regard are legitimate.

As to the first two points, the United States submits that the Tenth Amendment guarantees Ohio has the authority to establish criteria for licenses, and the NVRA does not conflict with Ohio law. As to the final point, the United States submits that Ohio has legitimate interests in preventing voter fraud and safeguarding voter confidence, and its laws and regulations further those interests. The United States takes no position on any other issue before this Court.

## II. PROCEDURAL BACKGROUND

On August 22, 2025, Red Wine & Blue and the Ohio Alliance for Retired Americans filed a lawsuit against Ohio Secretary of State Frank LaRose in his official capacity, as well as Charles Norman in his official capacity as Ohio's Registrar of Motor Vehicles. Compl., ECF No. 1. The Complaint alleges in relevant part that Ohio's biannual Transportation Appropriations Bill, HB 54

("HB 54") includes provisions imposing unconstitutional burdens on the right to vote in violation of the Fourteenth Amendment to the United States Constitution. *Id.* ¶¶ 111-131. It also alleges Ohio's DPOC requirements to obtain driver's licenses or state IDs violate the NVRA. *Id*. ¶¶ 103-110.  HB 54 amended, and is codified at, Ohio Rev. Code § 3503.11; *id.* ¶ 52; Defs.' Answer, ECF No. 14, ¶ 4.

As relevant to this Statement of Interest, HB 54 requires the registrar or deputy registrar of motor vehicles to "offer the applicant the opportunity to register to vote or to update the applicant's voter registration by electronic means" when "any person applies for a driver's license, commercial driver's license, a state of Ohio identification card … , or the renewal or duplicate of any license or endorsement" (collectively, "driver's license"), and when "the person presents proof of United States citizenship." Ohio Rev. Code § 3503.11(A)(1). *See also* Compl., ¶ 52; Defs.' Answer, ECF No. 14 ¶ 4; Defs.' Combined Mot. to Dismiss and Part. Mot. for Judgment on the Pleadings, ECF No. 15 at 1-2, 18-19; Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 35, 4, 9 ("Defs.' Opposition").

Ohio law requires applicants for driver's licenses to apply "upon the approved form furnished by the registrar of motor vehicles," Ohio Rev. Code § 4507.06(A)(1), and, at a minimum, state "[t]he applicant's name, date of birth, social security number if such has been assigned, sex, general description, … residence address, … duration of residence in this state, *and country of citizenship.*" *Id.* § 4507.06(A)(1)(a) (emphasis added).[2] All applications must "state any additional information the registrar requires." *Id*. at (A)(2). Ohio law delegates to the Bureau of Motor

---

[2] Ohio law has required driver's license applicants to provide their country of citizenship since, at least, 1989. *See* 1989 Ohio Laws File 54, 118th Ohio General Assembly (June 30, 1989), codified at Ohio St. § 4507.06.

Vehicles ("BMV") the authority to "[a]dopt such forms and rules as are necessary to carry out all laws the registrar is required to administer." *Id.* § 4501.02(A)(1).

Acting upon this statutory authority, the BMV requires individuals applying "for first issuance" of driver's licenses to provide certain information, which includes documentation "sufficient to establish the person's … Status as a citizen, permanent resident, or temporary resident of the United States." Ohio Admin. Code § 4501:1-1-21(C).[3] Proof of citizenship and the other criteria may be satisfied by presenting: an original or certified copy of a birth certificate; a valid, unexpired U.S. passport or passport card; a valid U.S. military service or dependent identification document; or a passport from another country together with appropriate U.S. Citizenship and Immigration Services (USCIS) documents. *Id*. at § 4501:1-1-21(F). Further, a person can establish legal presence in the United States by providing, among other things: a birth certificate issued by an appropriate governmental agency of any state, territory, or possession of the U.S.; a consular report of birth abroad issued by the United States Department of State; naturalization documents; or USCIS documents showing dates of legal presence. *Id*. at § 4501:1-1-21(G). Those applying for driver's licenses must also establish residency within Ohio. The BMV provides several ways to do so. *Id*. at § 4501:1-1-21(I)-(J). If a person cannot "provide acceptable identification documents," BMV registrars may not issue a driver's license or identification card. *Id*. at § 4501:1-1-21(N).

Because Ohio law requires individuals applying for driver's licenses to submit documentation establishing their citizenship or residency status in the United States, and because

---

[3] Ohio regulations have required driver's license and identification card applicants to submit documentation "sufficient to establish the person's … legal presence in the United States" since 2009. *See* Ohio Reg. 4501:1-1-21 (Sept. 28, 2009), available at https://www.registerofohio.state.oh.us/pdfs/4501/1/1/4501$1-1-21_PH_FF_N_RU_20090928_1047.pdf (last accessed May 29, 2026).

HB 54 requires the registrar or deputy registrar of motor vehicles to "offer the applicant the opportunity to register to vote or to update the applicant's voter registration" when "the person presents proof of United States citizenship," Ohio Rev. Code § 3503.11(A)(1), HB 54 determines when the BMV may administer the voter registration process. Defs.' Combined Mot. at 2; *see* Ohio Rev. Code § 4507.06.

On September 18, 2025, Defendants filed their answer and their Combined Motion to Dismiss for Lack of Jurisdiction and Partial Motion for Judgment on the Pleadings. Defs.' Answer, ECF No. 14; Defs.' Combined Mot., ECF No. 15. Defendants assert that HB 54 in no way effects the Plaintiffs since "anyone applying for an Ohio credential [driver's license or identification card] [was] already required to provide proof of legal presence in Ohio," and HB 54 changed nothing in that regard. Defs.' Combined Mot. at 1. Plaintiffs then moved for a Preliminary Injunction seeking to enjoin Defendants from enforcing HB 54's DPOC requirements. Pl. Mot. for Prelim. Inj., ECF No. 29.

In their Complaint and Memorandum in Support of their Motion for Preliminary Injunction, ECF No. 29-1 ("Mot. for Prelim. Injunct."), Plaintiffs admit Ohio offers multiple options for individuals wishing to register to vote, other than at the BMV, including online, using a mail-in form, or at other designated State agencies. Compl., ¶ 7; Mot. for Prelim. Injunct., 3.

The Defendants filed their Opposition to the Motion for Preliminary Injunction on June 4. Defs.' Opposition, ECF No. 35. In the Opposition, Defendants disclaim any DPOC prerequisite to voter registration. Defs.' Opposition, 1-2, 9. Instead, they point out that the driver's license application requires individuals to provide documentary proof of citizenship, or noncitizenship, when they seek those credentials. *Id*.

### III. ARGUMENT

*A. The Tenth Amendment Guarantees Ohio Has the Right to Establish Eligibility and Documentary Requirements for Driver's Licenses and Identification Cards*

The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. The amendment works with the Constitution's enumeration of powers found in Article I to ensure that there is a "distinction between what is truly national and what is truly local." *United States v. Lopez*, 514 U.S. 549, 567-68 (1995). They do so by dividing authorities between the Federal and State Governments, empowering each to operate within their strengths. "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress." *New York v. United States*, 505 U.S. 144, 156 (1992).

By separating powers between States and the Federal governments and granting the latter only limited, enumerated powers, the Tenth Amendment reserves police power to the States. *Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146, 156 (1919). Police power, in turn, "embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety." *Chicago, B. & Q. Ry. Co. v. People of the State of Illinois*, 200 U.S. 561, 592 (1906); *see also Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905) ("[T]he police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety"); *Kentucky v. Biden*,

6

23 F.4th 585, 609 (6th Cir. 2022) (same). The licensing of drivers falls squarely within a state's police power. *United States v. Snyder*, 852 F.2d 471, 475 (9th Cir. 1988), *abrogated in part as recognized in Mack v. United States*, 66 F.3d 1025, 1032 (9th Cir. 1995); *cf. Reno v. Condon*, 528 U.S. 141 (2000) (holding that Congress may bar States from selling driver's license data to third parties).

While the issuance of driver's licenses falls within States' police powers, if states want Federal agencies to accept and use those licenses for the official purposes of those federal agencies, they must comply with the floor Congress established with respect to information applicants must provide. The REAL ID Act of 2005, Pub. L. 109-13, as amended by Pub. L. 116-260, § 202(a)(1). The minimum standards include a person's full name, date of birth, photograph, and address of principal address. *Id*. at § 202(b). The REAL ID Act requires "valid documentary evidence that the person is a citizen or national of the United States; is an alien lawfully admitted for permanent or temporary residence in the United States; has conditional permanent resident status in the United States;" or has other similar immigration statuses. REAL ID Act § 202(c)(2)(B). Before issuing a REAL ID–compliant driver's license, States must verify the documents provided by the applicant, including documents establishing lawful presence in the United States. *Id*. at § 202(c)(4)(B).

Ohio's requirement that driver's license applicants provide proof of citizenship or lawful status is consistent with the REAL ID Act. Federal identification standards aside, the Tenth Amendment guarantees that Ohio has the authority to establish whatever reasonable conditions it wants on the issuance of driver's licenses, and if it so chooses, it may require all Ohio driver's licenses to meet the standards of the REAL ID Act.

B.  *The NVRA Allows Ohio to Collect Citizenship and Residency Information to Complete the Driver's License and Identification Card Process*

There is no conflict between the NVRA and Ohio's driver's license process. First, while federal law preempts State law, it only does so when Congress expressly provides for preemption; or where there is a conflict between federal and State law, and it is impossible to comply with both; or where State law stands as an obstacle to fulfilling Congress's objectives. The "Elections Clause grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections binding on the States. 'The regulations made by Congress are paramount to those made by the State legislature; and *if they conflict therewith*, the latter, so far as the conflict extends, ceases to be operative." *Foster v. Love*, 522 U.S. 67, 69 (1997) (emphasis added). *See also Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015); *In re Ford Motor Company F-150 and Ranger Truck Fuel Economy Marking and Sales Practices*, 65 F.4th 851, 859-60 (6th Cir. 2023). None of those circumstances applies here. Second, not only are Ohio's laws *consistent* with the plain text of the NVRA, but to the extent HB 54 impacts eligibility for voter registration, the NVRA cannot preempt State voter eligibility standards. *Oregon v. Mitchell*, 400 U.S. 112, 201-10 (1970) (Harlan, J., concurring in part and dissenting in part) (analyzing the authorities States delegated to the federal government when ratifying the Constitution and various amendments).

Two requirements apply to voter registration at State motor vehicle departments: (1) a state may not require duplication of information required to complete the licensing process, and (2) a state may only require the minimal information necessary to determine voter eligibility. As to the first requirement, NVRA provisions requiring States to offer voter registration applications through the driver's license process subordinate the registration applications to States' licensing laws. While the NVRA requires states to offer "an application for voter registration with respect to elections for Federal office" through their motor vehicle driver's license application process, 52

U.S.C. § 20504(a)(1), the application "may not require any information that duplicates information required in *the driver's license portion of the form*," *id*. at § 20504(c)(2)(A) (emphasis added). As noted, Ohio requires applicants seeking driver's licenses to provide proof of citizenship or legal residence status, *see* Ohio Admin. Code § 4501:1-1-21, which means that any DPOC that an applicant might provide is part of the driver's license portion of the form.

As to the second requirement, it ensures that States demand no more than "the minimum amount of information necessary to … enable State election officials to assess the eligibility of the applicant" through the motor vehicle registration process. 52 U.S.C. § 20504(c)(2)(B)(ii). The Ohio Constitution and State law limit voting eligibility to citizens of the United States, who are eighteen years of age or older, who have minimum State residency, and who are registered to vote. Ohio CONST. art. V, § 1, Ohio Rev. Code §§ 3503.01(a), 3503.07. Certain categories of people are ineligible and, if they appear on the list of registered voters, must be removed, including those convicted of felonies, adjudicated incompetent, noncitizens, deceased persons, and those who have moved out of state. Ohio Rev. Code § 3503.21(B).

Nothing in *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) or *Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016), contradicts these premises. *Arizona* acknowledges that nothing in the Elections Clause permits the federal government to preempt State voter-eligibility standards and asks, instead, whether there is a direct conflict between the NVRA and the State's *registration* process. *Arizona*, 570 U.S. at 17. No such direct conflict exists here. As Ohio points out, HB 54 "does not prevent or prohibit anyone from registering to vote who fails to present DPOC." Defs.' Opposition, 9. Individuals wishing to register without providing the DPOC that is required as part of the licensing process "may fill out a paper registration form, which the BMV will forward to election officials." *Id*. As for *Fish*, the Kansas law at issue required voter registration applicants to provide DPOC before election officials could register the applicant. *Fish*,

9

840 F.3d at 717, citing Kan. Stat. Ann. § 25-2309(*l*). *Fish* was also wrongly decided. It added a test inconsistent with the NVRA and Supreme Court precedent, requiring Kansas to prove "a substantial number of noncitizens have successfully registered." *Fish*, 840 F.3d at 717, 739. States do not need to "prove" fraud to justify legislation protecting the electoral process. They may legislate proactively to prevent voter fraud, including preventing noncitizens from registering to vote. "[I]t should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 686 (2021).[4]

Ohio law, as amended through HB 54, directs BMV registrars to offer the opportunity to register to vote to those who provide proof of United States citizenship. Ohio's BMV voter registration process, as amended, does not require information that duplicates information necessary for registrars to complete the application process for driver's licenses and identification cards, *and* it does not require information that exceeds the minimum which is necessary to determine voter eligibility under state law. HB 54 is, therefore, consistent with the NVRA.

C. *Preventing Voter Fraud and Safeguarding Voter Confidence are Legitimate State Interests, and Requiring Documentary Proof of Citizenship is One Valid Method for the State to Achieve its Interests*

Assuming, *arguendo*, the Court construes Ohio's proof of citizenship and residency requirements qualify as a burden on voting, Ohio has a legitimate interest in preventing voter fraud.

---

[4] Preventing noncitizen registration is a legitimate concern in Ohio. Secretary LaRose previously identified noncitizens registered to vote in Ohio, even making referrals to the Ohio Attorney General for potential prosecution. Press Release, Ohio Secretary of State Frank LaRose, Secretary LaRose Announces Additional Evidence of Noncitizen Election Crimes (Sep. 16, 2025), https://www.ohiosos.gov/office/media-center/categories/press-releases/2025-09-16b; Julie Carr Smyth, *Ohio Finds 597 noncitizens who voted or registered in recent elections, a fraction of its electorate*, ASSOCIATED PRESS (Aug. 21, 2024), https://apnews.com/article/ohio-voters-citizenship-referrals-42799a379bdda8bca7201d6c42f99c65.

The Constitution grants States the authority to pass legislation regulating the "Times, Places, and Manner of holding Elections." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 626 (6th Cir. 2016) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting U.S. CONST. art. 1, § 4, cl.1)). The Supreme Court has explained that the Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections." *Foster*, 522 U.S. at 69. While the default position gives primary responsibility to superintend elections to States, Congress can preempt certain types of state legislation pursuant to the Elections Clause and has done so a few times, notably with the Voting Rights Act,[5] the NVRA,[6] and the Help America Vote Act (HAVA).[7]

Importantly, states are empowered to determine the qualifications of voters in federal elections and nothing in the Elections Clause permits the federal government to supplant State voter qualification laws.[8] U.S. CONST. art. I, § 2, cl. 1. "Prescribing voting qualifications … forms no part of the power to be conferred upon the national government by the Elections Clause." *Arizona*, 570 U.S. at 17.

In addition, both federal and Ohio law outright prohibit noncitizen voting. 18 U.S.C. §§ 611, 1015; OHIO CONST. art. V, § 1; Ohio Rev. Code §§ 3503.01, 3503.07. HAVA requires registrants to attest to their citizenship when registering to vote by mail. 52 U.S.C. § 21083(b)(4). The NVRA's purpose is to establish "procedures that will increase the number of *eligible citizens* who register to vote," and when a voter is registering through State motor vehicle agencies, it requires both the "minimum amount of information necessary to … enable State election officials

---

[5] Voting Rights Act of 1965, Pub. L. 89-110, codified, as amended, at 52 U.S.C. §§ 10101, *et seq*.
[6] *See* n. 1, above.
[7] Help America Vote Act of 2002, Pub. L. 107-252, codified at 52 U.S.C. §§ 20901, *et seq*.
[8] Through the amendment process, States have altered the federal Constitution to permit limited preemption of State voter-qualification laws, specifically related to race (amend. XV), sex (amend. XIX), poll taxes (amend. XXIV), and age (amend. XVI).

to assess the eligibility of the applicant" and an attestation of citizenship status. 52 U.S.C. §§ 20501(b)(1), 20504(c)(2)(B)(ii), 20504(c)(2)(C) (emphasis added). In light of these prohibitions, Ohio may take steps to ensure that noncitizens and other ineligible voters are not included in its official voter-registration list, and it may do so even if those steps place some burden on access to the ballot box. *See Crawford*, 553 U.S. at 200 (recognizing the State's "broad interests in protecting election integrity"); *Brnovich*, 594 U.S. at 672 ("One strong and entirely legitimate state interest is the prevention of fraud."); *Ohio Democratic Party*, 834 F.3d at 634 (holding that "reducing potential voter fraud" is an "important regulatory interest"); *Northeast Ohio Coalition for the Homeless v. LaRose*, 767 F. Supp. 3d 585, 616 (N.D. Ohio 2024) ("States are permitted to regulate prophylactically to prevent voter fraud before it occurs, or public confidence in elections is damaged by it.").

In *Crawford*, the Court upheld a state photo identification requirement for in person voting. 553 U.S. 181. The Court recognized that "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." *Id.* at 196. This interest is in part due to the State's need for "orderly administration and accurate recordkeeping" to identify all voters participating in the election. *Id.*

The Court affirmed this position in *Brnovich*, 594 U.S. at 685–86. It held that fraudulently cast votes can "affect the outcome of a close election" and "dilute the right of citizens to cast ballots that carry appropriate weight." *Id.* at 672. This holding is supported by the findings of the bipartisan Commission on Federal Election Reform, as the *Brnovich* explained. *Id.* at 685. The Commission found that states should act to "reduce the risks of fraud" and offered a variety of measures to achieve that end. *Id.* Although States may adopt different statutory schemes to root out fraud, as contemplated in the Elections Clause and the Commission's findings, the "propriety of doing so is perfectly clear." *Ohio Democratic Party*, 834 F.3d at 633-34 (quoting *Crawford*, 553

U.S. at 196 (plurality opinion of Stevens, J.)); *see also* U.S. CONST. art. 1, § 4, cl.1. A state has a legitimate interest in preventing voter fraud regardless of whether "[t]he record contains [any] evidence of ... fraud actually occurring ... at any time in [state] history" or whether existing laws (including those that impose criminal penalties) already adequately protect against the risk of fraud. *Crawford*, 553 U.S. at 194. Indeed, requiring a State to prove the existence of certain conditions prior to imposing "reasonable restrictions on ballot access" would hinder its ability to proactively manage its voting process. *Munro v. Socialist Workers Party*, 479 U.S. 189, 195–96 (1986) (holding that a State "should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights").

Further, voting requires "some effort and compliance with some rules," so any system that furnishes an equal opportunity to vote must tolerate the "usual burdens of voting" that are especially acceptable in the context of the State enforcing its important interests. *Brnovich*, 594 U.S. at 669 (citing *Crawford*, 553 U.S. at 198) (holding that the first guidepost in Section 2 claims is the burden imposed by voting rules, and the fourth guidepost is the opportunities provided by a State's entire system of voting). There should not be serious hinderance to the ability to vote, therefore the size of the burden on the franchise is of critical importance. *Id.* Almost every voting rule will impose *some* burden, from traveling to the mailbox to waiting in line. *Id.* But these inconveniences, including the processes necessary to acquire photo identification to register or vote, do not delegitimize the state's interest in preventing fraud. *Id.*; *Crawford*, 553 U.S. at 198.

Ohio also has a legitimate interest in safeguarding voter confidence in the electoral process. *See, e.g., Crawford*, 553 U.S. at 181 (recognizing the State's interest in protecting public confidence in elections separate and apart from its interest in preventing illegal voting); *Brnovich*, 594 U.S. at 685 (recognizing the importance of building "voter confidence"); *Ohio Democratic*

*Party,* 834 F.3d at 634-35 (holding that "Ohio's proffered interests of preventing voter fraud [and] increasing voter confidence by eliminating appearances of voter fraud … are undoubtedly important regulatory interests"). Laws designed to prevent voter fraud enhance "public confidence in the integrity of the electoral process[,]" which in turn "encourages citizen participation in the democratic process." *Crawford*, 553 U.S. at 197. And alleged fraud, even if unproven, "drives honest citizens out of the democratic process and breeds distrust of our government." *Doe v. Reed*, 561 U.S. 186, 197 (2010) (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). A State's interests wax and wane at different points in the voting process. *Munro*, 479 U.S. at 196. The State may validly assert an interest in safeguarding voter confidence at the voter-registration stage. *Cf. id.* In short, this court should maintain the long-held position that preventing voter fraud and safeguarding voter confidence are legitimate state interests.

While Ohio's law requiring proof of citizenship or legal residence applies only to driver's licenses, to the extent those laws impact voting, requiring documentary proof of citizenship *to register to vote* is a valid method for a State to achieve its interests in preventing fraud and safeguarding voter confidence in elections. Both federal and Ohio state law prohibit noncitizen voting outright. 18 U.S.C. § 611, § 1015; OHIO CONST. art. V, § 1; Ohio Rev. Code §§ 3503.01(a), 3503.07, Ohio Rev. Code § 3599.12. Ohio's law requiring proof of citizenship or legal residence to obtain a driver's license ensures that the State knows who is driving on its roads. An ancillary benefit of requiring drivers to submit proof of citizenship or proof of lawful presence in the country is that officials can easily determine who is and is not eligible to register to vote under state law. Ohio enacted HB 54 as part of its biennial transportation appropriation. It directs BMV registrars to offer voter registration applications to those who provide proof of citizenship as part of the licensing process. Defs.' Opposition, at 3-4. Ultimately, HB 54 allows all eligible citizens to register to vote. Laws, like HB 54, that *may* deter ineligible voters from registering can improve

voter confidence in elections, increasing participation. *Crawford*, 553 U.S. at 197 (finding that promoting public confidence in elections "encourages citizen participation in the democratic process").

Congress similarly passed the HAVA and NVRA, which set identification requirements for certain voter registration applications, and indicate that "Congress believes that photo identification is one effective method of establishing a voter's qualification to vote and that the integrity of elections is enhanced through improved technology." *Crawford*, 553 U.S. at 203. The Ohio law at issue in this case is consistent with both federal and state-level statutory schemes to prevent fraud and safeguard voter confidence.

Importantly, when States exercise their broad authority to regulate elections, courts should show deference to the legislature's judgments. Outside of any federal restrictions imposed under the Elections Clause, the States retain comprehensive authority to run elections. *See* U.S. CONST., art. I, § 2, cl. 1; art. 1, § 4, cl.1. Because of this Constitutional structure, States have "broad powers to determine the conditions under which the right of suffrage may be exercised." *Shelby County v. Holder*, 570 U.S. 529, 543 (2013) (quoting *Carrington v. Rash*, 380 U.S. 89, 91 (1965)). Generally, a State's "important regulatory interests are [] sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).

In this case, the Court should recognize both that States have the authority to establish criteria for obtaining driver's licenses and that requiring documentary proof of citizenship before the registrar or deputy registrar of motor vehicles offers a driver's license applicant the opportunity to register to vote, like the voter ID requirement upheld in *Crawford*, is a valid method to achieve the state's legitimate interests. 553 U.S. at 203.

15

## IV.    CONCLUSION

The United States respectfully requests the Court consider this Statement of Interest and welcomes the opportunity to provide further assistance at the Court's request.

Date: June 11, 2026

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney
Northern District of Ohio

By: */s/ Patricia M. Fitzgerald*
    PATRICIA M. FITZGERALD
    Assistant United States Attorney
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3779
    (216) 522-2404 (facsimile)
    Patricia.Fitzgerald2@usdoj.gov

HARMEET K. DHILLON
Assistant Attorney General

JESUS A. OSETE
Principal Deputy Assistant Attorney General

WILLIAM MOHRMAN
Senior Counsel

ANDREW BRANIFF
Acting Chief, Appellate Section

ERIC V. NEFF
Acting Chief, Voting Section

*/s/ Jonathon P. Hauenschild*
JONATHON P. HAUENSCHILD
JAMES H. CUMMING
Trial Attorneys
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M St. NE, 8th Floor
Washington, D.C. 20002
Telephone: 202-215-2110
Jonathon.Hauenschild@usdoj.gov
James.Cumming@usdoj.gov