**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| RED WINE & BLUE, and OHIO ALLIANCE FOR RETIRED AMERICANS,<br><br>Plaintiffs,<br><br>v.<br><br>FRANK LAROSE, in his official capacity as Ohio Secretary of State, CHARLES L. NORMAN, in his official capacity as Ohio's Registrar of Motor Vehicles,<br><br>Defendants. | Case No.: 1:25-CV-01760<br><br>Judge Solomon Oliver, Jr.<br><br>Mag. Judge James E. Grimes, Jr. |

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PENDING APPEAL**

## INTRODUCTION

The Court should deny the motion to stay. In a thoroughly reasoned, 54-page order, the Court carefully considered the text and purpose of the National Voter Registration Act (NVRA) and correctly concluded that Ohio law and the BMV's procedures conflict with that statute in two critical ways. First, Ohio improperly requires BMV customers to produce documentary proof of citizenship (DPOC) before being offered the chance to register to vote, which exceeds the NVRA's prohibition on requiring more than the "minimum . . . information necessary" to determine a voter's eligibility, and second, the BMV fails to offer voter registration to individuals who "submit" an "application" for a driver's license but fail to provide every supporting document required to obtain a driver's license. *See* 52 U.S.C. § 20504. Defendants offer no convincing reason to second-guess the Court's thoughtful analysis on these issues, and indeed they ignore crucial aspects of the Court's opinion. In short, they do not show that they are likely to prevail on appeal.

Instead, Defendants complain of purported burdens associated with the injunction. For starters, any such burdens are a self-inflicted injury caused by the State of Ohio's decision to create a BMV system that violates federal law. They also pale against the injury that will be suffered by citizens deprived of their rights under federal law to register to vote at the BMV if the preliminary injunction is stayed. Defendants' claims of burden are also wildly overblown. They can comply with the injunction in an array of ways, and the Court appropriately left them with discretion to decide how to do so. Perhaps most obviously, the BMV can simply offer paper voter registration forms to citizens who submit a driver's license application at the BMV, including those who fail to bring every document required for a license (either in the first instance or as a renewal). Defendants *already* stock these forms at the BMV and they *already* provide them to anyone who requests one. The only change would be that the BMV will now (consistent with the NVRA)

*proactively offer* voter registration whenever someone submits a driver's license application. This approach would satisfy Plaintiffs as an adequate remedy in advance of the 2026 election and impose only incidental, if any, burden.

Nor is there any reason to stay the injunction based on *Purcell v. Gonzalez*, 549 U.S. 1 (2006). Defendants' reliance on *Purcell* is surprising; they have *never* before argued *Purcell* had any bearing on the preliminary relief requested here; they did not *mention Purcell* in any prior briefing or at the hearing. For good reason: It is inapplicable. Affording citizens the opportunity to register to vote that federal law demands poses zero risk of voter confusion, and, given that Ohio *already* allows individuals without DPOC to register to vote at the BMV, the injunction can in no way be characterized as materially changing election rules on the eve of the election.

Because Defendants are not likely to succeed on the merits, they face little to no cognizable harm from the injunction, and because the injunction prevents irreparable harm to Plaintiffs' members—as the Court just concluded—the Court should deny the motion to stay.

## LEGAL STANDARD

To determine whether to stay an injunction pending appeal, a court considers four factors: (1) likelihood of success on the merits, (2) whether the applicant would be irreparably injured absent a stay, (3) whether a stay would injure the other parties, and (4) whether the public interest favors a stay. *Brown v. Yost*, 133 F.4th 725, 731 (6th Cir. 2025). The applicant "bears the burden of demonstrating entitlement to a stay," *id.*, and a stay is an "extraordinary form of equitable relief" that lies within the court's discretion, *Sarkisov v. Bondi*, 138 F.4th 976, 979 (6th Cir. 2025).

## ARGUMENT

Defendants offer nothing that undermines the Court's conclusion that Ohio's BMV voter registration process violates the NVRA. Their purported concerns about compliance with the

injunction are meritless, and their belated attempt to invoke *Purcell* fails. Defendants also fail to meaningfully address the remaining stay factors, which favor Plaintiffs. Because each factor weighs decisively against a stay, the Court should deny Defendants' motion.

## I. Defendants are unlikely to succeed on appeal.

When evaluating whether to grant a stay of an injunction pending appeal, "the likelihood of success on the merits often will be the determinative factor." *Thompson v. DeWine*, 959 F.3d 804, 807 (6th Cir. 2020) (per curiam) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). On appeal, likelihood of success will turn on two issues: (1) whether Ohio's requirement that driver's license applicants must produce DPOC before being offered the chance to register to vote is preempted because it goes beyond the NVRA's prohibition on requiring more than the "minimum . . . information necessary" to assess a prospective voter's eligibility, and (2) *when* the NVRA's obligations are triggered. Defendants' motion has little of substance to say about either question and ignores crucial aspects of the Court's detailed analysis of these issues. Simply put, Defendants offer nothing to cast doubt on the Court's thoroughly reasoned conclusion that it is *Plaintiffs* who are likely to succeed on the merits.

### A. The Court correctly held that Ohio's DPOC requirement conflicts with the NVRA.

Defendants criticize the Court's holding that Ohio's DPOC requirement conflicts with the NVRA's prohibition on requiring more than the "minimum . . . information necessary" to determine a voter's eligibility. Their *only* ground to challenge this holding is to argue that the Court's decision was based on a "concession" made by defense counsel at the hearing, and they now dispute that Defendants made any such concession. Mot. PageID 1855–56, Doc. 59.

In fact, defense counsel *did* appropriately concede that requiring DPOC goes beyond the "minimum . . . information necessary" to determine a voter registration applicant's citizenship. *See* 52 U.S.C. § 20504(c)(2)(B). At the hearing, the Court pointedly asked: "for purposes of . . . the

Motor Voter Act the minimum requirements are that you have this attestation, right?" to which defense counsel responded: "Yes." Jun. 25, 2026 Hrg. Tr. ("Tr.") PageID 1659, Doc. 55. Backpedaling, Defendants now assert that counsel conceded only that a sworn attestation of citizenship is the "minimum *requirement*" under the statute, but (they now argue) it "is in no way a concession that an attestation is also 'the minimum amount of *information* necessary' for Ohio to assess an applicant's eligibility." Mot. PageID 1856 (emphasis by Defendants).

The context in which that statement was made belies Defendants' attempt at hairsplitting. As the full exchange reflects, the Court emphasized that Ohio allows a sworn attestation of citizenship to prove citizenship in its other voter registration mechanisms and then asked whether a sworn attestation would likewise be sufficient to demonstrate citizenship at the BMV, to which defense counsel responded affirmatively. *See* Tr. PageID 1657–61. Further, Plaintiffs' counsel thereafter noted twice, on the record, his understanding that the State *had* conceded that DPOC exceeds the minimum "information" necessary to determine citizenship, and defense counsel did not dispute or contradict that understanding. *See* Tr. PageID 1696–97, 1710–11. Defendants are now barred from changing their position on this point. *See Moms for Liberty – Wilson Cnty v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 514 (6th Cir. 2025) (stating that a representation made by a party's attorney at oral argument "binds" the party).

Even if Defendants were not formally estopped from retracting or rewriting that concession, indisputable facts show that, in Ohio, a sworn attestation of citizenship *is* the "minimum . . . information necessary" to determine citizenship. As the Court recognized, aside from voter registration at the BMV, "no other voter registration method in Ohio requires a person to present [DPOC] along with a registration application"; instead, an attestation is all that is required. Order PageID 1833, Doc. 57; *see also id.* at PageID 1790–92 (discussing these other

methods). Indeed, one can register to vote *at the BMV* by providing an attestation of citizenship and no DPOC. As Defendants stated in their response to the motion for a preliminary injunction: "*Anyone* who wishes to register to vote at the BMV *may fill out a paper registration form*," and *"*[*t*]*his includes individuals who neglect to bring their DPOC* to the BMV and therefore cannot obtain a credential." Opp'n to Mot. for Prelim. Inj. PageID 1123, Doc. 35 (emphasis added). After receiving this form, "the BMV will forward [it] to election officials" for registration. *Id.*; *see also* Def. Ex. A PageID 1136–37, Doc. 35-1 (similar in sworn declaration).

To be sure, Defendants need not offer voter registration to a confirmed noncitizen. The injunction makes that point abundantly clear. Order PageID 1838, 1842. But given that Ohio allows citizens to register to vote using an attestation without DPOC in every circumstance *other* than while applying for a driver's license, there is no real dispute that, in Ohio, a sworn attestation *is sufficient* to demonstrate citizenship. Therefore, any information required beyond a sworn attestation necessarily exceeds the "minimum . . . information necessary" to determine citizenship and thus conflicts with the NVRA. 52 U.S.C. § 20504(c)(2)(B).

**B. The Court correctly held that the NVRA requires voter registration to be offered to individuals who apply for a driver's license but lack each required document.**

Defendants are also wrong to argue that the BMV has no obligation to offer voter registration until an applicant provides an application that is *complete* and, apparently, *approved* by the BMV. Defendants do not dispute that the NVRA's obligations attach whenever an individual "submit[s]" a "driver's license application" to the BMV. *See* 52 U.S.C. § 20504(a)(1) ("Each State motor vehicle driver's license application . . . submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration[.]"). And all agree that BMV Form 5745 is a "driver's license application" for purposes of the NVRA. *See* Def. Ex. A-4 PageID 1217, Doc. 35-1. So, the relevant question is when this form is deemed "submitted" to the

BMV. 52 U.S.C. § 20504(a)(1).

The Court answered that question by way of a detailed, seven-page examination of the NVRA's text, in which the Court discussed Sixth Circuit precedent, relevant dictionary definitions, canons of statutory interpretation, and the plain meaning of the word "submitted." Order PageID 1805–11. As the Court recognized, an "application" is "a request for something," and it therefore "follows that someone must consider it and decide whether to grant or deny the request." *Id.* at PageID 1809–10. Thus, an application is "submitted" when it is "presented, sent, or handed in for the consideration, decision, or approval of others." *Id.* at PageID 1810 (quoting dictionary). Accordingly, when an individual fills out Column A of Ohio's driver's license application and "presents" it to a BMV employee, that individual has "submitted" an "application" and the NVRA's obligation to offer voter registration is triggered. *Id.* at PageID 1815.

Defendants do not meaningfully grapple with the Court's close analysis of the NVRA's text. Instead, they assert that the Court's construction of the NVRA "contradicts the relevant statutory scheme," but they do not say why or how. Mot. PageID 1856. Obviously, Defendants' mere say-so that the Court's legal interpretation is incorrect is not sufficient to demonstrate their likelihood of success on the merits. The Court should also reject Defendants' complaint that the Court's construction of the NVRA conflicts with "BMV practice." *Id.* That gets things exactly backwards. The NVRA is a *federal* statute, thus when the BMV's practice (or Ohio state law) is inconsistent with its requirements, the state law must give way. *See, e.g.*, *Foster v. Love*, 522 U.S. 67, 69 (1997) (holding a state's authority to regulate federal elections extends "only so far as Congress declines to preempt state legislative choices"); *see also* U.S. Const. art. VI. And while Defendants argued at the hearing that the NVRA's text looks to state law to determine when an application is "submitted," the Court squarely (and correctly) rejected that contention, finding that

"Defendants' interpretation . . . tortures the ordinary meaning of a rather unambiguous phrase," Order PageID 1808–09, and Defendants declined to pursue this argument in their motion to stay.

Instead, Defendants retreat to the suggestion that being required to offer voter registration to individuals who lack some document that is required for a driver's license will lead to "regulatory chaos." Mot. PageID 1857. But "[p]ure policy considerations, of course, do not constitute a proper method of statutory interpretation," and "they certainly cannot override a statute's unambiguous text." *Reichert v. Kellogg Co.*, 170 F.4th 473, 487 (6th Cir. 2026). In any event, Plaintiffs explain below that Defendants' purported concerns are grossly overstated and that there is an obvious way in which Defendants can immediately comply with the injunction with minimal burden. *See infra* Part II.

Finally, Defendants argue that they will prevail on appeal because they claim that the NVRA cannot "preempt the way Ohio administers the issuance of state identification" or "the way it evaluates the qualifications of voters." Mot. PageID 1858. Defendants' discussion of these issues is sparse—and misplaced. For one, the Court's injunction does *not* affect in any way who is entitled to "issuance of state identification." All the injunction does is require the BMV to *offer* voter registration *as part of* its process of issuing driver's licenses, as the NVRA demands. To the extent Defendants argue that it is unconstitutional for Congress to require states to adjust their BMV procedures so that offering voter registration is part of a driver's license application, that argument is untenable. That is precisely what the NVRA does, *see* 52 U.S.C. § 20503(a)(1) ("[E]ach State shall establish procedures to register to vote . . . by application made simultaneously with an application for a motor vehicle driver's license[.]"), and the Sixth Circuit long ago upheld the statute's constitutionality against a similar challenge, *see Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 836 (6th Cir. 1997). Nor does the injunction change how Ohio "evaluates the

qualifications of voters." The injunction merely requires Ohio to *offer a voter registration form* to certain individuals—the individual still must fill out the form and demonstrate their eligibility to the satisfaction of state officials. And as discussed, Ohio already allows all prospective voters to demonstrate their citizenship (and thus their eligibility to vote) by submitting a sworn attestation, *including at the BMV*. Thus, there is no room for Defendants to argue that the injunction in any way precludes Ohio "from obtaining the information necessary to enforce its voter qualifications." Mot. PageID 1858 (citation omitted). Accordingly, Defendants' vaguely insinuated "constitutional concerns," *id.*, provide no basis to conclude they are likely to succeed on appeal.

## II. The injunction is clear, and Defendants' ostensible concerns regarding administrative burdens are highly overstated and irrelevant.

Defendants' claims that the injunction is vague and that compliance would be burdensome are not well-founded. The obligations imposed by the injunction are clear, and the Court appropriately left policy discretion to the State to choose *how* to effect compliance. In doing so, the Court allowed wide latitude for Defendants to comply with the injunction in a way that minimizes any burden to the State.

Beginning with Defendants' complaint about vagueness, they assert that they do not understand when a driver's license application is "submitted" and thus do not know *when* they are required to offer voter registration. Mot. PageID 1849. But the Court's order gave Defendants precise direction on that point, stating "a driver's license application is submitted under Section 5 of the NVRA *when the applicant presents a BMV Form with Column A filled out to the deputy registrar*," and "[*i*]*t is at that moment* that Section 5 requires Ohio to affirmatively offer the driver's license applicant the opportunity to register to vote." Order PageID 1815.[1]

[1] Plaintiffs reserve the right to argue before final judgment that the BMV's obligations to offer voter registration can also attach in additional circumstances.

That language similarly gives obvious answers to Defendants' series of rhetorical questions (Mot. PageID 1849): *yes*, the BMV must offer voter registration to someone who submits a driver's license application but fails a vision or driving skills test; to someone who fills out the application with the assistance of a deputy registrar; and to someone who brings an application to the BMV but is told at the door that he will not be able to obtain a driver's license for lack of some required document. Likewise, there are no "internal inconsistencies" in the Court's order regarding offering voter registration to noncitizens. *See id.* at PageID 1848. This, too, is clear: the BMV must offer registration to anyone who submits a driver's license application *unless* they indicate their noncitizenship within the application itself or "otherwise present information showing they are noncitizens." Order PageID 1842.[2] So, if the BMV "knows the citizenship of applicants," Mot. PageID 1856, then certainly it does not have to offer an application to a known noncitizen.

Defendants' claimed perplexity in what the injunction prohibits and requires is also misplaced. *See id.* at PageID 1849–50. For instance, the injunction plainly does *not* require the BMV to offer voter registration through its electronic point-of-sale system, nor does it require the BMV to transmit voter registration forms to election officials electronically, nor does it require BMV employees to fill out portions of a paper voter registration form. *See id.* The injunction says nothing about these things. That is not a *defect* of the injunction; rather, it *expands* the ways in which Ohio can choose to comply with the injunction, and it is entirely common and appropriate for courts to frame injunctions in such a way. *See, e.g.*, *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 241 (6th Cir. 2011) (noting that district court "provid[ed] the state wide berth to

[2] Defendants' speculation that deputy registrars must somehow "un-register voters who go on to present proof of non-citizenship," Mot. PageID 1849, is nonsensical—as the Court noted, "the final decision to add someone to the State's voter rolls is with the appropriate State election official, not the BMV or its employees," Order PageID 1838.

design and implement the specific procedures for complying with the district court's order"); *United States v. Prod. Plated Plastics, Inc.*, No. K87-138 CA, 1992 WL 397725, at *7 (W.D. Mich. Sept. 4, 1992), *aff'd*, 61 F.3d 904 (6th Cir. 1995) (refusing to "micro-manage the defendants' compliance with its injunctive orders"). To be sure, the State may ultimately find it convenient to update its point-of-sale system to comply with federal law, but if it chooses to comply with this injunction otherwise, so be it.

Granting this policy discretion to the State also ameliorates Defendants' concerns about burden. There is at least one readily apparent way in which Defendants can comply with the injunction with minimal cost and disruption: they can simply offer a paper voter registration form to anyone who arrives at the BMV to apply for a driver's license but fails to bring every document needed to successfully obtain a driver's license (unless, of course, they indicate their noncitizenship, in which case the injunction makes clear that offering voter registration is not required). *See* Mot. PageID 1853 (*Defendants* identifying this as the "least burdensome method of complying with the injunction").

Defendants have explained that they already "stock [these] paper registration forms" at the BMV, and that the BMV will provide them to any customer who requests one, including "individuals who neglect to bring their DPOC to the BMV and therefore cannot obtain a credential," and that the BMV will then transmit them to election officials. Opp'n to Mot. for Prelim. Inj. PageID 1123; *see also* Def. Ex. A PageID 1136–37, Doc. 35-1. Under this approach, the only change from existing procedures is that instead of offering these forms *upon request*, the BMV must now (as required by the NVRA) offer voter registration *proactively* during a driver's license transaction—including when an individual fails to bring every document required for a driver's license.

That approach would be fully compliant with the Court's injunction and eliminate Defendants' claimed concerns regarding burden. Defendants would not, for example, need to "rewrite the point-of-sale [software] system." Mot. PageID 1853. This approach would also require minimal "training" to implement—all that is required would be to ask a person who was just denied a driver's license if they would like to fill out a voter registration form. *See id.* at PageID 1853–54. And because deputy registrars are merely providing an *opportunity* to register, Defendants' speculation that registrants will return to the BMV multiple times a day and complete multiple voter registration forms is overblown. The fact that deputy registrars are independent contractors who must offer voter registration forms without a fee, *id.* at PageID 1853, is entirely irrelevant. It was Ohio's choice to structure its BMV system in this way, and, in any event, deputy registrars *already* offer these voter registration forms to customers and transmit them to election officials. Defendants' argument, which effectively boils down to "it will burden election officials if too many Ohioans try to register to vote at the BMV" should be rejected as irrelevant to the Court's analysis.

Defendants therefore can comply with the injunction with minimal burden.[3] But even if the burdens were more substantial, "it's too hard to comply with the law" is not a defense. *See,*

[3] It is possible that Defendants may *later* need to further adjust their BMV voter registration processes in other ways to ensure complete compliance with the NVRA. For example, Defendants observe that the NVRA prohibits the voter registration application portion of a motor-voter application from requesting duplicate information already on the driver's license application portion. Mot. PageID 1854. Thus, if Defendants did not update their driver's license application to account for this requirement, they might need to later. But the plain terms of the injunction do not require that relief *now*; rather, it speaks in terms of "offering the opportunity to register to vote." Order PageID 1842. Offering Ohio's paper voter registration form to unsuccessful driver's license applicants thus may not *fully* remedy Ohio's NVRA violations, but it does comply with the plain terms of the injunction, which is an appropriate use of the Court's equitable authority to impose an interim remedy that resolves the most pressing threat of irreparable harm: the possibility that Plaintiffs' members will miss their chance to vote because they were not offered registration at the BMV in contravention of federal law. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *McDaniel v. Sanchez*, 452 U.S. 130, 153 n.35 (1981); *Fuhr v. Sch. Dist. of City*

*e.g.*, *Concerned Pastors for Soc. Action v. Khouri*, 844 F.3d 546, 549–50 (6th Cir. 2016) (rejecting concerns about cost of compliance as outweighed by need to comply with federal law and protect public interest); *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 387 (6th Cir. 2008) (rejecting administrative burdens associated with adapting computer program in denying motion to stay preliminary injunction after finding a violation of the NVRA). Simply put, Defendants cannot gesture to the perceived high costs of *how* they might comply with the order as a reason to not comply at all, nor can they point to their self-inflicted injury of designing a driver's license registration system that defies federal law as a basis for staying the injunction. *See Dep't of Educ. v. California*, 604 U.S. 650, 652 (2025) (recognizing that "self-imposed costs" cannot comprise the irreparable harm in a stay motion).

## III. *Purcell* does not justify a stay.

Plaintiffs moved for a preliminary injunction on April 28, and their motion made clear they requested relief ahead of Ohio's October 5 voter registration deadline. Doc. 29-1 PageID 363. But despite the timing of potential relief being evident to all involved in this case since April, Defendants have never before raised *Purcell*; not in their response to Plaintiffs' motion, Opp'n to Mot. for Prelim. Inj., and not during the many hours of oral argument at the hearing on the motion. *See* Tr. Indeed, rather than arguing that a decision was needed early to avoid too-close proximity to the election, *Defendants* proposed a briefing schedule for the preliminary injunction motion that would have ended on June 12, noting that a schedule on that timeframe "*leaves plenty of time* for a decision before the registration deadline in October." Doc. 33-1 PageID 1110 (emphasis added). It is only after they lost the motion that Defendants now reverse course, belatedly invoke *Purcell*, and claim that there was *not* "plenty of time." Mot. PageID 1850; *see Rose v. Raffensperger*, 143

---

*of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004). Plaintiffs will accept a partial remedy in advance of the 2026 general election rather than no remedy at all.

S. Ct. 58 (2022) (order vacating stay that had been entered pursuant to the *Purcell* principle when the party seeking the stay had made "representations . . . that the schedule on which the district court proceeded was sufficient to enable effectual relief as to the November elections").

Defendants' previous position was correct—the *Purcell* doctrine simply does not fit the facts and posture of this case. As Defendants note, *Purcell* cautions against courts "alter[ing] state election procedures on the eve of an election," Mot. PageID 1851, so as not to cause "voter confusion" or create "disorder in electoral processes." *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1012 (6th Cir. 2006). The Court's injunction, however, does no such thing. The injunction does not affect how Ohio's elections will be run, nor does it change Ohio's voter eligibility requirements. In fact, it does not even change who is *able to register to vote at the BMV.* To reiterate, Defendants admit that *anyone*—even individuals without DPOC—can *already* request a voter registration form at the BMV, they can fill it out and attest to their citizenship, and the BMV will transmit that voter registration form to election officials. *See* Opp'n to Mot. for Prelim. Inj. PageID 1123; Def. Ex. A PageID 1136–37.

It is true that the injunction plays an important role by making it *easier* for citizens to register to vote, but it does not change in any way who is *able* to register. Consider, for instance, if the injunction were stayed: in that case, the BMV could decline to proactively offer registration to someone who applied for a driver's license but forgot to bring DPOC, *but that same person* could still register to vote *the same day*, either at the BMV or through one of the several other ways that Ohio allows voter registration. Simply put, the injunction will work a small change to *BMV procedures*, but it does not alter Ohio's *election procedures* in any meaningful sense of that term. Indeed, it does not affect "election procedures" at all, since BMV officials never adjudicate any voter's eligibility. Rather, BMV officials merely *offer* and *transmit* applications, which are

then reviewed under preexisting standards by election officials. Nor does it risk "voter confusion" in any conceivable way, and Defendants do not attempt to argue it would. Thus, the concerns animating *Purcell* are inapplicable.[4]

Finally, Defendants note that "Sixth Circuit precedent disfavors preliminary injunctions that interrupt the status quo," Mot. PageID 1851, but the Sixth Circuit has also cautioned that "[t]oo much concern with the status quo may lead a court into error." *Stenberg v. Cheker Oil Co*., 573 F.2d 921, 925 (6th Cir. 1978). Vague invocations of the "status quo" are not grounds to alter the Court's well-reasoned, 54-page analysis concluding that a preliminary injunction should issue.

## IV. The other factors strongly weigh against a stay.

Defendants say almost nothing about the remaining stay factors: the irreparable harm that Plaintiffs would face, and whether the public interest favors a stay. *See Brown*, 133 F.4th at 731. These factors decisively counsel against a stay.

With respect to the former, Defendants do not directly address the Court's recent finding that an injunction was necessary to prevent irreparable harm. Order PageID 1834–36. Instead, they assert that "there is not one scintilla of evidence" that Plaintiffs' members are likely to be denied registration in a manner similar to the two identified members whose injuries the Court considered in analyzing Plaintiffs' associational standing. Mot. PageID 1854. That is flatly wrong. Plaintiffs submitted declarations confirming that their members go to the BMV to update their driver's license when they move or change their name, both of which also require an update to voter registration, *see* Pls.' Ex. 1 PageID 381, Doc. 29-2; Pls.' Ex. 2 PageID 385–86, Doc. 29-3, and the practical effect of granting Defendants' present motion would be to allow the BMV to decline to

[4] Defendants argue that *Purcell* applies because the injunction forces state officials to "scramble to 'devise plans to implement' an order," and works "drastic" changes to Ohio's "credentialing and voter-registration processes." Mot. PageID 1851 (citation omitted). But as discussed in Part II, Defendants vastly overstate the burdens imposed by the preliminary injunction.

offer voter registration to applicants who fail to bring documents required for a driver's license. At the hearing, defense counsel made the commonsense observation that such an occurrence happens all the time. *See* Tr. PageID 1716 ("[W]e all know from our experience at the BMV and from the experiences of individuals at issue here people often have unsuccessful trips at the BMV. You might have just forgotten something. That's not uncommon. . . . I mean, they happen every[] day.").

As for the public interest, Defendants argue in passing that "the public interest . . . favors a stay to 'give effect to the will of the people by enforcing the laws . . . their representatives enact.'" Mot. PageID 1854 (citation omitted). But no state has "a legitimate interest in enforcing . . . unlawful actions." *See, e.g.*, *Madan B.K. v. Noem*, No. 1:25-cv-419, 2025 WL 1171572, at *8 (W.D. Mich. Apr. 23, 2025). The Court also correctly recognized that any interest in enforcing a DPOC requirement for voter registration at the BMV is minimal given that a sworn attestation of citizenship is sufficient to demonstrate citizenship. Order PageID 1837. And any conceivable interest of Defendants is far outweighed by the "strong public interest in allowing every registered voter to vote," which was directly threatened by Ohio's DPOC requirement. *See id.* As the Court correctly concluded, allowing the DPOC requirement to stand "would be contrary to the NVRA's purpose, and a strain on the fundamental right to vote." *Id.* For the exact same reason, the public interest would be harmed by a stay of the injunction.

## CONCLUSION

The Court should deny Defendants' motion to stay the preliminary injunction.

By: _*Stacey N. Hauff*_
J. Corey Colombo (0072398)
Stacey N. Hauff (0097752)
MCTIGUE & COLOMBO, LLC
545 East Town Street
Columbus, OH 43215
Tel: (614) 263-7000
ccolombo@electionlawgroup.com
shauff@electionlawgroup.com

Ben Stafford*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Tel: (206) 656-0176
bstafford@elias.law

Joshua Abbuhl*
Qizhou Ge*
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
Tel: (202) 948-1135
jabbuhl@elias.law
age@elias.law

*Attorneys for Plaintiffs*
** Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, the foregoing was filed electronically with the Clerk of the Court using the Court's electronic case filing system, which will serve such filing on all counsel of record.

*/s/ Stacey N. Hauff*
Stacey N. Hauff

**CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to a track. This memorandum complies with the relevant page limitations.

*/s/ Stacey N. Hauff*
Stacey N. Hauff